**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MINTEL INTERNATIONAL GROUP,<br>LTD., a United Kingdom corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 08CV3939 |
| v. | ) ) | Judge Robert M. Dow |
| MEESHAM NEERGHEEN, an individual, | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF'S EMERGENCY MOTION FOR RULE TO SHOW CAUSE
WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT OF COURT
FOR VIOLATION OF THE TEMPORARY RESTRAINING ORDER, FOR
SANCTIONS, AND FOR A RESCHEDULEDING OF THE PRELIMINARY
INJUNCTION HEARING**

Plaintiff MINTEL INTERNATION GROUP, LTD. ("Mintel"), by its counsel of record, submits this Emergency Motion for Rule to Show Cause Why Defendant Should Not Be Held in Contempt of Court for Violating the Temporary Restraining Order, For Sanctions, and For a Rescheduling of the Preliminary Injunction Hearing.  In support of this motion, Mintel states as follows:

1.      Mintel finds it necessary to ask this Court to find Defendant Meesham Neergheen ("Defendant") in contempt for Defendant's pattern of bad faith and abusive resistance to the clear and express terms of the temporary restraining order.  Mintel has repeatedly attempted to secure access to Defendant's personal computer hard drive. Defendant's counsel has raised obstacles in disregard of this Court's order.

2.      Federal Rule of Civil Procedure 70(e) pertains to enforcing a judgment for a specific act and permits the Court to hold a disobedient party in contempt.  *See* Fed. R. Civ.

1

Pro. 70(e). A temporary restraining order is a lawful order that Defendant must obey unless and until it is changed, modified or reversed. *United States v. United Mine Wkrs.*, 330 U.S. 250, 302, 67 S. Ct. 677, 91 L. Ed. 884; *Woods v. Fliss,* 168 F.2d 612, 614 (7th Cir. 1948).

3.    On July 16, 2008, this Court entered a Memorandum Opinion and Order, granting Mintel a ten-day temporary restraining order until July 30, 2008. The terms of the temporary restraining order demanded, among other relief, that Defendant "produce forensic copies of all personal desktop and/or laptop computers." *See* Memorandum Opinion and Order, attached hereto as "Exhibit 1." In addition, this Court granted Mintel's request for expedited discovery. *See* "Exhibit 1."

4.    At the hearing on July 15, 2008, Defendant's counsel did not express any concerns to producing Defendant's personal computer hard drive despite Judge Dow's statements that he was most likely going to grant Mintel's request for a forensic copy of Defendant's computer.

5.    The undersigned has repeatedly made oral and written requests to Defendant's counsel to obtain a forensic image of Defendant's personal computer. Defendant's counsel continues to delay Mintel's receipt of the same by raising obstacle after obstacle.

6.    On July 17, 2008, the undersigned requested access to Defendant's hard drive for forensic imaging. *See* July 17, 2008 correspondence, attached hereto as "Exhibit 2." Defendant's counsel responded on July 17, 2008 by stating that "we will try to get some answers to your questions as quickly as possible." *See* July 17, 2008 correspondence, attached hereto as "Exhibit 3."

7.    On July 18, 2008, the undersigned had a telephone conference with Defendant's counsel to determine when Defendant's hard drive would be available that day.    Defendant's counsel stated that Defendant had concerns about providing his computer hard drive because the computer contained privileged emails that Defendant had sent to and received from Defendant's counsel.

8.    The undersigned communicated to Defendant's counsel on July 17, 2008 that Mintel's forensic expert could easily conduct a search of the computer for the information Mintel wants (i.e. – use of the hotmail email address to find webmail remnants) and then subject the findings to a secondary search to see if any of the responses contain Defendant's attorneys' names, email addresses or any other privileged keywords.    The undersigned further stated that Mintel's expert could produce data that is responsive to the primary keywords but does not contain any secondary keywords, which will necessarily remove any electronic communications on Defendant's home computer that Defendant sent to or received from Defendant's counsel. *See* July 18, 2008 correspondence, attached hereto as "Exhibit 4."

9.    In further response, the undersigned specified that the Joint Protective Order mutually agreed upon by the parties contains a "clawback" agreement so that the parties do not waive privilege for any documents inadvertently produced as a result of forensic analysis or otherwise. *See* Joint Protective Order, attached hereto as "Exhibit 5"; *see also* "Exhibit 4."

10.    On July 18, 2008, Defendant's counsel sent correspondence to the undersigned, stating that Defendant's forensic expert was currently making copies of the hard drive and, therefore, Mintel would not have access to the computer until Monday, July

21, 2008, at earliest. Defendant's counsel further stated that despite the information the undersigned communicated to her regarding the privilege issue, Defendant still had concerns regarding the searches proposed by Mintel's forensic expert. *See* July 18, 2008 correspondence, attached hereto as "Exhibit 6."

      11.    On July 18, 2008, the undersigned again wrote to Defendant's counsel, stating as follows: "Thank you for the update regarding Meesham's computer. We disagree with your interpretation of the TRO. The TRO states that we are entitled to a forensic image of Meesham's computer, which would necessarily include his email accounts. We understand your privilege concerns and are certainly willing to work with you on those issues (as my prior email indicated). Please contact me via telephone to discuss further." *See* July 18, 2008 correspondence, attached hereto as "Exhibit 7." The undersigned left a telephone message for Defendant's counsel on July 18, 2008 to discuss the issue in further detail. However, the undersigned did not receive a phone call back from Defendant's counsel.

      12.    On July 19, 2008, Defendant's counsel sent correspondence to the undersigned, apologizing for the delay in responding and stating she wanted to discuss the computer issue because she felt there was "some lingo lost in translation." *See* July 19, 2008 correspondence, attached hereto as "Exhibit 8."

      13.    On Monday, July 21, 2008, the undersigned again renewed Mintel's request for access to Defendant's hard drive. The undersigned communicated to Defendant's counsel that she hoped to pick up the hard drive today. *See* July 21, 2008 correspondence, attached hereto as "Exhibit 9."

14.    Defendant's counsel provided the following response on July 21, 2008: "We are hoping to get your forensic copy of the hard drive to you today. To the extent that you all would like additional searches done, I have been told that the best way for us to go about it is to have your expert provide to us a list of searches, and our expert can conduct them. I am trying to confirm exactly what search terms are necessary, but am told that your expert should know what this entails. As soon as I have more information on this front, I will let you know. I have stressed the importance of getting all of this quickly, and will continue to push for it. I'll be in touch soon." *See* July 21, 2008 correspondence, attached hereto as "Exhibit 10."

15.    Based upon Defendant's counsel's correspondence, the undersigned immediately contacted Mintel's forensic expert to determine what searches he planned to perform on Defendant's computer. The undersigned then communicated all such searches to Defendant's counsel in correspondence dated July 21, 2008. The undersigned again informed Defendant's counsel that if the parties provided Mintel's forensic expert with Defendant's attorneys' email addresses, the emails to and from Defendant to Defendant's counsel would automatically be excluded from the searches. *See* July 21, 2008 correspondence, attached hereto as "Exhibit 11."

16.    However, once again, the information provided to Defendant's counsel was not sufficient. The last correspondence of July 21, 2008 received from Defendant's counsel states as follows: "Your expert can give ours precisely the searches that he wants our expert to run, and our expert can then make sure that he is getting you the information you seek while we can be comfortable with production." *See* July 21, 2008 correspondence, attached hereto as "Exhibit 12."

17.     Mintel's counsel made a final attempt to obtain Defendant's hard drive without Court intervention on July 22, 2008, requesting that Defendant's counsel produce the hard drive before the end of the business day. *See* July 22, 2008 correspondence, attached hereto as "Exhibit 13."

18.     Defendant's counsel responded with another obstacle, arguing that Defendant is concerned about the privileged material on Defendant's computer, including trade secrets of Defendant's current employer. *See* July 22, 2008 correspondence and Reisman Affidavit, attached hereto as "Exhibit 14." Mintel's expert has already addressed how he would handle the attorney-client privileged communications. Furthermore, in trade secret cases, the trade secrets are still produced but with the labeling "For Attorneys' Eyes Only." Again, the Joint Protective Order filed by the parties addresses these issues. And, it should be noted that Defendant's counsel are currently in possession of copies of Mintel's trade secret information.

19.     Defendant's failure to deliver his hard drives violates the temporary restraining order, which clearly states that Mintel is entitled to a forensic copy of Defendant's personal computer(s). The temporary restraining order does not state that Mintel's forensic analysis must be performed by Defendant's forensic expert. A search of Defendant's hard drive by Datamonitor's expert using search terms alone will not reveal whether Defendant copied Mintel's confidential and proprietary trade secret information onto a compact disk or zip file; whether Defendant deleted any relevant material from his computer; whether Defendant purged his computer's application log; or whether Defendant e-mailed this information to any third parties. *See e.g.*, *Liebert v. Mazur*, 357 Ill. App. 3d 265, 273-274 (2005) (whereby the court permitted plaintiff's computer forensic expert to

review hard drive of defendant which allowed him to uncover and testify on all files that were downloaded, copied and/or deleted by defendant from his computer, thereby supporting plaintiff's misappropriation claim). The temporary restraining order compels the delivery of a forensic image of Defendant's hard drive in order for Mintel's expert to perform all of the above searches and analysis.

20.    Furthermore, the gravamen of this action is the illicit taking and potential dissemination of confidential and proprietary trade secret information by Defendant. One of the most important sources of evidence of this is what is termed "metadata." Such information includes file designation, create and edit dates, authorship, comments and edit history. Electronic files may contain hundreds and even thousands of pieces of such information. Metadata is not visible on the display of an electronic document, and it does not accompany hard copies of electronic documents. It can be wiped clean and/or altered by technically savvy individuals. Therefore, it is imperative that Defendant turn over Defendant's hard drive for forensic imaging so that Mintel can undertake a full and complete examination of the hard drive.

21.    The undersigned has worked with Defendant's counsel to resolve any arguments by Defendant's counsel that Defendant's hard drive can not be produced because it contains privileged information. However, as of the present date, Defendant continues to refuse to produce his computer hard drive for forensic copying by Mintel's expert, which is in direct violation of the temporary restraining order.

22.    Defendant's continued refusal to produce Defendant's hard drive to Mintel for forensic imaging leads to the inescapable conclusion that Defendant is attempting to hide discoverable information from Mintel that is damaging to Defendant. Furthermore, time is

of the essence when it comes to Mintel obtaining physical possession of Defendant's hard drive for forensic imaging, for Defendant may be deleting relevant information from his hard drive.

23.    Because Defendant's computer hard drive has not been produced, it will be extremely difficult, if not impossible, for Mintel's forensic expert to complete all necessary searches and analysis in time to meet the new briefing schedule imposed by the Court on July 21, 2008.  Furthermore, Mintel will be unable to sufficiently prepared for the August 4, 2008 preliminary injunction hearing.

24.    It should be noted that the undersigned has received written confirmation from Defendant's counsel that Defendant is agreeable to extending the temporary restraining order for an additional ten days to August 13, 2008.  *See* "Exhibit 8."

25.    Therefore, Mintel respectfully requests this Honorable Court to again extend the briefing deadlines and reschedule the preliminary injunction hearing in order to allow Mintel to conduct a thorough and complete analysis of Defendant's hard drive.

26.    At the time this Court entered the briefing deadlines and scheduled the August 4, 2008 hearing, this Court contemplated Defendant's compliance with the terms of the temporary restraining order, which has not occurred.

WHEREFORE Plaintiff Mintel International Group, Ltd. respectfully requests that this Court issue a Rule to Show Cause Why Defendant Should Not be Held in Contempt of Court for Violation of the Temporary Restraining Order.  Mintel also requests sanctions and attorney fees for Defendant's willful violation of the temporary restraining order.  Mintel further requests the extension of the briefing deadlines and the rescheduling of the preliminary injunction hearing to permit Mintel to complete all necessary discovery.

Respectfully submitted,

MINTEL INTENTIONAL GROUP, LTD.


By: ___/s/ Katherine J. Pronk_____
     One of Their Attorneys

Joseph R. Marconi
Victor Pioli
Katherine J. Pronk
JOHNSON & BELL, LTD.
Attorneys for Plaintiff
33 W. Monroe Street, Suite 2700
Chicago, Illinois 60603
(312) 372-0770
Doc. No.: 1904413

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| MINTEL INTERNATIONAL GROUP, LTD., a United Kingdom corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 08-CV-3939 |
| MEESHAM NEERGHEEN, an individual, | ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM OPINION AND ORDER

On July 11, 2008, Plaintiff Mintel International Group, Ltd. ("Mintel"), filed a seven-count complaint against Defendant Meesham Neergheen ("Neergheen") alleging a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, a violation of a non-compete agreement, a breach of Neergheen's employment contract with Mintel, and misappropriation of trade secrets pursuant to the Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065/1, *et seq.* Plaintiff seeks injunctive relief, restitution, and compensatory and punitive damages. Also on July 11, 2008, Plaintiff filed an emergency motion for a temporary restraining order and preliminary injunction.

On July 15, 2008, the Court conducted a hearing on Plaintiff's request for a temporary restraining order ("TRO"). At the hearing, Defendant Neergheen was represented by counsel who, despite not having sufficient time to file a written response to the motion for a TRO, articulated Defendant's position with respect to the relief requested by Plaintiff. Having considered the relevant legal standards governing TROs, as well as Plaintiff's motion, memorandum, and supporting materials and defense counsel's comments at the hearing, the Court grants in part and denies in part Plaintiff's emergency motion.



EXHIBIT

1

## I.      Background

Mintel is headquartered in London, England and provides consumer, product, and market research to its clients around the world.   Cmplt., ¶¶ 2, 6.   Neergheen worked for Mintel's marketing department from June 30, 1997 until April 30, 2008.  During that time, Neergheen had access to client and marketing files and materials.  On or about June 24, 1998, Neergheen signed a Contract of Employment with Mintel.  Carr Affdt., ¶ 8.  The Contract of Employment contained a clause stating that Neergheen could not directly or indirectly compete with Mintel for the first twelve months after the end of Neergheen's employment with Mintel.  *Id.*  The Contract of Employment also stated that Neergheen must refrain from using or disclosing any of Mintel's trade secrets and other proprietary or confidential information.  *Id.*

In August 2003, Neergheen signed an Employee Non-Compete/Non-Solicitation Agreement ("Non-Compete Agreement").   Carr Affdt., ¶ 9.   The Non-Compete Agreement stated that Neergheen agreed not to compete with the business of Mintel or any of its subsidiaries for a period of one year.  *Id.*  The Non-Compete Agreement also included a confidentiality provision that stated that Neergheen was not to disclose any information of a confidential or proprietary nature.  *Id.*

Mintel avers that it has a secure computer network and secure server system that is configured and managed to prevent unauthorized access.  Thomson Affdt., ¶ 3.  Mintel also states that as a result of Neergheen's employment and position with Mintel, he had access to such confidential information and became familiar with Mintel's computer system.  *Id.*, ¶ 5.

On or about April 23, 2008, Neergheen provided written notice to Mintel that he would be resigning from Mintel effective April 30, 2008.  Carr Affdt., ¶ 10.  After receiving Neergheen's written notification, Mintel began searching and monitoring Neergheen's work computer.  Thomson Affdt., ¶ 6.  Mintel subsequently discovered that Neergheen had copied, e-mailed and/or printed certain confidential and proprietary files -- including client lists, vendor lists, and strategic

2

documents – from his work computer on April 29, 2008, the day before his departure from Mintel. Thomson Affdt., ¶ 7.

In its complaint, Mintel alleged that Neergheen commenced employment with Datamonitor, Inc., a competitor of Mintel, immediately after Neergheen's resignation from Mintel. Cmplt., ¶ 17; Carr Affdt., ¶ 14. Based on additional information provided during and after the hearing on July 15, 2008, it appears that Neergheen started his new job at the end of May and that he was told not to come to work on July 14 or 15 or until the Court issues an order on the TRO.

## II.    Discussion

A party seeking a temporary restraining order must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary relief is denied. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party meets this burden, the court weighs these factors along with any irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied. *Id.* Finally, the court considers the public interest served by granting or denying the injunction, including the effects of the injunction on non-parties. *Id.*; see also *Credit Suisse First Boston, LLC v. Vender*, 2004 WL 2806191, at *1 (N.D. Ill. December 3, 2004).

### A.    Likelihood of Success

The party seeking the TRO or preliminary injunction must demonstrate "some likelihood of succeeding on the merits." *Abbott Laboratories*, 971 F.2d at 11; see also *Frullati Franchise Sys., Inc. v. Dana Areece & Co., Inc.*, 2001 WL 743427, at *2 (N.D. Ill. June 28, 2001) (stating that for purposes of a TRO or preliminary injunction, a plaintiff need only establish a "trivial chance of succeeding on the merits") (citing *Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359, 361 (7th Cir. 1993)).

1.    *Violation of the Computer Fraud and Abuse Act*

The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, provides for the entry of civil injunctive relief as well as the recovery of money damages for a violation of its provisions. See 18 U.S.C. § 1030(g) (providing that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief"). Courts have upheld the use of the CFAA in granting injunctive relief against former employees and their new employers who have attempted to obtain a competitive edge by removing information from a former employer's computers. See, *e.g.*, *YourNetDating, LLC v. Mitchell*, 88 F. Supp. 2d 870, 872 (N.D. Ill. 2000) (granting TRO under CFAA claim against former employee); see also *Charles Schwab & Co., Inc. v. Carter*, 2005 WL 351929, at *3 (N.D. Ill. Feb. 11, 2005) (denying motion to dismiss claim under CFAA); *George S. May Int'l Co. v. Hostetler*, 2004 WL 1197395, at *3 (N.D. Ill. May 28, 2004).

The day before Neergheen's resignation, Neergheen copied, e-mailed to his personal e-mail address and/or printed information from his work computer.  See Thomson Affdt., ¶ 7. According to Mintel's supporting affidavits, those files contained confidential and proprietary information regarding client accounts and budgets, potential client lists, vendor lists, marketing strategies and overall objectives, and individual client cost data. Carr Affdt., ¶ 13. Neergheen's actions in e-mailing such information to his personal e-mail address in the days leading up to his resignation could be found to have "exceeded authorized access" as that term is defined in 18 U.S.C. § 1030(e)(6).  Because Mintel's allegations, if proven, appear to be sufficient to give rise to liability for a violation of the CFAA, the Court finds that Plaintiff has demonstrated some likelihood of success on the merits of its CFAA claim. See *YourNetDating, LLC*, 88 F. Supp. 2d at 872.

2.    *Violation of the Illinois Trade Secret Act*

The Illinois Trade Secret Act, 765 ILCS 1065/1, *et seq.*, defines a "trade secret" as information that:

(i)    is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(ii)   is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

See 765 ILCS 1065/2(d).  The ITSA defines "misappropriation" in several ways.  For example, one can misappropriate trade secrets by "acquiring" them through improper means such as the breach of a confidential relationship. 765 ILCS 1065(b)(1).[1]  Misappropriation also occurs when a defendant breaches a duty owed to protect the secrecy of its information or induces another party to do so. 765 ILCS 1065(b)(2)(B).

Mintel alleges that the various files copied, e-mailed and/or printed by Neergheen in the days leading up to his resignation contained highly sensitive information not disseminated into the public domain. Carr Affdt., ¶ 13.  As with its CFAA claim, if Mintel is able to prove its allegations, then Neergheen may well have violated the ITSA.  At this stage, that is sufficient to meet the threshold requirement of showing some likelihood of success on the merits.

3.    *Violation of restrictive covenants within Non-Compete Agreement and Contract of Employment*

Based on the Court's preliminary research, it appears that Illinois courts disfavor and closely scrutinize restrictive covenants because they are "repugnant to the public policy encouraging an open and competitive marketplace." *Roberge v. Qualiteck Int'l, Inc.*, 2002 WL

---

[1] As defined in the Act, "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means. 765 ILCS 1065(a).

5

109360, at *4 (N.D. Ill. Jan. 28, 2002) (citing *Bishop v. Lakeland Animal Hosp.,* 268 Ill.App.3d
114, 644 N.E.2d 33, 36 (Ill. App. Ct. 1994)). The basic test applied by Illinois courts in
determining the enforceability of a restrictive covenant is "whether the terms of the agreement
are reasonable and necessary to protect a legitimate business interest of the employer."
*Outsource Intern., Inc. v. Barton,* 192 F.3d 662, 666 (7th Cir. 1999) (quoting *Office Mates 5,
North Shore, Inc. v. Hazen,* 234 Ill. App. 3d 557, 599 N.E.2d 1072, 1080 (1992)). This
determination "necessarily turns on the facts and circumstances of each case." *Id.* Illinois law
requires that in order be enforceable, a covenant not to compete must secure a "protectable
interest" of the employer. *Curtis 1000, Inc. v. Suess,* 24 F.3d 941, 944 (7th Cir. 1994). Illinois
courts recognize at least two such protectable interests: (1) where the customer relationships are
near-permanent and but for the employee's association with the employer the employee would
not have had contact with the customers; and (2) where the former employee acquired trade
secrets or other confidential information through his employment and subsequently tried to use it
for his own benefit. *Outsource Int'l, Inc. v. Barton,* 192 F.3d 662, 666 (7th Cir. 1999).

   Restrictive covenants should be narrowly tailored so as only to protect the protectable
interest of the employer. *Id.* at 669; *Lawrence and Allen, Inc. v. Cambridge Human Resource
Group, Inc.,* 292 Ill.App.3d 131, 138, 685 N.E.2d 434, 441 (Ill. App. Ct. 1997). In particular, the
time and geographic limitations must be reasonably necessary to protect a legitimate business
interest of the employer. *Roberge,* 2002 WL 109360, at *4. A restrictive covenant that does not
contain a geographic limitation may still be enforceable if the covenant instead includes an
"activity restraint." *Id.* at *6. The most common type of activity restraint is a prohibition against
soliciting the former employer's customers. *Eichman v. Nat'l Hosp. and Health Care Servs..,
Inc.,* 308 Ill.App.3d 337, 719 N.E.2d 1141, 1147 (Ill. App. Ct. 1999).

Neergheen commenced employment with Mintel in its London office on or about June 30, 1997. Carr Affdt., ¶ 6. As a condition of his continued employment, Neergheen signed and executed a United Kingdom Contract of Employment with Mintel on or about June 24, 1998. Carr Affdt., ¶ 8. The Contract of Employment included the following restrictive covenant:

> You will not for the first twelve months at the end of your employment with us, either on your own account or on behalf of any other legal person and in competition with the Company, or any subsidiary directly or indirectly engage in, or be connected with, trade or business carried on by us or any of our associates at the end of your employment. ... You will not, for the first twelve months after the end of your employment with us, solicit away from us or our associates any person who is and was, when your employment ended, employed by us or an associate as a director, senior manager or sales person for whom you were responsible, or who was a member of any department/project/team in which you worked during the last twelve months of your employment.

Cmplt., ¶ 13.

On or about August 1, 2003, Neergheen transferred to Mintel's Chicago office. Carr Affdt., ¶ 6. As a condition of his continued employment with Mintel in Chicago, Neergheen agreed to and signed an Employee Non-Compete/Non-Solicitation Agreement ("Non-Compete Agreement") on August 4, 2003. Carr Affdt., ¶ 9. The Non-Compete Agreement signed by Neergheen stated as follows:

> The undersigned Employee hereby agrees not to compete, either directly or indirectly, with the business of Mintel or any of its subsidiaries, branches or divisions, at any location worldwide at any time during the Employee's term of employment, and for a period of one (1) year following his termination of employment with Mintel, regardless of the reason or cause for such termination.

Cmplt., ¶ 10.

At this stage, based on the record before the Court, it appears that Mintel has a strong likelihood of success on its claim that Neergheen violated at least some of the terms of his non-compete agreement and employment contract. However, in order for the Court to uphold the provisions at issue, those provisions must be enforceable under Illinois law. Although Mintel

asserts that these restrictive covenants are both reasonable as to time and geography, the Court does not have before it at this early stage of the case either the factual record or the legal support grounded in Illinois cases to be convinced that every provision that Mintel seeks to enforce ultimately can be sustained as a matter of law.  Among other things, the Court lacks sufficient information concerning (1) the circumstances of Defendant's departure from Mintel; (2) the circumstances of Defendant's hiring by Datamonitor; and (3) Defendant's new position and responsibilities at Datamonitor.

Despite the limited record, the Court concludes that Mintel has "some" likelihood of successfully demonstrating that some, if not all, provisions of its restrictive covenants are reasonable under the law of Illinois.  The Court further finds that Plaintiff has satisfied its burden of demonstrating "some likelihood of succeeding on the merits" of its claim that Neergheen violated at least some, if not all, of the restrictive covenants in the non-compete agreement and his employment contract.

**B.    Adequate Remedy at Law and Irreparable Harm**

The other two threshold elements that Mintel must prove to support the issuance of a TRO or a preliminary injunction are that it (1) has no adequate remedy at law and (2) will suffer irreparable harm if the injunction is not issued.  These two requirements – irreparable harm and no adequate remedy at law – tend to merge. See *Roland Machinery Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 387 (7th Cir. 1984).  "The question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded damages." *Id.*  An injury is "irreparable" when it is of such a nature that the injured party cannot be adequately compensated in damages or when damages cannot be measured by any pecuniary standard.  *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1120 (7th Cir. 1997); see also *Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("showing injury to

goodwill can constitute irreparable harm that is not compensable by an award of money damages").

Here, Mintel contends that it will be unable to repair the damage done to its business relations with its existing customers and will lose the competitive advantage that it has worked to establish. Carr Affdt., ¶ 16. The loss of clients and sales and the continuing threat of further loss due to the distribution of Mintel's client lists and marketing data are sufficient to constitute irreparable injury. See *Meridian Mut. Ins. Co.*, 128 F.3d at 1120; see also *Illinois Sporting Goods Assoc. v. County of Cook*, 845 F. Supp. 582, 585 (N.D. Ill. 1994) (finding irreparable harm because of threat to the existence of plaintiff's business).

Moreover, money damages likely would not be an adequate remedy in the present case. First, Mintel could face the threat of lost sales and clients if Neergheen does use the information he removed from Mintel's computer system prior to leaving his employment. Second, it is difficult, at this time, to ascertain with any certainty the degree of financial loss Mintel may suffer by virtue of Neergheen's conduct. It is well recognized that in circumstances like the present, irreparable harm includes the impossibility of ascertaining with any accuracy the extent of the loss. It is also difficult to determine at this time the extent to which Mintel's confidential information could (or would) be utilized by Neergheen and Datamonitor. Given these circumstances, the Court finds that Plaintiff has demonstrated that money damages would be an inadequate remedy, at least for the duration of the TRO.

**C.    Balancing the Harms and Public Interest**

Balancing the irreparable harm to the moving party if an injunction is not entered against the harm to the non-moving party if an injunction is granted requires the court to use a "sliding-scale approach; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *In re Aimster Copyright Litigation*, 252 F.

Supp. 2d 634, 648 (N.D. Ill. 2002). Most of the injunctive relief sought by Mintel relates to the confidential information that Neergheen is alleged to have removed from Mintel's computers. Granting the requested relief to that extent only would prohibit Neergheen from using material that it appears he should not have taken in the first place. Therefore, any harm that he may suffer for the brief duration of the TRO would be in large part a consequence of his own conduct in the days leading up to his departure from Mintel.

The other injunctive relief that Mintel seeks pertains to the non-solicitation and non-compete provisions of Neergheen's employment agreements. As to the former, the Court finds that the balance of the harms weighs in favor of granting the requested relief. However, at this stage of the case and based on the current record, the Court cannot conclude that the balance of harms militates in favor of entering temporary injunctive relief on the non-compete provisions. Nor can the Court say with any degree of confidence that Mintel has a likelihood of success with respect to those provisions. In reaching that conclusion, the Court is guided by the settled propositions that a TRO is an extraordinary remedy and that it is Plaintiff's burden to show a clear entitlement to relief. Given those propositions, the Court cannot conclude that Defendant should be enjoined from working in his new position, at least during the short time period between the entry of the TRO and the hearing date on the motion for preliminary injunction. See *Credit Suisse First Boston, LLC v. Vender*, 2004 WL 2806191, at *4 (N.D. Ill. December 3, 2004). That conclusion in no way prejudges the Court's ultimate ruling on the enforceability of the non-compete provisions once the Court has a more complete factual record and the benefit of additional briefing from both parties.

### D.    Public Interest

Finally, the Court concludes that the public interest cuts both ways in this case. On the one hand, the public has a significant interest in enforcing contracts and preventing violations of

statutes. Yet, as noted above, there is a countervailing interest in an open and competitive marketplace and in enforcing only reasonable terms of non-compete agreements. At this stage of the case, the Court views these competing public interest considerations to be in equipoise.

## III.    Conclusion

Based on the foregoing, the Court grants in part and denies in part Plaintiff's emergency motion for a temporary restraining order and preliminary injunction and orders as follows:

1.      Based upon the pleadings and affidavits filed by Plaintiff and the arguments of counsel in open court, the Court finds that Plaintiff has sustained its burden and demonstrated some likelihood of success on the merits of its claims.  The Court also finds that Plaintiff likely does not possess an adequate remedy at law and will suffer irreparable harm should a temporary restraining order not be issued.  Finally, the balance of harms and public interest also are served by the issuance of a temporary restraining order as to certain of Plaintiff's requests as identified above.

2.      Pursuant to Federal Rule of Civil Procedure 65(b), a ten (10) day temporary restraining order, commencing at 2:30 p.m. on July 16, 2008 and expiring at 2:30 p.m. on July 30, 2008, is entered upon the following terms and conditions:

> A.    Defendant, his agents, servants, employees, officers, attorneys, successors and assigns, and all persons, firms, and corporations acting in connection or participation with him or on his behalf, are enjoined from using, referencing, evaluating, or copying all originals and copies of information or documents misappropriated from Mintel in hard copy or electronically stored;

> B.    Defendant, his agents, servants, employees, officers, attorneys, successors and assigns, and all persons, firms, and corporations acting in connection or participation with him or on his behalf, are enjoined from revealing or disclosing in any manner information and documents misappropriated from Mintel in hard copy or electronically stored;

11

C.    Defendant is required to return to Mintel all copied, printed, and/or downloaded files, materials, and information taken from Mintel;[2]

D.    Defendant is required to produce forensic copies of all personal desktop and/or laptop computers;

E.    Defendant, his agents, servants, employees, officers, attorneys, successors and assigns, and all persons, firms, and corporations acting in connection or participation with him or on his behalf, are prohibited from deleting any files from Defendant's personal desktop and/or laptop computer related to or taken from Mintel;

F.    Defendant is prohibited from contacting or soliciting any Mintel customer or client that Defendant had contact with during the last twelve (12) months of his respective employments with Mintel;

G.    Defendant is prohibited from soliciting or contacting any Mintel employee for purposes of working at Datamonitor or any other competitor of Mintel.

3.    Plaintiff's request for expedited discovery is granted. The parties may commence discovery at once. Written discovery responses are due within seven (7) days of service. Defendant shall appear for his deposition within ten (10) days.

4.    This matter is set for a preliminary injunction hearing on Monday, August 4, 2008 at 10:30 a.m. in Room 1919. Further details on briefing and other scheduling matters are addressed in a separate minute order.

Dated:  July 16, 2008

_____
Robert M. Dow, Jr.
United States District Judge

---

[2] As discussed at the July 15 hearing, counsel for Defendant may keep a copy of these materials for purposes of this litigation only.

**Katherine J. Pronk**

| | |
|---|---|
| **From:** | Katherine J. Pronk |
| **Sent:** | Thursday, July 17, 2008 9:43 AM |
| **To:** | jlervick@bellboyd.com |
| **Cc:** | Joseph Marconi |
| **Subject:** | Mintel v. Neergheen |

Jeana:

Can you please provide me with dates and times that your client is available for the scheduling of his deposition?  We were hoping to schedule his deposition for some time next week.

Also, please advise as to the Mintel employees you plan to depose.  Just so you know, Richard Carr of Mintel is on vacation through July 24, 2008 but is available for the scheduling of his deposition anytime after that date.  Also, Mintel's IT Director, Jason Carr, will be in Bulgaria from July 30, 2008 through August 15, 2008.  Therefore, if you plan on deposing Mr. Carr, his deposition will need to be scheduled before July 30, 2008.  Also, due to the fact Mr. Carr resides in London, would you be agreeable to taking his deposition via telephone?

Finally, Mintel would like to proceed with the forensic imaging of Mr. Neergheen's home computer(s).  Please advise as to the earliest date we can have access to Mr. Neergheen's hard drives.  In speaking with our forensic expert, he should only need possession of the hard drives for one day in order to complete the necessary imaging.

Thanks.

Katy

Katherine J. Pronk
Johnson & Bell, Ltd
33 W. Monroe St.
Suite 2700
Chicago, IL  60603
dir 312.984.0287
fax 312.372.9818
www.johnsonandbell.com

**EXHIBIT**

2

# Katherine J. Pronk

**From:** Lervick, Jeana R. [jlervick@bellboyd.com]
**Sent:** Thursday, July 17, 2008 11:39 AM
**To:** Katherine J. Pronk
**Cc:** Joseph Marconi; Roache, John T
**Subject:** RE: Mintel v. Neergheen

No problem, Katy. Thanks for the information and we will try to get some answers to your questions as quickly as possible.
It seems that the parties will both be wanting a Protective Order. I can draft one and send it over for your review hopefully by this afternoon or tomorrow morning at the latest.
Thanks and let me know if you have any additional questions.
Best,
Jeana

**Jeana R. Lervick | Bell, Boyd & Lloyd LLP**
70 W. Madison St., Ste. 3100 | Chicago, IL 60602-4207
t. 312-807-4339 | f. 312-827-1266
jlervick@bellboyd.com | www.bellboyd.com

---

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any further disclosure or use, dissemination, distribution, or copying of this message or any attachment is strictly prohibited. If you think that you have received this e-mail message in error, please delete it and notify Jeana R. Lervick (jlervick@bellboyd.com). If this message contains advice with respect to a Federal tax matter, in accordance with the Treasury Department's Circular 230 such advice is not intended or written to be used, and cannot be used, for the purpose of avoiding any Federal tax penalties.

---

-----Original Message-----
**From:** Katherine J. Pronk [mailto:pronkk@jbltd.com]
**Sent:** Thursday, July 17, 2008 11:15 AM
**To:** Lervick, Jeana R.
**Cc:** Joseph Marconi
**Subject:** FW: Mintel v. Neergheen

I apologize for the typo in my prior e-mail, Jeana. Mintel's IT Director is Jason Thomson. Thanks.

---

**From:** Katherine J. Pronk
**Sent:** Thursday, July 17, 2008 9:43 AM
**To:** jlervick@bellboyd.com
**Cc:** Joseph Marconi
**Subject:** Mintel v. Neergheen

Jeana:

Can you please provide me with dates and times that your client is available for the scheduling of his deposition? We were hoping to schedule his deposition for some time next week.

Also, please advise as to the Mintel employees you plan to depose. Just so you know, Rich

EXHIBIT

3

7/22/2008

## Katherine J. Pronk

**From:**     Katherine J. Pronk
**Sent:**     Friday, July 18, 2008 9:22 AM
**To:**       'Lervick, Jeana R.'
**Subject:** RE: Protective Order

Jeana:

The Protective Order looks good to us.  There are no additions or modifications from our end.

I spoke again with our forensic expert.  He said it is imperative that we receive Meesham's hard drive today in order to allow him enough time to perform his necessary analysis (prior to the deadline of the briefs).  Apparently, because he will be performing searches on Meesham's hotmail account, his analysis is more complicated.  Please let me know if we can pick up Meesham's hard drive sometime today.

I discussed with our forensic expert your privilege concerns regarding Meesham's home computer.  From a technical standpoint, he can conduct a search of the computer for the information we want (i.e. - use the hotmail email address to find webmail remnants) and then subject the findings to a secondary search to see if any of the responses contain an attorney name, email address or other privileged keyword.  He can produce the set of data that is responsive to the primary keywords but does not contain any secondary keywords.  This takes a little bit of extra time on his end in terms of production, but it is not overly difficult.

In addition, he highly recommended a protective order be entered as an added safeguard against such concerns.  I see that the Protective Order you drafted includes a "clawback" agreement so that we do not waive privilege for any documents inadvertently produced as a result of any such search.  So, we should be set in that regard.  Let me know if you have any additional questions on this issue.

Also, at your convenience, can you please let me know if you are agreeable to extending the Temporary Restraining Order entered by Judge Dow.  If not, we will proceed with filing a motion for an extension.

Thanks so much.

Katy

---

**From:** Lervick, Jeana R. [mailto:jlervick@bellboyd.com]
**Sent:** Thursday, July 17, 2008 4:38 PM
**To:** Katherine J. Pronk
**Subject:** Protective Order

Katy,
Thanks for our call.
In the meantime, here is the draft Protective Order.  Please let me know if you have any questions.
Thanks!
Jeana


<<BBLCH_D-#984659-v1-Protective_Order.DOC¤>>


**Jeana R. Lervick | Bell, Boyd & Lloyd LLP**
70 W. Madison St., Ste. 3100 | Chicago, IL 60602-4207

EXHIBIT
4

7/22/2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MINTEL INTERNATIONAL GROUP, LTD., a United Kingdom corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 08-cv-3939 |
| v. | ) ) ) | Hon. Robert M. Dow, Jr. |
| MEESHAM NEERGHEEN, an individual, | ) ) ) | |
| Defendant. | ) ) ) | |

## AGREED MOTION FOR ENTRY OF PROTECTIVE ORDER

Defendant Meesham Neergheen, and as agreed to by Plaintiff Mintel International Group Ltd., (collectively the "Parties"), by and through their attorneys, move this Court for entry of their proposed protective order. In support of this motion, the Parties state as follows:

1.      This matter is set for a preliminary injunction hearing to be held on August 4, 2008.

2.      Due to the nature of this litigation, the Parties recognize that discovery will involve production of confidential information and documents subject to protection under Fed. R. Civ. P. 26(c), which if disclosed would result in injury to one or more of the Parties.

3.      The Parties have reviewed Fed.R.Civ.P. 26(c), L.R. 26.2, and Judge Dow's Case Management Procedures as published on the Court's website, and have negotiated a protective order that is narrowly and carefully tailored to address their mutual concerns relating to the disclosure of confidential information, the ability to conduct appropriate discovery, and the

**EXHIBIT**

**5**

legitimate public interest.  A copy of the proposed protective order is attached hereto as Exhibit 1.

Dated July 18, 2008

                                        Respectfully submitted,

                                        By:   _/s/Jeana R. Lervick_____


                                        John T. Roache
                                        Jeana R. Lervick
                                        BELL, BOYD & LLOYD LLP
                                        Three First National Plaza
                                        70 West Madison Street
                                        Suite 3100
                                        Chicago, Illinois 60602
                                        312.372.1121
                                        312.827.8000 (facsimile)
                                        Attorney No. 90100

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MINTEL INTERNATIONAL GROUP, LTD., a United Kingdom corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 08-cv-3939 |
| v. | ) ) | Hon. Robert M. Dow, Jr. |
| MEESHAM NEERGHEEN, an individual, | ) ) ) | |
| Defendant. | ) ) ) ) | |

## AGREED PROTECTIVE ORDER

WHEREAS, the Parties, Plaintiff Mintel International Group, Ltd. ("Mintel") and Defendant Meesham Neergheen ("Mr. Neergheen") (collectively "the Parties"), and non-parties may, during the course of this action, be required to disclose trade secrets and other confidential research, development, marketing, or proprietary commercial information within the meaning of Rule 26(c) of the Federal Rules of Civil Procedure; and

WHEREAS, the Parties, through counsel, have moved for entry of this Protective Order pursuant to Rule 26(c) to prevent unnecessary disclosure or dissemination of such confidential information;

IT IS HEREBY ORDERED that the following provisions of this Protective Order regarding confidentiality (hereinafter "Order") shall govern and control the disclosure, dissemination, and use of information in this action.

## I.    NATURE OF INFORMATION AND MATERIALS PROTECTED

A.    *Applicability.* The confidentiality provisions of this Order shall apply to all depositions, productions of documents and things, answers to interrogatories, responses to requests for admissions, and all other discovery taken pursuant to the Federal Rules of Civil Procedure, as well as testimony adduced at trial, matters in evidence, and any other information that a producing party may designate as confidential in connection with this action.

B.    *Confidential Information of Third Parties.* The term "producing party" encompasses not only the Parties to this action but also third parties who may disclose or produce information, *e.g.*, in response to a subpoena.

C.    *"Confidential" Information* includes information in written, oral, electronic, graphic/pictorial, audiovisual, or other form, whether it be a document, information contained in a document, information revealed during a deposition, information revealed in an interrogatory answer, or otherwise:

1.    which is designated as such in writing by the producing party; and

2.    which constitutes, contains, describes and/or reflects information relating to products currently offered for sale, including but not limited to, trade secrets, processes, operations, know-how or apparatus, technical information, development or other technical or scientific information related thereto the disclosure of which (i) is likely to have the effect of harming the business operations or competitive position of the producing party, or a party in privity with the producing party, or (ii) would violate an obligation of confidentiality to a

2

third person, including a court.

D.    *Exceptions to confidential status.* Information will not be deemed confidential and protected, and the parties shall use reasonable efforts to ensure that information is not designated as such, if its content or substance:

1.  is at the time of production or disclosure, or subsequently becomes, through no wrongful act or failure to act on the part of the receiving party, generally available to the relevant public through publication or otherwise; or

2.  is already in the possession of the receiving party at the time of production, unless the receiving party obtained the information through improper means, as defined by the Uniform Trade Secrets Act (e.g., Wis. Stat. § 134.90), or with knowledge that its receipt of the information was improper; or

3.  is disclosed to the receiving party by a third party without breach of an obligation of confidence to the producing party.

E.    *"Confidential – Attorneys' Eyes Only" Information.* "Confidential" information may be additionally designated "Attorneys' Eyes Only" by counsel for the producing party for the purpose of identifying particularly sensitive Confidential information, including the identification of customers, amount or source of any income, profits, losses, expenditures, pricing, costs, marketing, sales, shipments, or any information describing, reflecting and/or relating to products in development or not otherwise offered for sale, including but not limited to, trade secrets, processes, operations, know-how or apparatus, technical information, development  which, if known to any officer, director, employee, or agent of a receiving party, would lead to a significant harm or injury to the reputation and/or

3

business of the producing party, or a party in privity with the producing party, and further limiting its access to a more restrictive group of persons.

## II.    RESTRICTIONS ON ACCESS TO CONFIDENTIAL INFORMATION

A.    Access to information that is designated "Confidential" shall be limited to counsel of record for any party, other law firm attorneys, other outside counsel and personnel, law firm personnel, in-house counsel, in-house clerical staff, service bureaus, outside consultants/experts, one in-house technical expert, and other qualified persons, as defined below:

1.    *"Other law firm attorneys"* means attorneys (*i.e.*, members in good standing of the bar of the highest court of any state or of any federal district court) who are members or employees of the law firms of the outside attorneys of record for any party but who are not themselves of record.

2.    *"Law Firm Personnel"* means (i) regular full- or part-time employees of the law firms of the outside attorneys of record for any party to whom it is necessary that the protected information in question be disclosed for purposes of any dispute between parties to this lawsuit and (ii) non-employee clerical personnel engaged by such law firms on a contract basis (e.g., data entry clerks) to whom it is necessary that the protected information in question be disclosed for purposes of any dispute prosecuting or defending this lawsuit and who are under duties and obligations of confidentiality to the law firms of the outside attorneys of record.

3.    *"Outside consultant/expert"* means a person who is not employed by the receiving party, is retained by that party or its attorneys of record in this litigation, for the purposes of assisting in preparation of this litigation for trial, such as an accountant, statistician, economist, technical consultant or other technical expert, provided: (i) the person has signed a

4

document in substantially the form of Exhibit A attached hereto; (ii) the person's identity as a designated outside consultant/expert and the person's curriculum vitae have first been disclosed in writing to the party producing the Confidential information; and (iii) the producing party has not served a written objection to the designation of the person as an "outside consultant/expert" within five (5) days of receiving notice of the person's identity; and (iv) the producing party has withdrawn any objection made to the designation.

4.    *"In-house counsel"* means attorneys (*i.e.*, members in good standing of the bar of the highest court of any state or of any federal district court) who are regular full- or part-time employees of the receiving party who are working directly on this litigation, and who are not substantively involved in patent preparation or prosecution relating to the subject matter of the patent(s) at issue in this litigation for the receiving party.

5.    *"In-house clerical staff"* means regular clerical employees (*e.g.*, legal assistants, secretaries, file clerks, but excluding personnel performing technology-related duties) of the receiving party who are working directly on this litigation under the direct supervision of either inside or outside counsel and to whom it is necessary that the confidential information in question be disclosed for purposes of this litigation.

6.    *"In-house expert"* means one person who is a regular full- or part-time employee of the receiving party who is working directly in connection with this litigation, who has substantive scientific and/or technical expertise relevant to the subject matter of the patent(s) at issue in this litigation, and who is not substantively involved in the receiving party's preparation or prosecution of patents related to the subject matter of the patent(s) at issue in this litigation, provided: (i) the person has signed a document in substantially the form of Exhibit A attached hereto; (ii) the person's identity as a designated in-house expert and the person's

curriculum vitae have been disclosed in writing to the party producing the Confidential information; and (iii) the producing party has not served a written objection to the designation of the person as an "in-house expert" within five (5) days of receiving notice of the person's identity; and (iv) the producing party has withdrawn any objection made to the designation. If the receiving party disputes the producing party's objection, it shall have the option to move the Court for inclusion of such person under this provision.

7.    *"Service bureau"* means a company that:

(a)    is independent of the parties, but a company will not be deemed non-independent solely because it does business, regularly or irregularly, with a party;

(b)    is engaged by counsel of record to perform clerical-type services in connection with this litigation, *e.g.*, photocopying, imaging, computer data entry, and the like; and

(c)    has executed an undertaking to be bound by the provisions of this Order in substantially the form of Exhibit A attached hereto, including the specific undertaking to instruct its employees who have access to protected information about their duty not to use or disclose such information.

8.    *"Other qualified persons"* means any other person (i) who is so designated (1) by order of the Court after notice to and an opportunity to be heard by all affected parties, or (2) by agreement of the producing party, and (ii) who has signed a document in substantially the form of Exhibit A attached hereto.

B.    *Access to Confidential Information designated "Confidential – Attorneys' Eyes Only"* shall be limited to counsel of record for any party, other law firm attorneys, other outside counsel and personnel, law firm personnel, outside consultants/experts, service bureaus, and

other qualified persons, as defined in paragraphs II.A.1-3 and 8.

C.    *Confidential information of nonparties.* In the event that a party seeks discovery from a nonparty to this action, the nonparty may invoke the terms of this Order in writing to all parties to the action with respect to any confidential information to be provided to the requesting party by the nonparty.

D.    *Disclosure to certain persons associated with producing party.* Nothing in this Order shall preclude any party to the lawsuit or their attorneys from showing a document designated as confidential to an individual employed by the producing party who prepared or reviewed or received the document prior to the filing of this action.

E.    *No waiver of right or obligation to object to production.* Nothing contained in this Order shall be construed as a waiver by any party of its right to object to the subject matter of any request for discovery in this action, nor as a waiver by any other party of the first party's obligation to make proper responses to discovery requests. The entry of this Order shall not be construed as an agreement by any party to respond to discovery requests or to supply any information which is outside the scope of discovery under the Federal Rules of Civil Procedure, and shall not constitute an admission that any documents or information that may exist is relevant or material in any way to the issues raised in the pending action or admissible in such action, nor as a waiver of any privilege with respect thereto.

F.    *Requests for additional protection.* This Order shall be without prejudice to the right of the parties to request additional protection under Rule 26(c), Fed. R. Civ. P., for discovery requests made hereafter by any party.

G.    *Future representation by counsel.* It is not the intent of the parties, nor of the Court, that an attorney or law firm that acquires knowledge of (or is given access to) confidential

7

information pursuant to this Order should thereby be disqualified from other representations adverse to the producing party solely because of such knowledge (or access).

## III.    DESIGNATION AND LABELING OF CONFIDENTIAL INFORMATION

A.        *Labeling of documents.* Information being designated as protected that is in documentary or other tangible form shall be labeled by the producing party, prior to its production, to reflect its intended designation. In labeling information as *Confidential* or *Confidential – Attorneys' Eyes Only*, the producing party will make such designation only as to that information that it in good faith believes to qualify under Part I of this Order.

B.        *Designation of other disclosures.* Information being designated as protected that is not in documentary or other tangible form, or that cannot conveniently be labeled, shall be designated and/or categorized by the producing party in a writing provided to the receiving party at the time of production.

C.        *Preliminary designation of documents being inspected.* If a producing party elects to produce documents and things for inspection, it need not label the documents and things in advance of the initial inspection. For purposes of the initial inspection, all documents within the produced files will be considered as having been marked "Confidential - Attorneys' Eyes Only." Thereafter, on selection of specified documents for copying by the inspecting party, the producing party shall mark either the original documents or the copies or such documents as may contain protected subject matter with the appropriate confidentiality marking at the time the copies are produced to the inspecting party.

D.        *Designation not determinative.* Designation of documents or other specified information as "Confidential" or "Confidential – Attorneys' Eyes Only" by counsel, or receipt of documents or information so designated, shall not be considered as determinative

8

of whether the contents of the documents or the information specified are entitled to be deemed as such.

E.    *Challenges to "Confidential" designations.* A party shall not be obligated to challenge the propriety of a designation of information as protected at the time made, and failure to do so shall not preclude a subsequent challenge thereto. If any party to the action disagrees at any stage of the proceedings with such a designation, that party shall provide to the producing party written notice of its disagreement. The parties shall first try to dispose of such dispute in good faith on an informal basis. The parties will work together in good faith to agree on, among other things, "declassification" or "downgrading" of redacted copies of particular documents or to agree that certain specified persons may be given access to particular protected information. If the dispute cannot be resolved, the party challenging the designation may request appropriate relief from the Court. Upon such a challenge, the burden of proving that the information has been properly designated as protected will shift to the producing party who made such designation.

F.    *Designation of and procedure for deposition testimony.* The following procedures shall be followed if confidential information of a producing party is discussed or disclosed in a deposition:

1.    The producing party shall have the right to exclude from attendance at the deposition, during such time as the confidential information is to be discussed or disclosed, any person other than the deponent, the court reporter, and persons entitled to access the Confidential information.

2.    The confidential information shall be designated as "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY" at the request of

counsel for the producing party (or, if the producing party is not a party to the action and is not represented at the deposition, at the request of counsel for the party disclosing the information or questioning the witness about it).

      3.      If a request under subparagraph 2 is made on the record during the deposition, the reporter shall indicate on the cover page of the transcript that the transcript contains "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY" information and additionally shall list the pages and line numbers of the transcript on which the information in question is contained.

      4.      Alternatively, a request under subparagraph 2 may be made in writing within ten (10) days after the requesting counsel receives a copy of the transcript of the deposition. The request shall contain a list of the numbers of the pages and lines of the transcript that are to be designated as containing Confidential or Confidential - Attorneys' Eyes Only information, and specific designations for each item or group of items on the list. The list shall be set forth on one or more separate pieces of paper, the first one of which shall bear the caption of the action and identifying information about the deposition. The requesting counsel shall insert the list before the cover page of the transcript and shall mail or fax copies of the list to counsel for all parties so that it may be affixed to the face of the transcript and each copy thereof.

      G.    *Inadvertent production.*

      1.      If a party inadvertently produces a document containing confidential information without marking or labeling it as such, the information shall not lose its protected status through such production and the parties shall take all steps reasonably required to assure its continued confidentiality if the producing party provides written notice to the receiving party within ten (10) days of the discovery of the inadvertent production of the document, identifying

the document in question and of the corrected confidential designation for the document.

2.    The inadvertent production of any document or other information during discovery in this action shall be without prejudice to any claim that such material is subject to the attorney-client privilege or is protected from discovery as work product within the meaning of Rule 26, Fed. R. Civ. P., if the producing party gives written notice to the receiving party within ten (10) days of the discovery of the inadvertent document production, identifying the document in question and claim to privilege or work product.

H.    By this Protective Order, the Parties do not waive their right to make application to this Court for a determination that material designated as Confidential Material does not contain confidential, sensitive, or personal information sufficient to justify the designation, or that under the circumstances the information should be released from the provisions of this Order.  If disputes arise concerning the propriety of designating particular documents as Confidential Material, whether certain documents or information should be released from the provisions of this Order, or concerning any other matter relating to the application of this Order, counsel shall attempt to resolve these disputes by agreement before asking the Court to resolve them.

IV.    **FILING CONFIDENTIAL INFORMATION WITH THE COURT**

A.    *Filing under seal.* No document containing confidential information shall be filed with this Court unless it is in a sealed, opaque container or envelope including on the outside thereof the designation "CONFIDENTIAL", the case heading of this litigation and a notification that the contents are subject to a protective Order and the container is not to be open to the public except on further order of this Court or by stipulation of counsel for all parties. The clerk of this Court is directed to maintain under seal all documents and transcripts of

deposition testimony designated as confidential that is so filed in this litigation.

        B.           *Use of information in court proceedings.* Any receiving party that knows that it intends to present confidential information of another party in oral form at trial, or during any pre- or post-trial hearing, shall first notify the Court and the producing party a reasonable amount of time in advance. Because of the policy favoring public attendance at judicial proceedings, the parties are strongly encouraged to agree on procedures that will minimize the presentation of protected information in open court. In appropriate circumstances, such procedures might include, *e.g.*, submission of written testimony under seal, presentation of "declassified" summaries of confidential information, and the like. The Court does not here determine which if any such procedures might be suitable in particular situations. Absent a stipulation of all parties, the fact that information has been designated as protected shall not be admissible during the trial of this action, nor shall the jury be advised of such designation.

## V.    PROCEDURES AFTER TERMINATION OF THIS CASE

        A.           *Continuing jurisdiction of the Court.* This Order shall survive the final conclusion of the action, and this Court retains jurisdiction of the parties hereto, and of any person who executes a copy of Exhibit A, indefinitely as to any dispute between any of them regarding improper use of information disclosed pursuant to this Order.

        B.           *Return and destruction of documents.*

        1.        Except as set forth below, within 60 days of final termination of this action, the attorneys of record for each receiving party shall return to each producing party or its attorneys of record, at the expense of the producing party, all documents (and copies thereof) and all materials (and any copies thereof) that have been furnished to it by the producing party and that have been identified as CONFIDENTIAL pursuant to this Order. At the option of the

12

producing party, such documents received by the receiving party may be destroyed in lieu of being returned to the producing party.

      2.    Notwithstanding subparagraph 1 above, the attorneys of record for a party may retain indefinitely, in "secure storage" (defined below), a single archival copy of documents containing confidential information that have been submitted to the Court or cited to the Court in any proceeding in this case, provided that said archival copy is not used or disclosed, except (i) as permitted by this Order, (ii) by agreement of the producing party in question, or (iii) by further order of this Court. The archival copy may be in hard-copy, electronic, magnetic, optical-disk, or other form, or any combination thereof. By way of example and not of limitation, outside counsel may maintain, *e.g.*, a set of pleadings, briefs, and similar court papers; a set of trial exhibits received in evidence a copy of the record on appeal; a reasonable number of backup tapes containing confidential information in electronic form that had been maintained on law firm computer networks (*i.e.*, counsel need not specifically purge their firms' routine backup tapes of protected information as long as the backup tapes are kept in secure storage); and the like.

      3.    For purposes of subparagraph 2 above, "secure storage" for archival copies of protected information does not include storage that is routinely physically accessible from a local-area network, wide-area network, or the Internet.

**IT IS SO ORDERED:**


Date:_____    _____
                                          United States District Judge

13

## EXHIBIT "A"

## AGREEMENT CONCERNING CONFIDENTIAL INFORMATION

The undersigned hereby acknowledges that he/she has read the Protective Order entered

in this litigation on _____ and that he/she understands the terms thereof, that

he/she has been designated by _____(INSERT NAME OF PARTY) as a

qualified person there under, and that he/she individually and on behalf of

_____ (INSERT NAME) agrees to be bound by the terms of such

Agreed Protective Order. The undersigned further understands that he/she can be

adjudged to be in contempt of Court if found to have violated the terms of this Protective

Order and that the Court may award an equitable and legal relief it deems appropriate.


_____        Dated: _____

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that a true and correct copy of **Agreed Motion for Entry of Protective Order** and its accompanying **Notice of Motion** have been served this 18th day of July, 2008 via ECF filing to:

> Joseph Marconi
> Victor Pioli
> Katherine J. Pronk
> JOHNSON & BELL, LTD.
> 33 West Monroe Street
> Suite 2700
> Chicago, Illinois 60603

> _/s/ Jeana R. Lervick_
> Jeana R. Lervick
> BELL, BOYD & LLOYD LLP
> 70 West Madison Street
> Suite 3100
> Chicago, IL 60602
> (312) 373-1121

## Katherine J. Pronk

**From:** Lervick, Jeana R. [jlervick@bellboyd.com]
**Sent:** Friday, July 18, 2008 10:52 AM
**To:** Katherine J. Pronk
**Subject:** RE: Protective Order

Thanks Katy,

Regarding the hard drive issue, we are in the process of having our retained expert make forensic copies of the hard drive. It appears that we will not be able to provide a copy until at least Monday. If anything changes on this front, I will let you know. We will, of course, maintain the laptop in our custody and will not allow access it until all issues are resolved.

Thank you for checking on the privilege issue. We are concerned, however, regarding your expert's proposed searches. The TRO does not provide for a search of Mr. Neergheen's email accounts. We are more than happy to give you all necessary information, but need to be mindful of relevance and privilege boundaries. I think the best solution would be for you to provide a list of the searches the expert proposes to run so that we can work together to get the necessary information to you without going outside of the TRO.

Regarding the extension, please clarify--are you asking that we agree to extend the briefing schedule? If that is the case, we are fine extending the dates to July 28/ 30 for briefs and responsive briefs, if that works for you folks.

Finally, Mr. Neergheen has indicated that he can make himself available for deposition next Thursday or Friday (July 24th or 25th) as you have requested. Please let me know which date you prefer. For our depositions, we will want to speak with at least Steve Charlton and Jason Thomson. You mention that Mr. Thomson is only available until July 30. Tuesday the 29th works best for us, if that's a possibility. Please let us know.

Thanks, and if you have any questions, feel free to call or email.
Best,
Jeana

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any further disclosure or use, dissemination, distribution, or copying of this message or any attachment is strictly prohibited. If you think that you have received this e-mail message in error, please delete it and notify Jeana R. Lervick (jlervick@bellboyd.com). If this message contains advice with respect to a Federal tax matter, in accordance with the Treasury Department's Circular 230 such advice is not intended or written to be used, and cannot be used, for the purpose of avoiding any Federal tax penalties.

-----Original Message-----
**From:** Katherine J. Pronk [mailto:pronkk@jbltd.com]
**Sent:** Friday, July 18, 2008 9:22 AM
**To:** Lervick, Jeana R.
**Subject:** RE: Protective Order

Jeana:

The Protective Order looks good to us. There are no additions or modifications from our end.

I spoke again with our forensic expert. He said it is imperative that we receive Meesham's hard drive today in order to allow him enough time to perform his necessary analysis (prior to the deadline of the briefs). Apparently, because he will be performing searches on Meesham's hotmail account, his analysis is more complicated. Please let me know if we can pick up Meesham's hard drive sometime today.

I discussed with our forensic expert your privilege concerns regarding Meesham's home com 

## Katherine J. Pronk

**From:**     Katherine J. Pronk
**Sent:**     Friday, July 18, 2008 3:07 PM
**To:**     'Lervick, Jeana R.'
**Subject:** RE: Protective Order

Jeana:

Thank you for the update regarding Meesham's computer.  We disagree with your interpretation of the TRO.  The TRO states that we are entitled to a forensic image of Meesham's computer, which would necessarily include his email accounts.  We understand your privilege concerns and are certainly willing to work with you on those issues (as my prior email indicated).  Please contact me via telephone to discuss further.

I apologize for how unclear my prior email was regarding my extension request.  We wanted to know whether you will agree to an extension of the TRO for an additional 10 days (as Judge Dow's Minute Entry discusses).

However, we would certainly appreciate some additional time to complete our briefs.  Changing the brief and responsive brief deadlines to July 28/30 sounds good to us.  I will draft a motion for an extension and file it with the Court today.

We will notice Meesham's deposition for Friday, July 25, 2008.  Also, I was incorrect in telling you that Mr. Thomson leaves for Bulgaria on the 30th.  He will fly out on the 29th.  So, we would appreciate it if we could schedule both Mr. Thomson and Mr. Charlton's depositions for Monday, July 28, 2008.  We can provide additional dates next week, if necessary.  Please let me know if you will agree to take their depositions by telephone or teleconference.

Thanks so much, Jeana.

Katy

**From:** Lervick, Jeana R. [mailto:jlervick@bellboyd.com]
**Sent:** Friday, July 18, 2008 10:52 AM
**To:** Katherine J. Pronk
**Subject:** RE: Protective Order

Thanks Katy,

Regarding the hard drive issue, we are in the process of having our retained expert make forensic copies of the hard drive.  It appears that we will not be able to provide a copy until at least Monday.  If anything changes on this front, I will let you know.  We will, of course, maintain the laptop in our custody and will not allow  access it until all issues are resolved.

Thank you for checking on the privilege issue.  We are concerned, however, regarding your expert's proposed searches.  The TRO does not provide for a search of Mr. Neergheen's email accounts.  We are more than happy to give you all necessary information, but need to be mindful of relevance and privilege boundaries.  I think the best solution would be for you to provide a list of the searches the expert proposes to run so that we can work together to get the necessary information to you without going outside of the TRO.

Regarding the extension, please clarify--are you asking that we agree to extend the briefing schedule?  If that is the case, we are fine extending the dates to July 28/ 30 for briefs and responsive briefs, if that works for you folks.

Finally, Mr. Neergheen has indicated that he can make himself available for deposition next Thursd

EXHIBIT

7

7/22/2008

## Katherine J. Pronk

**From:** Lervick, Jeana R. [jlervick@bellboyd.com]
**Sent:** Saturday, July 19, 2008 10:15 AM
**To:** Katherine J. Pronk
**Cc:** Roache, John T
**Subject:** Mintel v Neergheen

Katy,
First, my sincerest apologies. I was unexpectedly called out of the office yesterday afternoon. I asked one of our associates to contact you and just received word she mis-typed your email address and the email never went through. I am very sorry for the confusion.

I had asked her to convey that I would like to talk with you about the computer issue, as I think there is some lingo lost in translation. I also asked her to let you know we agree to the TRO extension and the briefing date changes-thank you very much for filing the motion. Finally I asked her to let you know we would prefer to depose your people in person, but are happy to work with you all on dates that are convenient.
Since then we have also confirmed that the person who was in charge of hiring and narrowing Mr Neergheen's position so as to not conflict with his job at Mintel is Mr Jeff Howard of the Datamonitor UK office. Please be aware that Mr Howard is leaving for vacation I believe next Wednesday July 23rd until after the 4th (I guess it's the season). If you folks would like to speak with him Monday or Tuesday, please let me know.

Thanks very much, and I apologize again for the delay.

Best,
Jeana

**Jeana R. Lervick | Bell, Boyd & Lloyd LLP**
70 W. Madison St., Ste. 3100 | Chicago, IL 60602-4207
t. 312-807-4339 | f. 312-827-1266
jlervick@bellboyd.com | www.bellboyd.com

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any further disclosure or use, dissemination, distribution, or copying of this message or any attachment is strictly prohibited. If you think that you have received this e-mail message in error, please delete it and notify Jeana R. Lervick (jlervick@bellboyd.com). If this message contains advice with respect to a Federal tax matter, in accordance with the Treasury Department's Circular 230 such advice is not intended or written to be used, and cannot be used, for the purpose of avoiding any Federal tax penalties.



EXHIBIT
8

## Katherine J. Pronk

**From:** Lervick, Jeana R. [jlervick@bellboyd.com]
**Sent:** Monday, July 21, 2008 12:49 PM
**To:** Katherine J. Pronk
**Subject:** RE: Subpoena

Katy,
I'm sorry--I didn't see the last part of your email when I responded before.
We are hoping to get your forensic copy of the hard drive to you today. To the extent that you all would like additional searches done, I have been told that the best way for us to go about it is to have your expert provide to us a list of searches, and our expert can conduct them. I am trying to confirm exactly what search terms are necessary, but am told that your expert should know what this entails.
As soon as I have more information on this front, I will let you know. I have stressed the importance of getting all of this quickly, and will continue to push for it. I'll be in touch soon.
Best,
Jeana

**Jeana R. Lervick | Bell, Boyd & Lloyd LLP**
70 W. Madison St., Ste. 3100 | Chicago, IL 60602-4207
t. 312-807-4339 | f. 312-827-1266
jlervick@bellboyd.com | www.bellboyd.com

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any further disclosure or use, dissemination, distribution, or copying of this message or any attachment is strictly prohibited. If you think that you have received this e-mail message in error, please delete it and notify Jeana R. Lervick (jlervick@bellboyd.com). If this message contains advice with respect to a Federal tax matter, in accordance with the Treasury Department's Circular 230 such advice is not intended or written to be used, and cannot be used, for the purpose of avoiding any Federal tax penalties.

-----Original Message-----
**From:** Katherine J. Pronk [mailto:pronkk@jbltd.com]
**Sent:** Monday, July 21, 2008 12:24 PM
**To:** Lervick, Jeana R.
**Subject:** Subpoena

Jeana:

Attached, please find a copy of Jeff Howard's Subpoena. Please let me know if you have any problems opening or viewing the attachment. Thank you for allowing us to informally subpoena Mr. Howard. We appreciate your courtesy.

Please contact me at your convenience to discuss Mr. Neergheen's hard drive. We were hoping to pick up Mr. Neergheen's computer today.

Thanks so much.

Katy

Katherine J. Pronk

**EXHIBIT**
**9**

## Katherine J. Pronk

**From:**     Lervick, Jeana R. [jlervick@bellboyd.com]
**Sent:**     Monday, July 21, 2008 12:49 PM
**To:**       Katherine J. Pronk
**Subject:**  RE: Subpoena

Katy,
I'm sorry--I didn't see the last part of your email when I responded before.
We are hoping to get your forensic copy of the hard drive to you today. To the extent that you all would like additional searches done, I have been told that the best way for us to go about it is to have your expert provide to us a list of searches, and our expert can conduct them. I am trying to confirm exactly what search terms are necessary, but am told that your expert should know what this entails.
As soon as I have more information on this front, I will let you know. I have stressed the importance of getting all of this quickly, and will continue to push for it. I'll be in touch soon.
Best,
Jeana

**Jeana R. Lervick | Bell, Boyd & Lloyd LLP**
70 W. Madison St., Ste. 3100 | Chicago, IL 60602-4207
t. 312-807-4339 | f. 312-827-1266
jlervick@bellboyd.com | www.bellboyd.com

---

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any further disclosure or use, dissemination, distribution, or copying of this message or any attachment is strictly prohibited. If you think that you have received this e-mail message in error, please delete it and notify Jeana R. Lervick (jlervick@bellboyd.com). If this message contains advice with respect to a Federal tax matter, in accordance with the Treasury Department's Circular 230 such advice is not intended or written to be used, and cannot be used, for the purpose of avoiding any Federal tax penalties.

---

-----Original Message-----
**From:** Katherine J. Pronk [mailto:pronkk@jbltd.com]
**Sent:** Monday, July 21, 2008 12:24 PM
**To:** Lervick, Jeana R.
**Subject:** Subpoena

Jeana:

Attached, please find a copy of Jeff Howard's Subpoena. Please let me know if you have any problems opening or viewing the attachment. Thank you for allowing us to informally subpoena Mr. Howard. We appreciate your courtesy.

Please contact me at your convenience to discuss Mr. Neergheen's hard drive. We were hoping to pick up Mr. Neergheen's computer today.

Thanks so much.

Katy

Katherine J. Pronk



EXHIBIT
tabbies
10

## Katherine J. Pronk

**From:**    Katherine J. Pronk
**Sent:**    Monday, July 21, 2008 4:57 PM
**To:**    'Lervick, Jeana R.'
**Subject:**    RE: 30(b)(6) Notice

Thanks for the update, Jeana.  I'll pass that information along to the attorney conducting tomorrow's deposition.

As for the computer, I just got off the phone with our forensic expert.  He said that he plans to perform the following searches: (1) search to find active files; (2) hash comparisons; and (3) html cards of web activity.  He said that if we provide him with all attorney email addresses, the emails to and from you and Mr. Roache will automatically be excluded from the html searches.

Please let me know if we can proceed with the forensic imaging of Meesham's computer.  We would still like to pick up his hard drive today.  Thanks.

Katy

---

**From:** Lervick, Jeana R. [mailto:jlervick@bellboyd.com]
**Sent:** Monday, July 21, 2008 4:35 PM
**To:** Katherine J. Pronk
**Cc:** Roache, John T
**Subject:** 30(b)(6) Notice

Dear Katy,
I just received Mintel's 30(b)(6) subpoena and notice.  After reviewing the 30(b)(6) topics, it appears that Jeff Howard is the person most knowledgeable about all of the topics with the possible exception of Datamonitor's document retention policies and certain aspects of the computers.  Mr. Howard will be able to respond to questions on these topics during his deposition tomorrow.

Thanks and talk with you soon.
Jeana

**Jeana R. Lervick | Bell, Boyd & Lloyd LLP**
70 W. Madison St., Ste. 3100 | Chicago, IL 60602-4207
t. 312-807-4339 | f. 312-827-1266
jlervick@bellboyd.com | www.bellboyd.com

---

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any further disclosure or use, dissemination, distribution, or copying of this message or any attachment is strictly prohibited. If you think that you have received this e-mail message in error, please delete it and notify Jeana R. Lervick (jlervick@bellboyd.com). If this message contains advice with respect to a Federal tax matter, in accordance with the Treasury Department's Circular 230 such advice is not intended or written to be used, and cannot be used, for the purpose of avoiding any Federal tax penalties.



**EXHIBIT**

11

**Katherine J. Pronk**

**From:** Lervick, Jeana R. [jlervick@bellboyd.com]
**Sent:** Monday, July 21, 2008 6:16 PM
**To:** Katherine J. Pronk
**Cc:** Roache, John T
**Subject:** RE: 30(b)(6) Notice

Hi Katy,
Thanks for the information.
While we appreciate the suggestion of your expert, it still does not alleviate our concerns. However, we want to make sure you get the information you need, as quickly as possible. I think that the best way to go about this is for the two experts to talk. Your expert can give ours precisely the searches that he wants our expert to run, and our expert can then make sure that he is getting you the information you seek while we can be comfortable with production. Here is our expert's contact information:
Andy Reisman
Elijah Technologies, Ltd.
866-354-5420 (ext 101)
andy@elijahtechnologies.com

Please have your expert contact ours at his earliest convenience. I will let our expert know that he will be contacted and we can get this taken care of.
Thanks,
Jeana

The information contained in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any further disclosure or use, dissemination, distribution, or copying of this message or any attachment is strictly prohibited. If you think that you have received this e-mail message in error, please delete it and notify Jeana R. Lervick (jlervick@bellboyd.com). If this message contains advice with respect to a Federal tax matter, in accordance with the Treasury Department's Circular 230 such advice is not intended or written to be used, and cannot be used, for the purpose of avoiding any Federal tax penalties.

-----Original Message-----
**From:** Katherine J. Pronk [mailto:pronkk@jbltd.com]
**Sent:** Monday, July 21, 2008 4:57 PM
**To:** Lervick, Jeana R.
**Subject:** RE: 30(b)(6) Notice

Thanks for the update, Jeana. I'll pass that information along to the attorney conducting tomorrow's deposition.

As for the computer, I just got off the phone with our forensic expert. He said that he plans to perform the following searches: (1) search to find active files; (2) hash comparisons; and (3) html cards of web activity. He said that if we provide him with all attorney email addresses, the emails to and from you and Mr. Roache will automatically be excluded from the html searches.

Please let me know if we can proceed with the forensic imaging of Meesham's computer. We would still like to pick up his hard drive today. Thanks.

Katy

**From:** Lervick, Jeana R. [mailto:jlervick@bellboyd.com]
**Sent:** Monday, July 21, 2008 4:35 PM
**To:** Katherine J. Pronk



EXHIBIT
12

# JOHNSON&BELL Ltd.
## —————— Attorneys at Law ——————

SUITE 2700
33 WEST MONROE STREET
CHICAGO, IL 60603-5404
TELEPHONE: (312) 372-0770
FACSIMILE: (312) 372-9818

1435 E. 85TH AVENUE
MERRILLVILLE, IN 46410
TELEPHONE: (219) 791-1900
FACSIMILE: (219) 791-1901

# FILE COPY

(312) 984-0211
marconij@jbltd.com

July 22, 2008
*Via E-mail & Regular Mail*

John Roache
Jeana Lervick
Bell, Boyd & Lloyd, LLP
70 W. Madison St., Ste. 3100
Chicago, IL 60602

   **Re:** **Mintel International Group, Ltd. v. Neergheen**
     **Case No. 08CV3939**
     **Our File No. 07855-08001**

Dear Counsel:

  The Temporary Restraining Order expressly states that we are entitled to obtain a forensic copy of Mr. Neergheen's personal computers. I have reviewed the emails exchanged regarding the hard drives and have come to the conclusion that we will face a new obstacle every day. Your continued delays in producing Mr. Neergheen's home computers are unacceptable and inexcusable. We have articulated to you the precautionary measures that our forensic expert will undergo to prevent the disclosure of any privileged information obtained from Mr. Neergheen's computers. We demand that you produce Mr. Neergheen's hard drive(s) by 5:00 p.m. today. Otherwise, we will proceed with notifying the Court of Mr. Neergheen's violation of the Temporary Restraining Order.

  Also, based upon the testimony provided today by Jeff Howard, we expect Datamonitor, at a minimum, to make Dylan Grey available for the Rule 30(b)(6) Deposition scheduled for Thursday, July 24, 2008 at 9:00 a.m.

  As a reminder, Mr. Neergheen's written discovery responses are due today. Should Mr. Neergheen fail to meet today's deadline, Mr. Neergheen will again be in violation of the Temporary Restraining Order, which clearly provides that all written discovery responses are due within seven days of service.

**EXHIBIT**

13

Mr. John Roache
Ms. Jeana Lervick
July 22, 2008

JOHNSON & BELL ltd.
—— Attorneys at Law ——

 

Finally, we disagree with the "Attorneys' Eyes Only" labeling of all of the documents produced by Jeff Howard.   We expect you to re-label the documents accordingly and provide us with new copies.  Otherwise, we will be left with no choice but to bring this matter before the Court.

Very truly yours,

Joseph R. Marconi



**BELL BOYD**
BELL, BOYD & LLOYD LLP

70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
312.372.1121 • Fax 312.827.8000

JEANA R. LERVICK
312.807.4339
jlervick@bellboyd.com
Direct Fax: 312.827.1266

**BY E-MAIL**
**CONFIRMATION VIA MESSENGER**

July 22, 2008

Joseph R. Marconi
JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, IL  60603

Re:     Mintel International Group, Ltd. v. Neergheen; Case No. 8-cv-3939

Dear Mr. Marconi:

Thank you for your letter of this afternoon.  As an initial matter, you mention that you have reviewed emails in this case between myself and your colleague.  If you would like to be copied on all future correspondence, please let me know.

First, your request that we produce Mr. Neergheen's computer by 5:00 p.m. today is, as you are aware, well outside of the scope of the TRO.  As an initial matter, the TRO states that a forensic copy of the computer is sufficient.  However, as you indicate that you have reviewed the correspondence, you are aware that we have also repeatedly expressed concern as to privilege issues and have received no help addressing these concerns.  Your expert's suggestion that emails to and from counsel could be withheld fails to address the primary concern that privileged material (particularly advice of counsel) resides within the emails and/or within other documents on the computer.  These matters are of great concern and Mintel has not fully addressed them.

We have therefore proposed a resolution that would speak to all of these issues, and at the same time provide Mintel the information it seeks.  In short, we have asked that your expert contact our expert and describe in detail all of the searches that he wishes to have done and how they should be done.  We have provided our expert's contact information and still have not been informed by Mintel why this solution is not acceptable.  In this regard, I enclose a signed and notarized affidavit from our expert indicating why our proposed solution is not only a guaranteed way to resolve these issues, it is common practice in such cases.  My understanding is that this process would take relatively little time (of course depending on the searches your

chicago • washington

EXHIBIT
14

Joseph R. Marconi
July 22, 2008
Page 2

expert requests), and, as it is to the benefit of both parties to have the information as quickly as possible, would surely benefit all more than seeking clarification on the matter from the Court. I therefore ask that you consider our suggested solution and have your expert contact our expert with the searches he would like run. If you need our expert's contact information again, please let me know.

Second, regarding the requested deposition of Dylan Grey, although he is a non-party and is located outside of the United States, we will of course make him available via telephone. However, as I have not yet had the opportunity to speak with Mr. Grey about his availability, I cannot confirm the date and time requested in your letter. I will let you know as soon as I can confirm his availability.

Third, you indicate that Mr. Neergheen's written discovery responses are due today. However, we believe that you are mistaken. Under the Federal Rules, we calculate that the responses are in fact due Thursday July 24, 2008. Rule 6 states that weekends are not to be included in calculation of dates, and the requests were served on July 15, 2008 by hand. If you are aware of authority that indicates to the contrary, please let us know immediately. On the topic of discovery requests, please find enclosed Mr. Neergheen's First Sets of Interrogatories and Document Requests.

Fourth, regarding designation of today's production of documents "Attorney's Eyes Only," as we discussed with your colleague this morning, the documents produced today were marked as such in the interest of time. We produced the documents despite the fact that they were requested by you yesterday evening and were not due (per your request) until tomorrow, at the earliest. Despite extreme obstacles, we obtained documents from non-parties (located overseas) and produced them, as this morning's witness will be unavailable after today. Again, as I explained this morning, we will further review the documents and de-designate them where necessary.

Finally, in light of Mr. Howard's testimony today, we request that Mintel consider withdrawing its Motion for Preliminary Injunction. It is clear that many of the assumptions of wrongdoing made in Mintel's Complaint are, in reality, to the contrary. Accordingly, it would be a more beneficial use of the parties' time to attempt to resolve the matter. We are available to discuss the matter further by any convenient means.

Very truly yours,

Jeana R. Lervick

Enclosures
Copy to John T. Roache

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| MINTEL INTERNATIONAL GROUP, LTD., a United Kingdom corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 08CV3939 |
| v. | ) ) | Judge Robert Dow, Jr. |
| MEESHAM NEERGHEEN, an individual, | ) ) ) | |
| Defendant, | ) ) | |

## AFFIDAVIT OF ANDREW REISMAN

I, Andrew Reisman, swear as follows:

1.      I am over the age of eighteen, have personal knowledge of the facts described in this affidavit, and if called as a witness would testify to the same.

2.      I am the President of Elijah Technologies, a company specializing in computer forensic investigations, electronic discovery and litigation support.  I am based out of Elijah Technologies' Chicago headquarters, and my company also has offices in Grand Rapids, Milwaukee, New York and Orlando.  Prior to founding Elijah Technologies in 2003, I was a partner practicing in litigation and technology law at Foley & Lardner in Chicago.

3.      I am an expert in the field of computer forensics.  As president of Elijah Technologies, I have had primary responsibility for well over 100 forensic engagements involving well over 1000 computers and other forms of electronic media.  I have earned certifications in the field as an EnCase Certified Examiner (EnCE), Certified Fraud Examiner (CFE) and Electronic Evidence Specialist (EES).  I have been qualified as an expert in computer forensics and testified in Illinois, Florida and Michigan courts.  My formal training in computer forensics includes completion of the Introductory and Advanced training courses offered by

Guidance Software, as well as attendance at various industry seminars. I have served on the Board of Directors of the International Information Systems Forensics Association and was a past president of its Chicago Chapter. I have lectured on computer forensics at accredited CLE programs sponsored by the Chicago Daily Law Bulletin and also by Elijah Technologies, as well as in courses at Northwestern University, Illinois State University and the DePaul University School of Law. My CV is attached as Exhibit A.

4.    My understanding is that a temporary restraining order in this matter has been entered that requires Defendant to produce to Plaintiff a forensic image of the hard drive from Defendant's notebook computer. I further understand that although Defendant used that computer during the course of his employment with Plaintiff, he also has used that computer in connection with his current position.

5.    Data can reside on a computer hard drive in a variety of locations, some of which are reasonably accessible to normal users and others of which require specialized tools to review. For example, computer hard drives typically contain a huge quantity of "unallocated space" in which deleted data resides until such time as it is written over in part by a new file. Substantive data also can reside in certain system files and "slack space" – neither of which would be available for a normal computer user to search and review.

6.    If Defendant is required to produce to Plaintiff a forensic image of the hard drive from his notebook computer, he potentially could be providing to Plaintiff attorney-client privilege communications that might reside on that device, as well as trade secrets of his current employer unrelated to this litigation. Moreover, even if Defendant were personally to undertake a search of the device for such information, due to the relative inaccessibility of areas of the drive to those not skilled in computer forensics, such a review even if conducted would not necessarily identify all attorney client communications and trade secrets that require withholding.

7.      Situations like these often arise in cases involving alleged trade secret misappropriation, and I have encountered them in many cases on which I have worked as a computer forensics expert.  The most common resolution to such issues is implementation of a search protocol for the drive in question.  Such protocols commonly function in the following manner.  Plaintiff and its computer expert could provide to Defendant a list of search terms relating to its allegedly proprietary information and instructions regarding the manner in which any responsive data would be produced.  Defendant's expert would conduct the searches and provide the results of same to Defendant's counsel to review for privilege and third-party confidential information.   Defendant's counsel would then produce to Plaintiff all non-privileged, non-confidential responsive documents.  Plaintiff could then identify to Defendant's counsel and expert any data it believes is proprietary, and Defendant's expert could remove such data from the drive and provide a certification of same.

8.      In my opinion implementation of such a protocol equitably balances the interest of the Plaintiff in protecting its allegedly proprietary information against the sanctity of the attorney-client privilege and the interest of Defendant and any third parties in safeguarding unrelated private or proprietary data.

_____
Andrew L. Reisman

Subscribed and sworn to before me this
22nd day of July, 2008

_____
Notary Public, Cook County, Illinois
My commission expires:  6/10/10
Acting in the County of  COOK

OFFICIAL SEAL
LYNNETTE M. HUTCHINSON
Notary Public - State of Illinois
My Commission Expires Jun 10, 2010