IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MINTEL INTERNATIONAL GROUP, ) <br> LTD., a United Kingdom corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MEESHAM NEERGHEEN, an individual, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No.: 08CV3939 <br><br> Judge Robert Dow, Jr. |

**RESPONSE TO PLAINTIFF'S MOTION FOR RULE TO SHOW CAUSE AND FOR A RESCHEDULING OF THE PRELIMINARY INJUNCTION HEARING**

Defendant, Meesham Neergheen ("Mr. Neergheen"), by his counsel, respectfully submits his response to Plaintiff, Mintel International Group, Ltd.'s ("Plaintiff") Motion for Rule to Show Cause and for Rescheduling of the Preliminary Injunction Hearing ("Motion").[1]

**Introduction**

In its Motion, Plaintiff seeks to compel Mr. Neergheen to produce attorney-client and other privileged communications, as well as personal information about Mr. Neergheen that has nothing to do with this matter. Mr. Neergheen has offered to produce all non-privileged documents, all non-personal, and a log as to all privileged and personal documents being withheld. Plaintiff has rejected Mr. Neergheen's offer and, under the guise of the temporary restraining order, contends that the Court has allowed Plaintiff to review all documents and make determinations as to whether any privileges apply. Plaintiff's position is not supported by the language of the temporary restraining order or applicable law and, accordingly, should be denied.

---

[1] Mr. Neergheen has no objection to extending, within reason, the briefing and hearing dates set by the Court.

**Factual Background**

On July 11, 2008, despite knowing of the facts surrounding this dispute for months, Plaintiff filed an emergency motion for a Temporary Restraining Order ("TRO") and Injunction. Two business days later, a hearing was held before the Court regarding the TRO. During the hearing, as Mr. Neergheen had agreed not to touch the emails Plaintiff contends were its property, and further agreed to forensic copying of his computer, the focus of the discussion was on the non-compete clauses. The TRO was issued the next day, setting forth the elements to which Mr. Neergheen had agreed, and denying Plaintiff's request to preclude him from working. However, precisely how Mr. Neergheen should turn over the information, while protecting the attorney-client privileged communications and personal information, was not addressed in the TRO.

Over the course of the next several days, Mr. Neergheen's counsel and Plaintiff's counsel exchanged correspondence regarding production of a forensic copy of Mr. Neergheen's laptop. As Mr. Neergheen's counsel repeatedly explained to Plaintiff's counsel, it is Mr. Neergheen's position that, in issuing the TRO, the Court did not intend to compel the production of privileged and personal material.

Because it is in both parties' interests to acquire the information on the computer, Mr. Neergheen's counsel proposed that the parties work together to find a mutually acceptable resolution. Plaintiff's counsel has demanded that all material be produced to Plaintiff's expert so that Plaintiff's expert may independently determine whether material is privileged or personal. Compliance with such a demand, however, would result in waiver of the attorney-client privilege and the divulgence of personal information.

**Argument**

Plaintiff should not be allowed to compel the production of privileged and personal material from Mr. Neergheen. While parties may obtain discovery regarding any relevant matter that is admissible, or that may lead to the discovery of admissible evidence, this leeway stops immediately when the information sought is *privileged*. FED.R.CIV.P. 26(b)(1), (3) (emphasis added). Certainly, this fundamental tenet of federal law was not to be disregarded by the TRO.

    A.    **Plaintiff's Motion Should Be Denied Because It Would Result In The Waiver Of Mr. Neergheen's Attorney-Client Privilege**

It is a basic principle that attorney-client privilege is a necessary and vital part of our legal system — one that must be safeguarded. As stated by the Supreme Court:

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co., et al. v. United States, et al.*, 449 U.S. 383, 389 (1981). While computer records are documents discoverable under the federal rules, protective measures are often put into place to ensure compliance with discovery rules. *See generally, Andrew Corp. v. Beverly Mfg. Co.*, 415 F. Supp.2d 919, 926 (N.D. Ill. 2006)(discussing the "duty to safeguard the sacrosanct privacy of the attorney-client privilege.") These safeguards may be implemented in any number of devices, including use of court-ordered experts or privilege logs. *See Vennet v. American Intercontinental University Online*, 2007 WL 4442321 at *2 (N.D. Ill. Dec. 13, 2007). It is clear, however, that new technological advances and issues are not to supersede rules surrounding discovery.

1. <u>The Access to Mr. Neergheen's Computer that Plaintiff Seeks is Not Contemplated by the TRO</u>.

As an initial matter, the relief that Plaintiff seeks is beyond the scope of that allowed by the Court. Plaintiff contends that it is entitled to custody of Mr. Neergheen's computer, as well as full access to his personal email account. However, even on the face of the TRO drafted in part by Plaintiff, such relief is not proper. The TRO, in pertinent part, provides:

> C. Defendant is required to return to Plaintiff all copied, printed, and/or downloaded files, materials, and information taken from Plaintiff;
>
> D. Defendant is required to produce forensic copies of all personal desktop and/or laptop computers…

Neither provides that Plaintiff may take custody of Mr. Neergheen's computer and neither provides that his personal email account may be reviewed. Instead, it requires that any copied, printed, and/or downloaded information must be returned to Plaintiff. Additionally, the TRO provides that Defendant is to produce forensic copies of the computer, which is discussed further below. Contrary to Plaintiff's position, nothing provides that the computer itself is not to be turned over. Moreover, forensic copying of a computer does not encompass such a procedure. *Cf., Adobe Systems, Inc. v. South Sun Products, Inc.*, 187 F.R.D. 636, 642-43 (S.D.Cal.1999))(Limiting the types of files produced from a hard drive to those reasonably likely to contain material potentially relevant to the matter.) Accordingly, seeking such relief is inappropriate.

2. <u>Non-Discoverable and Privileged Information Will Certainly be Disclosed Through Plaintiff's Method of Discovery</u>.

Regarding production of the forensic copy of Mr. Neergheen's computer, the TRO is silent as to the method of such a production, and the parties did not discuss the matter during the July 15, 2008 hearing. However, to contemplate production of information where that

information is certain to contain non-discoverable and privileged information is contrary to the fundamentals of federal law.

Privileged materials exist in Mr. Neergheen's e-mail account and on his hard drive. Mr. Nergheen's hard drive contains communications with counsel regarding this matter and communications regarding the advice of counsel. If Plaintiff's Motion is granted, privileged material will be produced and waiver will occur. While Plaintiff contends that the "clawback" provision of the Joint Protective Order would prevent the waiver of privilege as to any documents "inadvertently" produced, such provision is inapplicable and insufficient because: (1) if Mr. Neergheen is ordered to produce attorney-client privileged communications, he would do so knowingly (albeit, begrudgingly) – not "inadvertently"; and (2) it would defeat the purpose of the attorney-client privilege if Plaintiff was allowed to review these communications and then promise to forget about them – one can't unring a bell.

Moreover, the production method suggested by Plaintiff would result in personal information being produced which has no bearing on this matter. Counsel for Plaintiff has already represented that this case is a personal issue Plaintiff has against Mr. Neergheen. Such is further emphasized by Plaintiff's attempts to seek discovery regarding Mr. Neergheen's visa status in the U.S.—a topic that has no relevance to the present matter, apart from Plaintiff's personal desire to disrupt Mr. Neergheen's life. Such is precisely why discovery safeguards exist—to allow Plaintiff all of the information it seeks, provided it is entitled to that information. Plaintiff's method of obtaining that information overreaches these boundaries and is improper. Accordingly, Mr. Neergheen sought a method of fully complying with the TRO, while at the same time preventing the certain disclosure of privileged material and, potentially, the waiver of the attorney-client privilege.

      **B.**      **Mr. Neergheen's Solution Provides the Relief Granted in the TRO While Still Maintaining Privilege.**

In the interest of addressing these concerns, counsel for Mr. Neergheen sought a way of providing the information, while balancing Mr. Neergheen's rights to safeguard his attorney-client privilege. Mr. Neergheen proposed to provide Plaintiff with all of the information it seeks, while at the same time maintaining privilege. Specifically, Plaintiff would be in charge of picking all searches that it would like conducted on the computer. If it desired, it could also be present when the searches were run. As noted to Plaintiff, this method is not only beneficial to all, it is commonplace in such situations. *See* Affidavit of Andrew Reismann, Mr. Neergheen's expert, a copy of which is attached hereto as Exhibit A. The affidavit was provided to Plaintiff's counsel, but has not been commented upon. Plaintiff has not actually objected to this method, and has provided no reasoning or basis for doing so.[2] Mr. Neergheen's proposed solution satisfies the rules of discovery, without sacrificing his rights to privilege.

---

[2] At a minimum, a neutral third party may be appointed by the Court, to make the copy and allow counsel for Mr. Neergheen to review it for privilege and relevancy issues. Such has been found proper by this district. *See Vennet*, 2007 WL 4442321 at *2 .

**Conclusion**

For the reasons set forth above, Mr. Neergheen respectfully requests the Court deny Plaintiff's Motion for Rule to Show Cause.

Dated this 23rd day of July 2008.

                                        Respectfully submitted,
                                        MEESHAM NEERGHEEN, an individual,

                                        Defendant,

                                        By:__/s/ *Jeana R. Lervick*_____
                                            One of Its Attorneys

John T. Roache
Jeana R. Lervick
Bell, Boyd & Lloyd LLP
Three First National Plaza
70 West Madison Street
Suite 3100
Chicago, Illinois  60602
312.807.4339
312.827.1266 (facsimile)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MINTEL INTERNATIONAL GROUP, LTD., a United Kingdom corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 08CV3939 |
| v. | ) ) | Judge Robert Dow, Jr. |
| MEESHAM NEERGHEEN, an individual, | ) ) ) | |
| Defendant, | ) ) | |

### AFFIDAVIT OF ANDREW REISMAN

I, Andrew Reisman, swear as follows:

1. I am over the age of eighteen, have personal knowledge of the facts described in this affidavit, and if called as a witness would testify to the same.

2. I am the President of Elijah Technologies, a company specializing in computer forensic investigations, electronic discovery and litigation support. I am based out of Elijah Technologies' Chicago headquarters, and my company also has offices in Grand Rapids, Milwaukee, New York and Orlando. Prior to founding Elijah Technologies in 2003, I was a partner practicing in litigation and technology law at Foley & Lardner in Chicago.

3. I am an expert in the field of computer forensics. As president of Elijah Technologies, I have had primary responsibility for well over 100 forensic engagements involving well over 1000 computers and other forms of electronic media. I have earned certifications in the field as an EnCase Certified Examiner (EnCE), Certified Fraud Examiner (CFE) and Electronic Evidence Specialist (EES). I have been qualified as an expert in computer forensics and testified in Illinois, Florida and Michigan courts. My formal training in computer forensics includes completion of the Introductory and Advanced training courses offered by

Guidance Software, as well as attendance at various industry seminars. I have served on the Board of Directors of the International Information Systems Forensics Association and was a past president of its Chicago Chapter. I have lectured on computer forensics at accredited CLE programs sponsored by the Chicago Daily Law Bulletin and also by Elijah Technologies, as well as in courses at Northwestern University, Illinois State University and the DePaul University School of Law. My CV is attached as Exhibit A.

4. My understanding is that a temporary restraining order in this matter has been entered that requires Defendant to produce to Plaintiff a forensic image of the hard drive from Defendant's notebook computer. I further understand that although Defendant used that computer during the course of his employment with Plaintiff, he also has used that computer in connection with his current position.

5. Data can reside on a computer hard drive in a variety of locations, some of which are reasonably accessible to normal users and others of which require specialized tools to review. For example, computer hard drives typically contain a huge quantity of "unallocated space" in which deleted data resides until such time as it is written over in part by a new file. Substantive data also can reside in certain system files and "slack space" – neither of which would be available for a normal computer user to search and review.

6. If Defendant is required to produce to Plaintiff a forensic image of the hard drive from his notebook computer, he potentially could be providing to Plaintiff attorney-client privilege communications that might reside on that device, as well as trade secrets of his current employer unrelated to this litigation. Moreover, even if Defendant were personally to undertake a search of the device for such information, due to the relative inaccessibility of areas of the drive to those not skilled in computer forensics, such a review even if conducted would not necessarily identify all attorney client communications and trade secrets that require withholding.

7.      Situations like these often arise in cases involving alleged trade secret misappropriation, and I have encountered them in many cases on which I have worked as a computer forensics expert. The most common resolution to such issues is implementation of a search protocol for the drive in question. Such protocols commonly function in the following manner. Plaintiff and its computer expert could provide to Defendant a list of search terms relating to its allegedly proprietary information and instructions regarding the manner in which any responsive data would be produced. Defendant's expert would conduct the searches and provide the results of same to Defendant's counsel to review for privilege and third-party confidential information. Defendant's counsel would then produce to Plaintiff all non-privileged, non-confidential responsive documents. Plaintiff could then identify to Defendant's counsel and expert any data it believes is proprietary, and Defendant's expert could remove such data from the drive and provide a certification of same.

8.      In my opinion implementation of such a protocol equitably balances the interest of the Plaintiff in protecting its allegedly proprietary information against the sanctity of the attorney-client privilege and the interest of Defendant and any third parties in safeguarding unrelated private or proprietary data.

_____
Andrew L. Reisman

Subscribed and sworn to before me this
22nd day of July, 2008

_Lynnette M Hutchinson_
Notary Public, Cook County, Illinois
My commission expires: 6/10/10
Acting in the County of Cook

OFFICIAL SEAL
LYNNETTE M. HUTCHINSON
Notary Public - State of Illinois
My Commission Expires Jun 10, 2010

2

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a true and correct copy of **Response to Motion for Rule to Show Cause** have been served this 23rd day of July, 2008 via ECF filing to:

>Joseph Marconi
>Victor Pioli
>Katherine J. Pronk
>JOHNSON & BELL, LTD.
>33 West Monroe Street
>Suite 2700
>Chicago, Illinois 60603

>_____/s/ *Jeana R. Lervick*_____
>Jeana R. Lervick
>BELL, BOYD & LLOYD LLP
>70 West Madison Street
>Suite 3100
>Chicago, IL 60602
>(312) 373-1121