## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MINTEL INTERNATIONAL GROUP, LTD., a United Kingdom corporation, | ) ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | Case No. 08-cv-3939 Judge Robert Dow, Jr. |
| v. | ) | Magistrate Judge Maria Valdez |
| MEESHAM NEERGHEEN, an individual | ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

## NEERGHEEN'S SUPPLEMENT IN SUPPORT OF
## HIS MOTION TO COMPEL PARTY WITNESSES FOR IN-PERSON DEPOSITIONS

Pursuant to the Court's request, Defendant/ Counter-Plaintiff Meesham Neergheen ("Neergheen") hereby respectfully submits his supplement in support of his motion to compel witnesses of Plaintiff/ Counter-Defendant Mintel International Group, Inc. ("Mintel"). In further support of his motion, Neergheen states as follows:

1.    On August 21, 2008, the Court requested additional briefing regarding Neergheen's motion to compel three employee witnesses of Mintel — Mr. John Weeks, Mr. Steve Charlton, and Ms. Sabine Popp — to sit for deposition in Illinois, the forum in which Mintel chose to file suit. In particular, the Court requested clarification as to whether (1) any of the three requested deponents are non-management employees of Mintel; and (2) non-management employees of Mintel are "parties" under discovery rules. In the present case, the three witnesses in-question are "parties" under the discovery rules as clearly outlined by this district. Mr. Weeks, Ms. Popp and Mr. Charlton are Mintel's Chairman, Global Marketing Director, and Global Executive, respectively. *See* Exhibit AA, Mintel's Answers to Defendant's

First Set of Interrogatories.

2.    The general rule that a plaintiff must appear at depositions in the forum of its choosing applies both to witnesses appearing on behalf of the company, as well as witnesses with knowledge who are employed by the plaintiff. *Continental Baking Co. v. M&G Automotive Specialists*, 1993 U.S. Dist. LEXIS 3232 at *3 (N.D. Ill. March 12, 1993). Employees with knowledge — "parties" for purposes of discovery — have found by the Northern District of Illinois to encompass both management, as well as non-management employees. *Id.*, *Autexpo S.p.A. v. Midas International Corp.,* 1987 U.S. Dist. LEXIS 12774, at *2 (N.D. Ill. Dec. 8, 1987). For example, in *Continental Baking*, Judge Gottschall found that a plaintiff's corporate counsel, a vice president/general manager of one of its divisions, and a distribution manager all constituted agents of the company sufficient to compel their depositions in the forum in which the case was filed.[1] *Continental Baking*, 1993 U.S. Dist. LEXIS at *3-4. Moreover, in *Autexpo*, Judge Moran found that an ***administrative assistant*** had sufficient knowledge of the facts surrounding the case to qualify her as a "party" for discovery purposes and to compel the witness to appear in the forum chosen by the plaintiff. *Autexpo,* 1987 U.S. Dist. LEXIS at *2. Accordingly, even where a deponent's title is not necessarily "managerial," he or she still may be considered a "managing agent," and thus a "party" for discovery purposes.

3.    While a set definition of "managing agent" is unclear, courts generally agree on a

---

[1]    Of note, Mintel argues in its response to Neergheen's Motion that *Continental Baking* is inapposite and demonstrates that Mr. Charlton and Ms. Popp should have been subpoenaed. Mintel even goes so far as to stated that Neergheen "attempts to misconstrue the language found within" the case and indicates it supports the proposition that depositions of corporation officers should be taken at the corporation's principal place of business. [Response p. 8]. Both premises, however, are incorrect. *Continental Baking* states in clear language that "…a party, or an officer, director or managing agent of a party to an action…" need not be subpoenaed. *Continental Baking*, 1993 U.S. Dist. LEXIS at *3. Moreover, far from being misconstrued by Neergheen, the case is clear—the court ordered managing agents (not simply 30(b)(6) witnesses) of the plaintiff to sit for deposition in the forum in which the case was filed. *Id.* at *6.

number of factors in deciding whether an individual is a managing agent. These factors include: (1) whether the corporation has invested the person with discretion to exercise his judgment, (2) whether the employee can be depended upon to carry out the employer's directions, and (3) whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to the interests of the adverse party. *In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535 (D. Md. 1996); *see also Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 242 F.R.D. 470 (N.D. Ill. 2007)(distinguishable on other grounds from the present case in that the agents sought were *former* agents of the company). Other factors, too, may be considered, including the degree of supervisory authority which a person is subject to in a given area, as well as the general responsibilities of the individual regarding the matters at issue in the litigation. *In re Honda*, 168 F.R.D. 535. "The 'paramount test' is whether the individual can be expected to identify with the corporation's interests as opposed to an adversary's." *Id.* Here, Mr. Weeks as Chairman, Ms. Popp as Global Marketing Director, and Mr. Charlton as Global Executive clearly satisfy the test above.

3.    In the present case all three noticed witnesses are, at a minimum, managing agents of Mintel. As acknowledged by Mintel in their Supplement and Interrogatory Responses, all three are position-holders within the company, and can be expected to identify with the corporation's interests as opposed to Mr. Neergheens. Accordingly, the "paramount test," described above, is fulfilled.

4.    Unable to dispute Mr. Weeks' position with the company, Mintel instead argues that his deposition would be burdensome as he has no special knowledge of the case. However, all three witnesses were identified by Mintel in its interrogatory responses as persons with knowledge of facts in this case — including Mr. Weeks. [Exhibit AA]. Mintel simply cannot

now claim that Mr. Weeks has no special knowledge.  Moreover, the special "burden" cited by

Mintel — the cost and time associated with travel — is equally unpersuasive.  In *Continental

Baking*, the court found this exact objection lacking, stating "[b]alancing the equities, and

bearing in mind that plaintiff chose to file a lawsuit in this forum, defendants' [motion to

compel] is granted."  *Continental Baking*, 1993 U.S. Dist. LEXIS at *6.  Finally, not only does

Mr. Weeks have knowledge of the issues surrounding this litigation, since the matter was filed he

has been actively making first-hand veiled threats against both Neergheen and his current

employer Datamonitor.  As it is becoming clear that Mintel's actions against Neergheen and

Datamonitor have expanded outside of this litigation, he is a necessary witness, and Neergheen is

entitled to depose him with evidence in-person.

5.      Regarding Mr. Charlton and Ms. Popp, not only are both positioned in managerial

roles by Mintel, their intimate knowledge of the facts surrounding this matter classify them as

"parties" for discovery purposes.[2]  First, Mr. Charlton and Ms. Popp are both in technically

managerial positions.  Even Mintel acknowledges that they "oversee and manage" aspects of the

business.  [D.I. 46 at 2].  But more than being considered a "manager," Mr. Charlton and Ms.

Popp are both managerial agents for purposes of discovery.  As "executives" of the company

who "oversee and manage" aspects at the company's direction, both witnesses fall within the

"paramount test."

6.      Moreover, it is even more clear that Mr. Charlton and Ms. Popp are "parties" for

purposes given their intimate knowledge of the facts surrounding Mintel's lawsuit.  As discussed

---

[2] While Mintel correctly notes in its Supplement that Neergheen bears the burden of proof as a party seeking discovery, it incorrectly assumes this burden necessarily carries over to determination of whether a party is a "managing agent."  In fact, several courts have found to the contrary.  *See In re Honda*, 168 F.R.D. 535 ("While the burden of proof rests on the party seeking discovery, doubt about an individual's status as a 'managing agent,' at the pre-trial discovery stage, are resolved in favor of the examining party.")

in *Autexpo*, as well as in *In re Honda*, managing agents for these can be determined through their activities both within the company as well as their connection to the case. *Autexpo*, 1987 U.S. Dist. LEXIS at *1-2. Not only are Mr. Charlton and Ms. Popp involved in supervisory roles in Mintel, they have exclusive knowledge regarding the case at-bar. Moreover, their responsibilities in this matter are far from ministerial—both had decision-making roles in Mr. Neergheen's career path. As shown at Exhibit BB, Mr. Charlton and Ms. Popp both were extensively involved in Mr. Neergheen's departure from Mintel. Their testimony regarding Mintel's actions is extremely important to Neergheen's defenses. And, as the truth and veracity of the witnesses is a key element to their testimony, it is important that they be videotaped and be allowed to view a significant number of documents in the process. As in the *Autexpo* case, Mr. Charlton and Ms. Popp had continuing liaison responsibilities respecting this action, and those responsibilities include discretion in deciding Mr. Neergheen's employment (and unemployment) terms. Accordingly, both witnesses are also considered "parties" for purposes of discovery and must be compelled to sit in-person for their depositions.

7.      In light of the above, the answers to the Court's requests are as follows:

(1) whether any of the three requested deponents are non-management employees of Mintel; ***No, the requested deponents are management employees of Mintel,*** and

(2) whether non-management employees of Mintel are "parties" under discovery rules; ***Yes, even if the three employees were considered non-management, they are still parties under discovery rules and must testify in the forum in which the Plaintiff filed suit***.

WHEREFORE, for the foregoing reasons Defendant/ Counter-Plaintiff Meesham Neergheen respectfully requests that the Court enter an order compelling the depositions of Steve Charlton, John Weeks and Sabine Popp in Chicago, as noticed.

Dated:  August 25, 2008

<div style="margin-left: 50%;">

___/s/ Jeana R. Lervick_____

John T. Roache
Jeana R. Lervick
Joel C. Griswold
Bell, Boyd & Lloyd LLP
70 West Madison Street
Suite 3100
Chicago, Illinois 60602
312.372.1121
312.827.8000 (facsimile)

</div>

# EXHIBIT AA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MINTEL INTERNATIONAL GROUP,  )
LTD, a United Kingdom corporation,  )
                                     )
        Plaintiff,                 )   Case No.: 08 CV 3939
                                       )
v.                                 )   Hon. Robert M. Dow, Jr.
                                     )
MEESHAM NEERGHEEN, an individual,  )
                                     )
        Defendant.             )
                                     )

## MINTEL INTERNATIONAL GROUP, LTD.'S ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff MINTEL INTERNATIONAL GROUP, LTD., by and through its attorneys, hereby provides the following Answers to Defendant's First Set of Interrogatories:

## GENERAL OBJECTIONS

1.    Mintel objects to these discovery requests to the extent that the requests seek to require Mintel to provide information other than that which may be obtained through a reasonably diligent search of its records.

2.    Mintel objects to these discovery requests to the extent that they seek to require it to reveal trade secrets or other confidential product or proprietary information.

3.    Mintel objects to these discovery requests to the extent that they seek to require it to respond to questions or to identify or produce documents relating to times, events, and other things beyond the subject matter of the Complaint.

1

4.　　Mintel objects to these discovery requests to the extent that they seek to require it to provide information or to identify any documents or other tangible things prepared or obtained in anticipation of litigation or for trial where Defendant has not shown that it: (i) has a substantial need for the material in the preparation of the case, and (ii) is unable to obtain the substantial equivalent of the materials by other means without undue hardship.

5.　　Mintel objects to these discovery requests to the extent that they seek to require it to disclose privileged attorney-client communications or information otherwise protected from discovery on the grounds of privilege.

6.　　Mintel objects generally to these discovery requests on the grounds and to the extent that they assume facts not in evidence or that are otherwise erroneous, are not relevant to the subject matter of the litigation, and are not calculated to lead to the discovery of admissible evidence.

7.　　Mintel objects to these interrogatories on the grounds that they are burdensome, overly broad and harassing. Many of the interrogatories call for Mintel to provide responses concerning events and records without any limitation as to time.

8.　　Mintel objects to these interrogatories on the grounds that they are compound, unduly burdensome, oppressive, overly broad as to time, scope and location, and are repetitive. The use of the terms "any", "all", "each", other", and "including but not limited to" are overly broad and objected to.

9.　　Mintel objects to these interrogatories on the grounds that they are vague and lack particularity. Mintel cannot determine the precise nature of the information

2

sought and, therefore, it is not required to respond or cannot respond without an unreasonable risk of inadvertently providing a misleading, confusing, inaccurate or incomplete response.

10.    Mintel also objects to these interrogatories to the extent that they seek information or materials which have been gathered or prepared in the course of litigation, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation, or any other applicable privilege.

11.    Mintel objects generally to Defendant's requests as seeking documents already in Defendant's possession, custody or control and/or documents already available to the public.

12.    Mintel objects to the instructions and definitions supplied by Defendant with regard to these interrogatories on the basis that the definitions are overly broad, vague, and often inconsistent with the normal usage and meaning of such words, and the instructions are overly broad, burdensome, and constitute an unreasonable expansion of the interrogatories themselves. Mintel, therefore, has responded to the interrogatories in the manner consistent with the normal understanding of the language used in the response and to the extent necessary to figuratively and fully respond to the interrogatories.

13.    Subject to the foregoing "General Objections" and the limitations that are outlined with regard to each specifically numbered discovery request, Mintel responds to Defendant's interrogatories without waiver of, and with the preservation of the following:

    a.    The right to object to the use of any responses, or the subject matter thereof, on any ground in any proceedings and action;

3

b.      The right to object on any ground, at any time, to a demand or request for a further response to these discovery requests or to any other discovery requests relating to the matters contained herein; and,

c.      The right at any time to revise, correct, add to, supplement, or clarify any of the responses to Defendant's interrogatories contained herein.

## ANSWERS AND OBJECTIONS

**Interrogatory No. 1:** State with particularity all steps taken by Mintel to maintain information it considers to be proprietary confidential, including but not limited to actions taken, by whom, and whether documentation exists as part of this effort.

**Answer:** In addition to the General Objections listed above, Mintel objects to Interrogatory No. 1 as overly broad and unduly burdensome. Mintel further objects to the extent the request calls for a legal conclusion. Without waiving said objections, please see the Affidavit of Jason Thomson and Affidavit of Richard Carr, attached as "Exhibit 2" and "Exhibit 3," respectively, to Mintel's Memorandum in Support of Emergency Motion for Temporary Restraining Order and Injunctive Relief, for an overview of the security measures undertaken by Mintel. Furthermore, Mintel safeguards its confidential information by having its employees sign confidentiality agreements. Please see the Contract of Employment and Employee Non-Compete/Non-Solicitation Agreement signed by Defendant and attached as "Exhibit 1-A" and "Exhibit 1-B", respectively, to the Complaint. Mintel's employee handbook also delineates employees' responsibilities to safeguard confidential information. Defendant acknowledged receipt of Mintel's employee handbook on August 4, 2003. A copy of Mintel's employee handbook and

4

Defendant's acknowledgement have been produced in response to Defendant's document requests.

**Interrogatory No 2:** Describe with particularity each role held by Meesham Neergheen at Mintel, including all duties and responsibilities and client contact, if any.

**Answer:** In addition to the General Objections listed above, Mintel objects to Interrogatory No. 2 as overly broad and unduly burdensome. Mintel further objects to the extent it seeks information that is already in possession of Defendant. Without waiving said objections, Defendant joined Mintel in London in April 1997 on a 20-week Graduate Management Program, which led to a permanent position at Mintel as Assistant Editor of Global New Products Database in June 1997. Defendant's job responsibilities included collecting new product data from consumer packaged goods manufacturers; working with Mintel's global shopper network to ensure the purchase of new products; and compiling editorial material for the Global New Products Database. Defendant was appointed to Marketing Executive in November 1998, exposing him to all Mintel products and the target industries in which Mintel operated. His job duties included creating, dispatching and analyzing client questionnaires; writing and distributing Mintel's company group newsletter; managing the CRM database; and liaising with list brokers and mailing houses. In 2000, Defendant was appointed as Marketing Operations Manager, again working across all of Mintel's product and target industries. His job responsibilities included creating and executing Mintel's marketing plans; planning and managing trade shows and exhibitions; analyzing sales and marketing performance; negotiating strategic links and sustaining relationships with international trade associations, conferences and trade show organizers (across sectors including consumer packaged goods and financial

5

services); compiling creative briefs; managing and training Mintel's marketing interns; and improving traffic to Mintel's website via strategic relationships. Defendant transferred to Mintel's Chicago office in 2001. As an employee of Mintel's marketing department in Chicago, Defendant covered third party relationships with a focus on trade associations relevant to Mintel's American businesses, including consumer packaged goods and financial services. In Defendant's last few months working for Mintel, Defendant worked primarily on Comperemedia, which focuses on the financial services and insurance industries as well as the telecommunications, technology and travel sectors. Defendant's temporary position extended from February 1, 2008 until April 30, 2008. Due to illness within the department, Defendant was asked to undertake a broader role encompassing product marketing for Comperemedia. This involvement continued for most of that period, during which he was directly responsible for areas including Comperemedia marketing campaigns (including qualifying the prospect list, messaging, developing, implementing and then following-up the marketing campaign); the promotion of new product functionality both internally and externally; marketing collateral (including client endorsements, internal FAQ documents and brochures); client-specific marketing; financial services trade show presence; and liaison with financial trade associations. As a result of Defendant's various job positions with Mintel, Defendant has been exposed to Mintel's customers and contacts internationally.

**Interrogatory No. 3:** Describe whether employees of Mintel are allowed to remove from Mintel's premises any information held by the company and, if so, what types of information may be removed.

6

**Answer:** In addition to the General Objections, Mintel objects to Interrogatory No. 3 as being vague, overly broad and unduly burdensome, particularly as to the terms "employees" and "any." Without waiving said objections, Mintel employees are allowed to remove information from the premises as long as such information is used by the employee to further the performance of services for Mintel. The information may not be used or disclosed in ways that violate the express provisions included within the employee handbook, Contract of Employment and/or Employee Non-Compete/Non-Solicitation Agreement. (This is also reinforced by the Notice that appears on Mintel's public emails.)

**Interrogatory No. 4:** State with particularity how Mintel came to be aware of the events stated in its Complaint filed in this Litigation, including but not limited to the dates on which it become aware.

**Answer:** In addition to the General Objections above, Mintel objects to Interrogatory No. 4 to the extent it seeks information that is protected by the attorney-client privilege, attorney work product doctrine, and/or other applicable privileges. Without waiving its objections, please see the deposition transcript of Jason Thomson.

**Interrogatory No. 5:** Name the persons responsible for drafting and/or enforcing the documents provided in your Complaint filed in this Litigation at Exhibits 1-A and 1-B.

**Answer:** In addition to the General Objections, Mintel objects to Interrogatory No. 5 because it requests irrelevant information not calculated to lead to the discovery of admissible evidence. Without waiving said objections, Rosalia Di Gesu signed and executed the Contract of Employment on behalf of Mintel, and Maggie A. Cahm signed

and executed the Employee Non-Compete/Non-Solicitation Agreement on behalf of Mintel.

**Interrogatory No. 6:**   State with particularity any and all consideration given to Meesham Neergheen in exchange for entering into the documents provided in your Complaint filed in this Litigation at Exhibits 1-A and 1-B.

**Answer:**   In addition to the above General Objections, Mintel objects to Interrogatory No. 6 as seeking attorney work product and/or mental impressions.  Mintel further objects to the extent this interrogatory calls for a legal conclusion.  Without waiving said objections, Defendant's employment and/or continued employment with Mintel was consideration given by Mintel.

**Interrogatory No. 7:**  Describe with particularity the business of Mintel, including but not limited to what the company does, where all branches are located, and the roles of employees.

**Answer:**   In addition to the General Objections, Mintel objects to Interrogatory No. 7 as overly broad and unduly burdensome, particularly as to the term "employees." Mintel further objects to the extent this interrogatory requests information that is public record and, therefore, already available to Defendant other than through the discovery process.  Without waiving said objections, Mintel is a leading supplier of consumer, product and competitive media intelligence with offices in Chicago, London, Belfast, Sydney, Tokyo and Shanghai.   For a description of Defendant's job duties and responsibilities for Mintel, please see Answer to Interrogatory No. 2.

**Interrogatory No. 8:**  Describe with particularity how you came to the belief that Meesham Neergheen copied, e-mailed to his personal e-mail address and/or printed

8

confidential and proprietary trade secret information from his work computer on April 29, 2008.

**Answer:** In addition to the General Objections, Mintel objects to Interrogatory No. 8 to the extent it calls for a legal conclusion. Without waiving said objections, please see Answer to Interrogatory No. 4.

**Interrogatory No. 9:** Describe with particularity how you believe you have been harmed by each of the acts alleged in the Complaint filed in this Litigation.

**Answer:** In addition to the General Objections, Mintel objects to Interrogatory No. 9 to the extent it seeks attorney mental impressions, information or materials prepared in the course of litigation or subject to the attorney-client privilege, protected by the attorney work product doctrine, and/or any other applicable privilege. Without waiving said objections, the extent of harm has yet to be determined. As discovery continues and additional information is learned, this answer will be supplemented.

**Interrogatory No. 10:** List all industries with which Mintel conducts business.

**Answer:** In addition to the General Objections, Mintel objects to the extent Interrogatory No. 10 seeks information that is public record and, consequently, available by means other than the discovery process. Without waiving said objections, Mintel conducts business in numerous industries, many of which are international in nature, including but not limited to: Automotive; Beauty; Beverages; Business Services; Clothing and Accessories; Consumer Lifestyles; Demographics; DIY & Gardening; Drink; Electrical Goods; Energy and Utilities; Financial Services; Food and Food Service; Footwear; Health & Wellbeing; Household/Home; Industrial; Insurance; Leisure Time; Lifestyles; Manufacture; Marketing/Promotions; Media; Personal Care; Personal

Goods; Petcare; Pharmaceuticals; Restaurants; Retail; Stationery & Books; Technology; Telecommunications; Toiletries; and Travel & Tourism.

**Interrogatory No. 11:** List all trade associations with which Meesham Neergheen had contact on behalf of Mintel during his employment there.

**Answer:** In addition to the General Objections, Mintel objects to Interrogatory No. 11 to the extent it requests information already within the knowledge and possession of Defendant. Mintel further objects to Interrogatory No. 11 as overly broad and unduly burdensome. Finally, Mintel objects to the extent this request seeks Mintel's confidential and proprietary trade secret information. Without waiving said objections, Mintel has a working relationship with over 80 trade associations, and communicates with many more, any and all of which Defendant may have had contact with during Defendant's employment with Mintel.

**Interrogatory No. 12:** Describe with particularity the location(s) within Mintel of documents listed at A-H at pages 7-8 of the Complaint filed in this Litigation.

**Answer:** In addition to the General Objections, Mintel objects to the extent Interrogatory No. 12 seeks information of an indefinite time period. Without waiving said objections, the documents listed as A-H at pages 7-8 of the Complaint are located on Mintel's secure computer network and server system. Only a Mintel employee that needs access to a file to perform his or her job functions has the ability to access the document. Please see the Affidavit of Jason Thomson and his deposition transcript for additional comment.

**Interrogatory No. 13:** Describe with particularity why Mintel contends the documents listed at A-H at pages 7-8 of the Complaint are proprietary and/or trade secrets, including all steps taken by Mintel to maintain them as such.

**Answer:** In addition to the General Objections, Mintel objects to Interrogatory No. 13 on the grounds it seeks attorney mental impressions, information protected by the attorney-client privilege or attorney work product doctrine, and/or other applicable privileges. Mintel further objects to the extent this interrogatory seeks a legal conclusion. Without waiving said objections, please see the Affidavit of Jason Thomson and Affidavit of Richard Carr, attached as "Exhibit 2" and "Exhibit 3," respectively, to Mintel's Memorandum in Support of Emergency Motion for Temporary Restraining Order and Injunctive Relief. In addition, please see the deposition transcript of Jason Thomson.

**Interrogatory No. 14:** List all persons known by Mintel to have knowledge surrounding the facts of this Lawsuit, including the area of knowledge and contact information for each.

**Answer:** In addition to the General Objections, Mintel objects to Interrogatory No. 14 on the grounds it seeks information that is protected by the attorney-client privilege, attorney work product doctrine, and/or other applicable privileges. Without waiving said objections, the following persons may have knowledge of any facts of this lawsuit: (1) Meesham Neergheen, Defendant; (2) Peter Haigh, CEO for Mintel; (3) Richard Carr, Finance Director for Mintel; (4) Jason Thomson, IT Director for Mintel; (5) Jon Butcher, CEO Americas for Mintel; (6) Sabine Popp, Global Marketing Director for Mintel; (7) John Weeks, Chairman for Mintel; (8) Steve Charlton, Global Executive

11

for Mintel; (9) Amy Mieding, U.S. HR Director for Mintel; (10) Jennifer Chamberlin, US Marketing Director for Mintel; (11) Tony Yoxall, Global Director of Product Innovation for Mintel; (12) Pam McHugh, President, Comperemedia for Mintel; (13) Heather Thompson, SVP Comperemedia Sales for Mintel; (14) Maggie Cahm, U.K. HR Director for Mintel; and (15) Employees of Datamonitor.  As discovery continues and additional information is learned, this answer may be supplemented.


Respectfully submitted,

Plaintiff, MINTEL INTERNATIONAL GROUP, LTD.

By: _Katherine J Pronk_____

One Of Its Attorneys

Joseph R. Marconi
Victor J. Pioli
Katherine J. Pronk
Johnson & Bell, Ltd.
33 W. Monroe, Suite 2700
Chicago, IL 60603
(312) 372-0770
Doc. No. 1911658

12

## CERTIFICATE OF SERVICE

The undersigned, states that she caused **Mintel International Group, Ltd.'s Answers to Defendant's First Set of Interrogatories** to be served upon:

> John T. Roache
> Jeana R. Lervick
> Bell, Boyd & Lloyd, LLP
> 70 West Madison Street
> Suite 3100
> Chicago, IL 60602

via hand delivery on August 1, 2008.

*Cynthia L Harper*

## CERTIFICATION

I, _Jon Fletcher_, under penalties as provided by law, certify that the statements set forth in the foregoing **Mintel International Group, Ltd.'s Answers to Defendant's First Set of Interrogatories** are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

Date: _August 1st_, 2008

By: _____
_Jon Fletcher_, on behalf of
Mintel International Group, Ltd.

Its: _CEO, Americas._

14

# EXHIBIT BB



Steve Charlton
12/12/2007 11:34

To: Maggie Cahm/MINTEL/GB@MINTEL, Amy
Mieding/MINTEL/GB@MINTEL, Sabine
Popp/MINTEL/GB@MINTEL
cc:
Subject: Meesham file note

I met with Meesham on the videolink last Friday - I confirmed that we were intending to make his current role redundant by end of January

We talked about his failed interview - he said he didn't understand why he had to interview for finance PMM role when his background is CPG - I explained why we had made the decision strategically to cut the CPG role and focus on finance. I also said that if someone possessed the core skills and competencies for a PMM role they should be applicable to any industry

I explained that although he was now covered by US law in a redundancy situation we would still honour the UK process - therefore we were now entering into period of consultation which would take one week, during that week I would investigate possible alternative roles around the business. I clarified that our meeting this Friday would simply be a yes (there are other possibilities) or a no (we need to talk about exit strategy)

He is expecting a no

He returns to UK after that meeting for 2 weeks so I've suggested he comes back from Chicago in January to discuss exit

We agreed to keep talking regularly, he is most concerned about being abandoned, however he desperately wants to stay there as he's made his life there now

Maggie the only thing I haven't done is a letter to confirm the redundancy process - if you could send me some standard text I will create

Please anyone comment if I'm missing anything!

thanks
Steve

MNTL 00275

Steve Charlton

30/04/2008 08:33

|  |  |
|---|---|
| To: | Amy Mleding/MINTEL/GB@MINTEL |
| cc: | Sabine Popp/MINTEL/GB@MINTEL |
| Subject: | Re: Meesham Link |

are we paying for his flight home or to ship back his belongings?

Amy Mleding

29/04/2008 20:39

|  |  |
|---|---|
| To: | Steve Charlton/MINTEL/GB@MINTEL |
| cc: | Sabine Popp/MINTEL/GB@MINTEL |
| Subject: | Meesham |

Hi Steve,

I talked with Sabine about offering Meesham $2000 for signing a "Global Non-compete." I assume you or Maggie have the language for such an agreement in the UK? We obviously have the US Agreement here. That one is attached. While the US Agreement does not specifically outline International Competition, the Agreement might still be enforceable if Meesham did anything that proved detrimental to our business. Other than that, it will hopefully serve as an effective deterrent.

Alternatively, we could have him sign the severance agreement, which in addition to all of the legal waivers, also reiterates our concerns outlined in the non-compete.

What would happen if Meesham accepted another position at Mintel in the future? He has already applied for a

7/30/2008

MNTL 00530

sales position.  Would we expect him to repay the $2000?

Other than that, Sabine and I agree that you are in a good position tomorrow morning to present either agreement to him.

Let me know your thoughts!  Thanks, Amy

```
http://www.mintel.com
providing insight + impact

PS Discover and develop genuinely new ideas first with Mintel Inspire -
your global trends resource.

Preview our Trendscape and get on the fast track to productive ideation.
http://www.mintel.com/inspire/

London Office:
Mintel International Group Ltd (Mintel)
18-19 Long Lane
London
EC1A 9PL
UK

Registered in England: Number 1475918.
VAT Number: GB 232 9342 72

Tel: 020 7606 4533
Fax: 020 7606 5932


Chicago Office:
Mintel International Group Ltd (Mintel)
Floor 8
351 West Hubbard Street
Chicago
IL 60610
USA

Tel: 312 932 0400
Fax: 312 932 0469

Notice
********
This email may contain information that is privileged,
confidential or otherwise protected from disclosure. It
must not be used by, or its contents copied or disclosed
to, persons other than the addressee. If you have received
this email in error please notify the sender immediately
and delete the email. Any views or opinions expressed in
this message are solely those of the author, and do not
necessarily reflect those of Mintel.
```

MNTL 00531

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that a true and correct copy of NEERGHEEN'S

SUPPLEMENT IN SUPPORT OF HIS MOTION TO COMPEL PARTY WITNESSES FOR

IN-PERSON DEPOSITIONS, and accompanying documents, have been served this 25th day of

August, 2008 via ECF filing to:

> Joseph Marconi
> Victor Pioli
> Katherine J. Pronk
> JOHNSON & BELL, LTD.
> 33 West Monroe Street
> Suite 2700
> Chicago, Illinois 60603

> _____ /s/ Jeana R. Lervick_____
> Jeana R. Lervick
> BELL, BOYD & LLOYD LLP
> 70 West Madison Street
> Suite 3100
> Chicago, IL 60602
> (312) 373-1121