**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MINTEL INTERNATIONAL GROUP, LTD., a United Kingdom corporation, )<br><br>)<br><br>)<br><br>)<br>Plaintiff/Counter-Defendant, )<br><br>)<br>v. )<br>MEESHAM NEERGHEEN, an individual )<br><br>)<br>Defendant/Counter-Plaintiff. )<br>_____ ) | Case No. 08-cv-3939<br>Judge Robert Dow, Jr.<br>Magistrate Judge Maria Valdez |

**OPPOSITION TO MINTEL'S MOTION TO COMPEL AND
CROSS-MOTION FOR FEES AND COSTS ASSOCIATED WITH RESPONDING**

Datamonitor ("Datamonitor"), a non-party to this litigation, by counsel, submits this Opposition to Mintel's Motion to Compel the computers of Datamonitor and to Compel deposition testimony and further respectfully submits its Motion for costs and fees associated with responding to the motion.

**INTRODUCTION**

From the filing of its "emergency" preliminary injunction motion, Mintel has made sweeping assumptions and, what's worse, legal accusations, against Mr. Neergheen and Datamonitor. It has done so in a haphazard, reckless fashion that is counterproductive to solving any legitimate dispute and demonstrates instead that Mintel is more interested in attempting to harm Datamonitor than righting a perceived wrong. The present motion is no different. Mintel's counsel has disregarded Datamonitor's offers of the very information it seeks, in lieu of yet another volley of unnecessary motions.

This is Mintel's second attempt to compel Datamonitor's computers. Unsuccessful in its first here, and its appeal to Judge Dow, Mintel has changed the basis for requesting Datamonitor's computers, but still fails to demonstrate how such a search is anything other than cumulative and/or duplicative. The only basis for Mintel's request is that it "will show whether Mintel's documents were downloaded to Datamonitor's computers." (Motion p. 2). Yet Mintel is already in possession if this information. As shown in the attached affidavit from computer expert Andrew Reisman, searches of Datamonitor's computers were conducted for the documents. (Ex. A). After extensive searching, Mr. Reisman "found no evidence of the files identified in the Complaint." *Id.* In addition, Datamonitor has testified under oath that it never received any such information, Mr. Neergheen has testified under oath that Datamonitor has not received any such information, Mr. Neergheen's e-mail account demonstrates that Datamonitor has not received any such information, Datamonitor's document production demonstrates that Datamonitor has not received any such information, Mr. Neergheen's computer demonstrates that Datamonitor has not received any such information, and Mr. Neergheen's external drives demonstrate that Datamonitor has not received any such information. Moreover, Datamonitor timely objected to the 30(b)(6) subpoena for documents — objections that Mintel fails to even address in its current motion. In light of all of the above, particularly the searches already conducted, any additional discovery would be duplicative. Mintel cannot show how unfettered access to a non-party's computers is warranted in this case.

Finally, in a secondary argument, Mintel asks that Datamonitor be compelled to sit for a Rule 30(b)(6) deposition. Again, Datamonitor is at a loss as to how such a request is made in good faith. Datamonitor has offered a second Rule 30(b)(6) witness on numerous occasions, without response from Mintel. (Ex. B). In response to the "emergency" motions filed by Mintel

and despite insufficiency of service on a United Kingdom company, Datamonitor counsel informed Mintel that a witness that was being deposed the next day, Jeff Howard, would be able to testify as to many of the topics in the subpoena. To the extent Mr. Howard was unable to testify, Datamonitor offered Mr. Dylan Grey to testify via telephone. Apart from attempting to force Mr. Grey to sit for deposition in London, which action was rejected by this Court, Mintel has not once responded to Datamonitor's repeated offers of Mr. Grey for deposition. Additionally, Mintel failed to meet and confer with Datamonitor on the topic before filing this motion — its second regarding the 30(b)(6) deposition subpoena. Accordingly, not only is this request improper, Datamonitor is entitled to its costs and fees associated with responding.

## ARGUMENT

Mintel's attempts to gain "access" to the computer system of a company it considers a staunch competitor is improper. Jumping straight to "I want it all and I want it now," Mintel dangerously pushes the rules of discovery outside of the bounds of the Federal Rules. Although Mintel has been given the information it seeks through documents and testimony, and has been offered the information it seeks here as further support, it is unsatisfied unless its expert[1] can have private access to a non-party's business secrets. Clearly, Mintel's position is unreasonable. And as discussed below, Mintel's broad request, and failure to justify it, leads to the conclusion that it must be denied by this Court.

Discovery will be limited by a court if it concludes that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

---

[1] Neergheen's Motion for Rule to Show Cause as to why Mintel and its expert violated the Court's Order and Mr. Neergheen's potentially privileged and/or irrelevant documents were provided to Mintel is currently pending before the Court.

expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2). Here, Mintel seeks discovery that has already been demonstrated to not exist, rendering it cumulative and/or duplicative, obtainable from a source more convenient and less burdensome, and greatly outweighed by non-party Datamonitor's interest in protecting its business. Moreover, Mintel seeks deposition testimony that *it* has refused to take — its ability to depose Datamonitor has in no way been hindered.

## I. MINTEL STILL HAS NO VALID BASIS FOR DESIRING A NON-PARTY'S COMPUTERS

The Federal Rules quite simply do not grant unrestricted, direct access to a respondent's databases. *In re: Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003). Absent a showing of discovery abuse, where a party has provided relevant documents responsive to discovery requests, the rules of discovery do not allow a court to grant a movant free access to databases, even when dealing strictly with parties. *Id.* Here, there is no validity in Mintel "accessing" Datamonitor's computers where it cannot justify any legitimate purpose to do so.

Mintel is attempting to compel information that does not exist. Mintel's request for unfettered access to Datamonitor's computers and e-mail is improper as it seeks "evidence" that, through several other discovery requests and now an expert affidavit, has been shown to not be present on Datamonitor's computers. (Ex. A). Mintel is essentially asking that its documents in Datamonitor's possession (of which there are none, and accordingly none of which were produced) be produced in *both* paper and electronic format. This is simply not allowed by the courts. *See Autotech Techs. Ltd. P'ship v. AutomationDirect.com, Inc.*, 248 F.R.D. 556, 559 (N.D. Ill. 2008)(finding, where a native format file was sought in addition to a paper document,

"[i]f the document on the disc is a Microsoft Word file, and Mssrs. Glover and Horn are taken at their word that no changes were made to it, this dispute is at an end. Autotech's production of the file complies with [FRCP 34].") At a minimum, this makes Mintel's request duplicative and/or cumulative.

Given the cumulative nature of the requests, the confidentiality of information on Datamonitor's computers *significantly* outweighs Mintel's need for information. The scope of discovery under Rule 26 governs the proper scope of requests under Rule 45. The rules are designed to protect individuals subject to subpoenas from undue burden or expense. Fed. R. Civ. P. 45(c)(1); *see also Guy Chemical Co., Inc. v. Romaco AG*, 243 F.R.D. 310, 313 (N.D. Ind. 2007). In particular, where, as here, the information sought is already in the possession of the moving party or where the information can be obtained from less obtrusive sources, compelling production is improper. *See Pudella v. Swanson,* 1993 U.S. Dist. LEXIS 3230 at *3 (N.D. Ill. Mar. 15, 1993). In *Pudella*, Judge Gottschall denied a motion to compel where a document subpoena was to be used for impeachment purposes. *Id.* The court found the subpoena was cumulative and called for production of confidential information of third parties, and, going one step further, quashed the subpoena. *Id.* The court noted that the movant had ample opportunity to depose the witness and that his testimony could be discredited by other means. *Id.* Weighing the respective benefits and dangers of granting the motion to compel, the court found that the non-parties' "interest[s] in the confidentiality" of the material sought "outweighs defendants' need for the information requested." *Id.*

Similarly, the *only* basis for which Mintel seeks "access" to Datamonitor's computers and Mr. Neergheen's work e-mail is to find "whether Mintel's documents were downloaded to Datamonitor's computers." However, this purpose is cumulative of information already in

Mintel's possession. First, Mintel has obtained confirmation that the information was not passed on to Datamonitor through Datamonitor itself. Mintel has no cause for questioning the veracity of non-party Datamonitor. Mintel deposed Jeff Howard, Neergheen's immediate supervisor. Howard testified as to the significant safeguards that have been put into place at Datamonitor to ensure precisely that which Mintel seeks — that Neergheen not forward any Mintel information to Datamonitor. In addition to asking Neergheen to sign a declaration that he has not, and will never, forward such information to Datamonitor, Neergheen works in a wholly different industry sector than that to which the information pertains. (Ex. C). Moreover, Howard testified that neither he, nor anyone at Datmonitor to his knowledge, has ever received any Mintel information from Neergheen.

Second, Mintel made formal requests of Datamonitor for copies of any Mintel documents in Datamonitor's possession. Datamonitor made productions pursuant to Mintel's requests and, as it had no Mintel documents or other information in its possession, had nothing in that regard to produce. Mintel's continued request for documents and information that does not exist is improper.

Third, Datamonitor has attached an affidavit from Mr. Neergheen's expert which confirms that the Mintel files in question were not found on the Datamonitor computer used by Mr. Neergheeen. (Ex. A). Specifically, Mr. Reisman demonstrates the tests he conducted on the Datamonitor computer utilized by Mr. Neergheen—presumably the same or similar tests to those Mintel hints at in its motion. *Id.* Mr. Reisman searched for the specific files named in Mintel's Complaint, as well as numerous search terms from the documents themselves. *Id.* Mr. Reisman found "no evidence" of any of the files present on the drive. *Id.*

Fourth, Mintel has now subpoenaed third-party Hotmail, and will obtain records of

Neergheen's e-mail activity.[2]  (Ex. D).  These records, too, are cumulative, as Neergheen has produced all relevant e-mail activity.  Regardless, even under Mintel's unwarranted mistrust of *all* witnesses and documents in its possession, this is yet another method by which Mintel can be certain that no documents or things have been provided to Datamonitor, and is far less obtrusive than rifling through the computerized files of Datamonitor.

All of the above demonstrate no real basis of "need" on the part of Mintel for the information it seeks.  In this regard, Mintel clearly cannot demonstrate a need for both computer access and e-mail access.  In fact, Mintel does not specify how or why it needs access to Mr. Neergheen's e-mail at Datamonitor, at all.

Mintel has had every opportunity to obtain information to impeach Mr. Neergheen's and Datamonitor's demonstrations that no Mintel information was passed to Datamonitor — the fact that it has found none is evidence in and of itself.  And under these circumstances, there is no way Mintel has any legitimate interest in rifling around Datamonitor's computer and e-mail systems, particularly in light of non-party Datamonitor's interest in the confidentiality of its business.  Mintel's motion should be denied by this Court.

## II.    MINTEL CANNOT JUSTIFY ITS REQUEST FOR UNFETTERED ACCESS TO DATAMONITOR'S COMPUTERS WHEN THERE ARE LESS PRESUMPTUOUS METHODS OF SEARCHING THEM

In an effort to conclude the matter,[3] Mintel has been offered the opportunity to have a limited search of the Datamonitor computers conducted by a third party expert.  However, in an

---

[2] Mintel's decision not to subpoena Hotmail until now was due merely to its own choice.  As early as August, Mintel's counsel was advised by its expert that such a subpoena would be useful.  However, Mintel did not issue the subpoena until October 1, 2008.  As Mintel has foregone its "emergency" status of the case, the matter is not set for hearing until January 2009, at the earliest, giving it plenty of time to obtain documents from Hotmail.

[3] Datamonitor's offer of compromise has been made in an effort to avoid precisely the time and money wasting briefing in which the parties are now engaged.  Mintel is not entitled to *any* access of the computers, as discussed in detail above.

alarming fashion, Mintel will only be satisfied by *its* expert having unfettered access to the computer system of what it declares is its competitor. Yet, only one of these options has demonstrated itself untrustworthy, and that is Mintel's expert. Mintel's request is concerning, has no basis in law or circumstance, and is prohibited where, as here, there are less obtrusive methods of obtaining the information.

In its motion Mintel narrows its discovery request significantly to desiring "access" to the computers of Datamonitor so that it may "show whether Mintel's documents were downloaded to Datamonitor's computers." To the extent Mintel had any argument that results of such a search for those documents was not in its possession, it most certainly is now. *See* (Ex. A). Yet even were yet another search of Datamonitor's computers warranted, it should be tightly constrained. Free access to a non-party's computers gives rise to concerns that greatly outweigh probative value.

For example, the Eleventh Circuit, in a case directly on point with the issues here, denied a request for a blanket search of a party's computers.[4] *In re Ford*, 345 F.3d 1315, 1317 (11th Cir. 2003). The court noted that (1) the movant had established no discovery abuses by the party from which it had already obtained discovery, (2) the party from which discovery was sought had already searched its database and produced all relevant, non-privileged materials, and (3) the discovery rules "did not allow the court to grant [the movant] free access to the databases." *Id.* Of note, the appeals court pointed out that the district court "did not even designate search terms to restrict the search." *Id.* It therefore overturned the court's grant of a motion to compel.

Similarly, in *P.J. v. Utah*, the court found that, where a request would allow access to all

---

[4] *In re Ford* dealt with parties to a litigation, yet it is even more vital to safeguard discovery rights of a non-party such as Datamonitor. Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *United States v. Amerigroup Ill., Inc.,* 2005 U.S. Dist. LEXIS 24929 at *4 (N. D. Ill. Oct. 21, 2005).

documents on a party's computers, the request was overly broad. 247 F.R.D. 664, 672 (D. Ut. 2007)(finding that "Defendants have failed to provide any support for their contention that Plaintiffs computers contain documents that 'were altered, deleted, or not timely produced'" and limiting search to only the specific documents at-issue.) Without some restriction on the search to be conducted, courts such as these have found that a discovery request cannot be enforced.

Again, the searches requested by Mintel in its motion have been conducted. To the extent that *any* further searching is allowable, Mintel must specify precisely what additional terms need to be searched and why. Moreover, Mintel has provided no reasoning as to why its expert — an entity whose veracity has been called into question — should be the one to conduct the search as opposed to a neutral party or Mr. Reisman. Datamonitor respectfully submits that no further searching is warranted, but, if allowed, contends that the danger to Datamonitor is such that it should be tightly constricted by the Court.

### III.    MINTEL'S MOTION TO COMPEL WITNESS TESTIMONY THAT HAS BEEN *REPEATEDLY* OFFERED TO IT DEMONSTRATES MINTEL'S BAD FAITH

Mintel's motion to compel incorporates a second attempt to seek judicial intervention in a non-issue. Mintel asks the Court to compel Datamonitor to sit for a deposition that has been offered on numerous occasions — most recently the date of filing of the present motion. Mintel has declined to take the deposition. Datamonitor is at a loss to understand what is left to compel. As Datamonitor is forced to respond to an unnecessary motion, it respectfully requests its fees in association with doing so.

As an initial matter, Mintel wholly failed to meet and confer on the issue prior to filing the motion to compel. "Both Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.2 prescribe a firm meet and confer requirement for motions to compel. Fed.R.Civ.P. 37(a)(2)(B) ("The motion must include a certification that the movant has in good faith conferred

or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action."); N.D. Ill.L.R. 37.2 (requiring "consultation in person or by telephone" and "good faith attempts to resolve differences"). Failure to adhere to Federal and Local Rules may result in full denial of a motion. *See Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.,* 2004 U.S. Dist. LEXIS 26861, at *4 (N.D. Ill. Dec. 20, 2004). Not only did Mintel fail to meet and confer with Datamonitor prior to filing the present motion, it actually rebuffed Datamonitor's attempts to discuss the issues raised. (Ex. B).

Mintel asked for the individual deposition of non-party Datamonitor employee Jeffrey Howard. The day before Mr. Howard's deposition, Mintel improperly attempted to serve Datamonitor with a Rule 30(b)(6) subpoena. In an effort to accommodate Mintel and given the time constraints of the case, counsel informed Mintel that several of the topics in the subpoena were those for which Mr. Howard would likely be the most knowledgeable and, if he wasn't, Datamonitor would produce another witness as well. Ultimately, Mr. Dylan Grey was offered to supplement Mr. Howard's testimony, but Mintel declined to take his deposition. Now, Mintel is claiming that its improper subpoena, for which witnesses were offered for several months,[5] was not complied with by Datamonitor.

Datamonitor's production of multiple witnesses, and its choosing of those witnesses, is wholly in line with the Federal Rules. "Rule 30(b)(6) deposition notices routinely specify a number of topics of inquiry, which often necessitate the designation of multiple witnesses." *In re Sulfuric Acid Antitrust Litigation*, 2005 U.S. Dist. LEXIS 17420 at *12 (N.D. Ill. Aug. 19,

---

[5] On August 8, 2008, Mintel filed with the Court a Motion to Compel Mr. Grey's deposition. Mintel filed the motion not to compel the deposition altogether, but instead sought to depose Mr. Grey while counsel for Mintel was in London, despite the fact that Mr. Grey was not available on the requested dates. [D.I. 35]. Citing the impropriety of service of the 30(b)(6) notice, the Court denied Mintel's motion. Accordingly, efforts to schedule the deposition again progressed. Counsel for Mintel was provided with a number of dates on which Mr. Grey would be available. Mintel never responded. After denial of its Motion to Compel, Mintel never attempted to schedule Mr. Grey's deposition, though dates were offered.

2005). Datamonitor offered both Mr. Howard and Mr. Grey, and continues to offer Mr. Grey.[6] Mr. Howard repeatedly testified that, where he was unable to testify, Mr. Grey would be able to do so. Mintel has in no way been impeded from taking Mr. Grey's deposition, it has quite simply chosen not to do so.

Mintel's refusal to discuss its motion to compel prior to filing demonstrates bad faith. Not only has Datamonitor offered a supplemental 30(b)(6) witness for several months now, when it attempted to discuss the matter with Mintel, Mintel ignored this fact.

### Conclusion

For the reasons stated above, non-party Datamonitor respectfully requests the Court deny Mintel's motion in its entirety. In the alternative, as Mintel's motion limits its discovery request somewhat, Datamonitor requests that the Court limit any further search to a search of a forensic image of Datamonitor's computers by Datamonitor's expert, or a third party expert, for the specific documents set forth in Mintel's Complaint. Datamonitor further requests that the Court award Datamonitor costs and fees associated with defense of the motion, particularly in light of Mintel's refusal to meet and discuss the issues presented herein.

Dated: October 14, 2008

> _/s/ Jeana R. Lervick_
> John T. Roache
> Jeana R. Lervick
> Joel C. Griswold
> Bell, Boyd & Lloyd LLP
> 70 West Madison Street
> Suite 3100
> Chicago, Illinois 60602

---

[6] Given the lack of notice provided regarding the 30(b)(6) subpoena, as well as Mr. Howard's unique knowledge of the facts in this case, it was both in line with the Federal Rules as well as in the interest of efficiency of process that Mr. Howard was offered as _an initial_ 30(b)(6) witness. Mintel acknowledged this when it agreed to (and, indeed, attempted to compel) the deposition of Mr. Grey. Because it chose not to depose Mr. Grey is a product of its own volition, out of the control of Datamonitor, rendering the present motion without any merit.

312.372.1121
312.827.8000 (facsimile)