IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MINTEL INTERNATIONAL GROUP,<br>LTD, a United Kingdom corporation, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | Case No.: 08 CV 3939 |
| MEESHAM NEERGHEN, an individual | ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Supplement to Motion for Extended Expert Discovery; Supplement to Plaintiff's Objections to Magistrate Judge Valdez's December 23, 2008 Order; and Motion for Reconsideration of the Court's December 23, 2008 Ruling Based Upon Newly Discovered Evidence ("Motion for Reconsideration") [Doc. No. 181]. Mintel seeks a reconsideration of this Court's December 23, 2008 Order [Doc. No. 177] denying it a "mirror image" or "Round 1 Report" of third party Datamonitor's computers based on newly discovered evidence. For the reasons stated below, the Court DENIES Mintel's Motion for Reconsideration.

In its Complaint filed on July 11, 2008, Mintel alleges that prior to leaving his employment with Mintel Defendant Neergheen e-mailed Mintel documents to his personal e-mail account. Mintel was aware of the activity and demanded that Defendant not use the documents. Based, in part, on Defendant Neergheen's taking of Mintel documents and his employment at third party Datamonitor, Mintel filed this action alleging violations of the Illinois Trade Secrets Act, Computer Fraud Abuse Act, and violations of various terms of Defendant's employment contract with Neergheen.

A recounting of Mintel's previous attempts to obtain a mirror image of third-party competitor Datamonitor's computers is appropriate. Mintel has now sought a mirror image of Datamonitor's computers in five different motions before this Court. *See Motion to Compel Datamonitor's Compliance with Subpoena [Doc. No. 53]; Motion to Compel Datamonitor's Compliance with Subpoena and Rule 30(B)(6) Notice of Deposition [Doc. No. 133]; Plaintiff's Motion to Reconsider [Doc. No. 153]; Emergency Motion to Compel Datamonitor's Compliance with Subpoena and Court Order [Doc. No. 171]; and Plaintiff 's Motion for Reconsideration [Doc. No. 181].*

Mintel's initial attempt at obtaining access to the Datamonitor computers was on August 28, 2008. In its Motion to Compel Datamonitor's Compliance with Subpoena [Doc. No. 53], Mintel argued that Neergheen had spoliated documents on a laptop computer and based on this alleged spoliation they should in turn be entitled to a mirror image of Datamonitor's computers. This motion was denied without prejudice.

Subsequently, on October 2, 2008 Mintel filed its Motion to Compel Datamonitor's Compliance with Subpoena and Rule 30(B)(6) Notice of Deposition [Doc. No. 133]. Plaintiff argued that it was entitled a mirror image of Datamonitor's computers based on Defendant's production of approximately forty Mintel documents that Plaintiff was not aware were in Defendant's possession when they filed suit. Plaintiff argued that, "Mintel should not be forced to rely upon Defendant's mere assertion that he has not used Mintel's confidential information to date. The information obtained from Defendant's Datamonitor computer(s) and work e-mail account is relevant to determine Defendant's veracity on the issue of whether Defendant has used the misappropriated Mintel documents and information" *Id.* ¶ 6. While Mintel was

2

skeptical that Neergheen had produced copies of all the documents he took from Mintel that reason alone was not sufficient to warrant the drastic measure of having unfettered access to a competitor's computers and thus the motion was denied. Instead, taking into account Plaintiff's concerns this Court fashioned a remedy that would have allowed Mintel to provide a list of search terms for Datamonitor's expert to conduct a search of the Datamonitor computers and Datamonitor would produce Mintel documents if any were found. *November 17, 2008 Mem. Op. and Order* [Doc. No. 151] at 5. Plaintiff choose not to avail itself of the relief granted. *See December 23, 2008 Order* [Doc. No. 177] ("Plaintiff waives additional search as ordered by this court on November 17, 2008.").

Instead, four days after issuing an order that would have allowed for a search of Datamonitor's computers, Plaintiff filed a motion for reconsideration [Doc. No. 153]. In this motion, Plaintiff argued that they had obtained "new" evidence from Microsoft Corporation that Defendant had accessed his personal email account at Datamonitor and may have transferred Mintel documents. Mintel asserted that they should be allowed a mirror image of Datamonitor's computers based on the "new" evidence. *Pl.'s Mot. to Recons.* [Doc. No. 153] ¶ 7. The "new" evidence that Neergheen accessed his personal email was not in fact new but duplicative of testimony provided by the Defendant during his deposition and the motion for reconsideration was denied. *December 3, 2008 Order* [Doc. No. 163].

On December 18, 2008, Plaintiff filed its Emergency Motion to Compel Datamonitor's Compliance with Subpoena and Court Order [Doc. No. 171]. In this motion, Plaintiff asserted that Datamonitor was already in possession of a mirror image and would suffer no prejudice by providing a copy of it to Plaintiff. Despite the fact that this Court has consistently denied

Plaintiff's requests for a mirror image of Datamonitor's computers, Plaintiff argued that, "With regard to a Round 1-style report derived from the August 28, 2008 forensic image of Datamonitor's computer, there is absolutely no grounds for Datamonitor withholding such a report." *Pl.'s Emergency Mot. to Compel Datamonitor's Compliance with Subpoena and Court Order* [Doc. No. 171] ¶ 25. This Court denied Plaintiff's request that Datamonitor provide it with a Round 1-style report, but did agree to extend expert discovery as to USB drives produced by Neergheen for the purpose of attempting to match USB ports with computer and printer names saved on those USB drives. *See, December 23, 2008 Order* [Doc. No. 177].

With the long history recounted, the Court will now address the current motion for reconsideration [Doc. No. 181] before the Court. Plaintiff's motion is based on newly discovered evidence. The newly discovered evidence they rely upon is contained in Plaintiff's expert's second affidavit attached as Exhibit D to their motion. Plaintiff's forensic expert conducted a forensic analysis of USB drives 006 and 007 produced by Defendant in mid-September. Plaintiff's expert found that proprietary Mintel documents were stored on the USB drives; fragments of Mintel documents remained on the USB drives; and a document contained on the USB drive 006 had been printed on Datamonitor's print server "Thames." (Mot. for Recons. Ex. D, ¶¶7, 9, 13). Plaintiff's expert also opined that data on the USB drives had been overwritten (what the expert terms as "wiping") to make recovery impossible.

At the December 23rd hearing on the "emergency motion" plaintiff sought to have third-party Datamonitor provide them an inventory list of all of Datamonitor's computers and computer devices without disclosing the extent of discovery gleaned from the USB drives. Plaintiff's sole basis for the motion was that their expert had identified the names of certain

4

computer devices that the USB devices had been connected to at some point. Instead of disclosing the list of the computer devices once associated with the USB files Mintel sought an inventory of all computer devices from Datamonitor. Datamonitor refused to conduct an inventory arguing that it would take up time and resources and instead offered to compare the list of computer devices Jones had discovered were associated with the USB devices with the Datamonitor computers. This Court denied Plaintiff's request for the inventory and ordered the relief agreed to by Datamonitor. *Motion for Reconsideration* [Doc. No. 181] ¶ 2, Ex. B. The Court left open the possibility for additional discovery depending on the results of Datamonitor's comparison of the list to their devices. On December 31, 2008, Datamonitor certified that one computer device found on Jones' list as being associated with Datamonitor. *Id.* ¶ 4. That device was the "Thames" Datamonitor print server. *Id.* ¶ 3, Ex. C.

Armed with this knowledge, Plaintiff's expert was able to a ascertain that a document found on USB drive 006 had been printed on Datamonitor's print server "Thames." *Id.* ¶ 9, *Ex. D 1/2/09 Jones Aff.* ¶ 4. Plaintiff argues that USB drive 006 provides a link between Mintel documents and Datamonitor's computers. *Id.* ¶ 9. In addition, Mintel's forensic expert opines that based on the hex "FF" pattern displayed on certain unused portions of the USB drives Neergheen used a wiping utility to overwrite large amounts of file data on those drives. *Id.* ¶ 6. Mintel argues that based on this newly discovered evidence they are entitled to a forensic image of Datamonitor's computer "to determine the extent to which Mintel's documents exist(ed) or have been printed from the Datamonitor network." *Id.* ¶ 16.

Defendant asserts that because Plaintiff has been in possession of the USB drives since mid-September none of the evidence gleaned from the devices can be considered "new." *Opp. to*

*Mintel's Mot. For Recons.* at 2. In addition, Neergheen argues that the only document printed on the Datamonitor printer was his resignation letter from Mintel and, as such, this fact is not relevant to the claims or defenses raised in this case. *Opp. to Mintel's Mot. For Recons.* [Doc. No. 187] at 11. Defendant also has his own forensic expert who opines that the hex "FF" pattern Plaintiff's expert identifies as evidence of wiping is actually the manufacturer setting used to denote null spaces on the USB device. *Id.* at 12.

The parties do agree on two things with regard to the USB drives produced by Defendant. They agree that the USB drives contained two proprietary Mintel documents as well as fragments of other Mintel documents. Specifically, USB drive 006 contained a Mintel PowerPoint presentation entitled "Trends in Global Beverage Launches" dated October 29, 2007 and USB drive 007 contained a document entitled "IFT_ANNUALMTG_FOOD_EXPO_2007_MINTEL_018005363.csv." *Motion for Reconsideration* [Doc. No. 181] ¶¶ 7, 10; *Opp. to Mintel's Mot. For Recons., Ex. C 1/6/09 Reisman Decl.* [Doc. No. 187-4] ¶¶ 11, 12; *Reply in Supp. of its Supplement to Mot. to Extend Expert Disc. and Pl.'s Objections to Magistrate's December 23, 2008 Order; and Mot. for Recons. of the Ct.'s December 23, 2008 Ruling Based on Newly Discovered Evidence, Ex. D 1/8/09 Jones Aff.* ¶ 17. The parties also agree that the only document printed on Datamonitor's "Thames" print server network from USB drive 006 is Neergheen's resignation letter from Mintel. *Id., Ex. C 1/6/09 Reisman Decl.* [Doc. No. 187-4] ¶ 14; *Mot. for Recons. of the Ct.'s December 23, 2008 Ruling Based on Newly Discovered Evidence, Ex. D 1/8/09 Jones Aff.* ¶ 17.

6

*Standard for a Motion for Reconsideration*

"[A] court may relieve a party from a final judgment or order based on, among other reasons, mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial; or fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008) (citing Fed. R. Civ. P. 60(b) (internal citations and quotations omitted). A motion for reconsideration may be granted on the basis of new evidence where:

> (1) the evidence was discovered following [the denial of the motion];
> (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) it is not merely cumulative or impeaching; (4) the new evidence is material; (5) the new evidence is likely to change the outcome.

*Jones v. Lincoln Elec. Co.,* 188 F.3d 709, 732 (7th Cir. 1999). If any one of these prerequisites is not satisfied the movant's motion for reconsideration must fail. *Id.* Motions for reconsideration cannot be used to "rehash" previously denied arguments, *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* F.R.D. 282, 288 (N.D. Ill. 1988), or introduce new evidence or legal theories that could have been presented earlier, *Caisse Nationale de Credit Agricole v. CBI Indus.,* 90 F.3d 1264, 1269 (7th Cir. 1996). Relief under this category is considered an "extraordinary remedy" to be granted only in exceptional circumstances. *Jones,* 188 F.3d at 732.

*Analysis*

At the request of Mintel and Neergheen, an expedited three month discovery period was scheduled with a fact discovery cutoff date of December 31, 2008 and expert discovery cutoff

7

date of November 3, 2008.  *Joint Proposed Scheduling Order* [Doc. No. 131].   On October 30, 2008, Plaintiff sought to extend expert and rebuttal expert deadlines in large part because Mintel had "only recently obtained forensic images of Neergheen's USB drives and therefore, has not had sufficient time to complete further forensic analysis." *Pl.'s Mot. to Extend the Parties' Expert and Rebuttal Expert Deadlines* [Doc. No. 140] ¶ 6.  Plaintiff's motion was granted and disclosure of expert testimony pursuant to Rule 26(a)(2) was extended to November 30, 2008 in order for Plaintiff's expert to complete his expert analysis including the forensic analysis of the USB drives.

Plaintiff should have acquired knowledge of the Mintel documents found on Defendant's USB drives before this Court entered the December 23rd Order [Doc. No. 177].  Mintel's excuse from this is their argument that it was only until December 31st when Datamonitor provided information regarding their print server that "Mintel's forensic expert was able to complete his analysis of Defendant's USB devices, Item 006 and Item 007."  *Motion for Reconsideration* [Doc. No. 181] ¶ 5.  However, all of Mintel's expert analysis was due by November 30th. Knowing this deadline was looming, Mintel should have completed the USB analysis and sought relief from Datamonitor by November 30, 2008.

Had Plaintiff analyzed the USB drives in a timely manner they would have discovered whether any of the USB drive documents were saved or printed on a Datamonitor device by the time of the deadline of November 30th.  The lack of diligence alone is grounds for denying the motion for reconsideration.

Putting aside the lack of diligence, the Court has before it evidence that one document was found to have been printed on Datamonitor's print server – Defendant Neergheen's

8

separation letter from Mintel. There is no other evidence that directly links Defendant's USB drives and Datamonitor. Mindful that what Plaintiff requests by this motion is a mirror image of Datamonitor's computers the question becomes whether the evidence suggested by the Plaintiff, the printing of a resignation letter on a Datamonitor printer, two Mintel documents found on the USB devices and the prospect of the "wiping" of the USB devices are enough to allow the mirror imaging of a third-party's computer.

Plaintiff spends much space arguing that the USB devices had been "wiped" so as to prevent the analysis of other documents that may have been on the devices and may have been transferred to a Datamonitor computer. In that regard, the Court has before it the contradicting opinions of the two forensic experts regarding the hexadecimal value "FF" found on the unallocated space of both drives.

Plaintiff's expert opines that Defendant's USB drives were probably wiped because the hexadecimal value "FF" begins in different places in the unallocated space of both drives and the "FF" pattern continues until the end of the unallocated space. *Motion for Reconsideration, Ex. D 1/2/09 Jones Aff.* ¶ 6. Jones states that the file slack does not contain the "FF" hexadecimal pattern and argues that this is further evidence that a wiping utility was used. *Id.* at 7; *1/8/09 Jones Aff.* 13. Jones cannot identify the method or program used in the purported wiping and does not state whether any know erasing program results in a "FF" hexadecimal pattern.

On the other hand, Reisman attempts to discredited Jones' theory that the "FF" pattern means wiping. Resiman opines that the hexadecimal "FF" pattern on portions of the unallocated space are likely the factory default setting because the beginning of the unallocated space on every drive is not populated with the "FF" hexadecimal value and it would be difficult to target

or wipe only a portion of the unallocated space. *Opp. to Mintel's Mot. for Recons., Ex. C 1/6/09 Reisman Decl.* [Doc. No. 187-4] ¶ 7. Defendant's expert also asserts that Plaintiff's expert is wrong that the "FF" hexadecimal pattern is not present in the file slack (the space allocated to a file which does not contain data); Defendant's expert found that "FF" pattern does appear in the file slack of USB drive 007. *Id.* at 9.

This motion presents a classic "battle of the experts." We have competing testimony of whether "wiping" ever occurred given the "FF" hexadecimal patterns found. Importantly, Jones found no traces of a wiping program on the USB drives apart from the presence of the "FF" pattern. And Jones does not state whether he is familiar with any wiping program that leaves an "FF" hexadecimal pattern. Given Reisman's explanation for the "FF" pattern in the absence of any other evidence of "wiping" it could lead one to reasonably conclude that no wiping program was ever run on the USB devices.

Furthermore, the fact that two Mintel-related documents remained on the USB devices -- none of which were shown to have been transferred to any Datamonitor device -- is an indication that there was no intentional "wiping" of the device. *See Bryant v. Gardner*, No. 07 C 5909, 2008 WL 4966589, at *15 (N.D. Ill. 2008) ("Had Defendants purposefully deleted unfavorable evidence from the laptop, the Court finds it unlikely that [ ] other documents favorable to Plaintiff would have remained.").

This Court must determine whether there is sufficient information to get Plaintiff beyond the mere speculation line and towards the standard required for discovery from a third-party. *See,* 10A Fed. Proc., L. Ed. § 26:273 ("[R]estrictions on discovery may be broader where a nonparty is the target of the discovery in order to protect such third party from unnecessary

harassment, inconvenience, expense, or disclosure of confidential information."); *Builders Ass'n of Greater Chicago v. City of Chicago*, 2001 WL 664453 at *7 n. 4 (N.D. Ill. June 12, 2001); December 16, 2008 Mem. Op. and Order [Doc. No. 170] at 2.

The evidence suggest that one document was downloaded from Defendant's USB device onto a Datamonitor printer – Defendant's resignation letter from Mintel. But the resignation letter is not any evidence relating to the claims or defenses in this case. The suspicion that the USB devices have been wiped is the basis for the current request to access a mirror image of Datamonitor's computers. Even if Mr. Jones, Plaintiff's expert, is correct that a wiping utility was used on Defendant's USB drives, that alone does not indicate that Mintel-related documents have been transferred on Datamonitor's computers. Especially in light of the fact that there is no evidence that Mintel-related documents found on the USB devices were ever transferred to a Datamonitor computer. The fact that Neergheen attached USB drives that contained Mintel documents to Datamonitor computer(s) and that those same USB drives appear, in the opinion of one expert, to have been wiped is not enough to convince this Court that Plaintiff's request is based solely on speculation and not on evidence suggesting that discoverable materials may be found on Datamonitor's computers. Unfettered access to a third-party Datamonitor's computers will be denied.

For the reasons set forth in this opinion, the Court denies the reconsideration portion of Plaintiff's Objections to Magistrate Judge Valdez's December 23, 2008 Order; and Motion for Reconsideration of the Court's December 23, 2008 Ruling Based Upon Newly Discovered Evidence [Doc. No. 181]. The remaining portion of the hybrid motion relating to the objections to this Court's December 23, 2008 order remain with the district court.

11

SO ORDERED.                                          ENTERED:


DATE: February 3, 2009                               _____
                                                     HON. MARIA VALDEZ
                                                     United States Magistrate Judge