**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MINTEL INTERNATIONAL GROUP,     )
LTD., a United Kingdom corporation,     )
                                   )
          Plaintiff,             )     Case No. 08 c 3939
                                   )
      v.                            )     Judge Robert M. Dow, Jr.
                                   )     Magistrate Judge Maria Valdez
MEESHAM NEERGHEEN, an individual,    )
                                   )
          Defendant.          )

**MEMORANDUM OPINION AND ORDER**

In this case, Plaintiff Mintel International Group alleges that, prior to leaving his employment with Mintel, Defendant Meesham Neergheen e-mailed Mintel documents to his personal e-mail account. Plaintiff had been monitoring Defendant's e-mail activity since he gave notice of his intended departure date, and thus Plaintiff was aware of Defendant's actions and demanded that Defendant not use the documents. After Plaintiff learned that Defendant had accepted employment at third-party Datamonitor, Plaintiff filed this action alleging violations of the Illinois Trade Secrets Act, Computer Fraud Abuse Act, and violations of various terms of Defendant's employment contract with Mintel.

After a contentious period of discovery undertaken under the supervision of Magistrate Judge Valdez, a bench trial commenced on January 26 and continued on January 27, 2009. In the first phase of the bench trial, the parties presented several fact witnesses. The second phase of the bench trial, during which the parties will present the testimony of their Rule 702 opinion (or "expert") witnesses, will begin on April 30, 2009. Before the Court are several motions and objections to orders entered by Magistrate Judge Valdez: Defendant's motion in limine to

exclude testimony of Scott Jones [194-2]; Defendant's motion in limine [201]; Plaintiff's motion

for leave to amend complaint [207]; Plaintiff's objections to Magistrate Judge Valdez's January

22, 2009 order [214]; and Plaintiff's objections to Magistrate Judge Valdez's December 23, 2008

and February 3, 2009 orders [177, 218].  The Court addresses each motion in turn below.

## I.      Motion in limine to exclude testimony of Scott Jones [194-2]

Defendant has filed a motion in limine[1] seeking to exclude certain testimony of Scott

Jones [194-2], a proposed Rule 702 opinion (or "expert") witness retained by Plaintiff in this

matter.   Defendant seeks to exclude Jones' proposed testimony on several grounds, including

that his testimony fails to meet the standards set forth in Rule 702 and the Supreme Court's

decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and that it was

not properly disclosed under Federal Rule of Civil Procedure 26(a)(2).

As an initial matter, Plaintiff takes the view that motions in limine "make little sense" in

bench trials.   While that position may be too categorical, the Court recognizes the Seventh

Circuit's teaching about the critical distinction between a jury trial and a bench trial with respect

to the Rule 702 inquiry:

> Where the gatekeeper and the factfinder are one and the same – that is, the judge
> – the need to make such decisions prior to hearing the testimony is lessened.  See
> *United States v. Brown,* 415 F.3d 1257, 1268-69 (11th Cir. 2005).  That is not to
> say that the scientific reliability requirement is lessened in such situations; the
> point is only that the court can hear the evidence and make its reliability

---

[1] District courts have broad discretion in ruling on evidentiary questions presented before trial on motions in limine. *Jenkins v. Chrysler Motors Corp.,* 316 F.3d 663, 664 (7th Cir. 2002).  The power to exclude evidence in limine derives from this Court's authority to manage trials. *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984).  Evidence should be excluded in limine only where it is clearly inadmissible on all potential grounds. *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).  Thus, the party moving to exclude evidence in limine has the burden of establishing that the evidence is not admissible for any purpose. *Id.*  In addition, where (as here) the proceeding is a bench trial, the court has leeway to provisionally admit testimony or evidence and to disregard later if, upon reflection, it should have been excluded.

determination during, rather than in advance of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.

*In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006); see also *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself"). Under this sensible approach, the judge in a bench trial may choose to allow the presentation of borderline testimony, subject the testimony to the rigors of cross-examination, and decide later whether the testimony is entitled to some consideration or whether it should be excluded as irrelevant, unreliable, or both.

Both sides in this contentious litigation have retained and propose to offer trial testimony from witnesses who appear to be qualified as experts in computer forensics and electronic discovery.[2] But qualifications are only part of the pertinent inquiry under Rule 702. Indeed, Defendant's motion does not directly challenge Jones' qualifications and even acknowledges that Jones "may have sufficient experience in the field of forensic analysis to qualify him as an expert." Nevertheless, Defendant seeks exclusion of Jones' proposed testimony on several other grounds, including those set forth above.

## A. Testimony on legal conclusions

To begin with, Defendant moves to exclude any testimony from Jones on matters of law – for example, whether Defendant misappropriated any trade secrets. Defendant's argument in that respect is well supported in the case law. See, *e.g.*, *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 330 (N.D. Ill. 2008) ("expert testimony that contains a legal conclusion that determines the outcome of a case is inadmissible"); *Apotex Corp. v. Merck & Co., Inc.*, 2006 WL 1155954, at *8 (N.D. Ill. Apr. 25, 2006) (excluding expert testimony that consisted of "plainly

---

[2] The general guidance on the scope of acceptable Rule 702 opinion testimony in this case set forth below applies equally to both retained experts.

inadmissible legal conclusions" that "would be completely unhelpful to the fact finder"); *Clintec Nutrition Co. v. Baxa Corp.*, 1998 WL 560284, at *9 (N.D. Ill. Aug. 26, 1998) ("Legal conclusions are not admissible because they are not helpful to the trier of fact"). The critical issue for the parties, the Court, and the witnesses themselves to bear in mind is what the Seventh Circuit has described as the "difference between stating a legal conclusion and providing concrete information against which to measure abstract legal concepts." *United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007). In this case, that means that the Rule 702 opinion witnesses may attempt to explain the forensic record – for example, what happened to documents that are or were stored on the computer and USB drives at issue in this case – but may not offer opinions on whether any conduct by Defendant in fact constituted spoliation or misappropriation, because testimony of that nature purports to offer a legal conclusion that is reserved for the trier of fact. Accordingly, Defendant's motion in limine is granted in part, and Jones (and Defendant's expert, Andrew Reisman) will be precluded from offering testimony that contains legal conclusions.

      **B.**     **Testimony based on experience**

Defendant also contends that Jones' testimony is flawed because it rests on mere experience and speculation. But that argument conflates two concepts that do not necessarily go together. On its face, "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Trustees of the Chicago Painters & Decorators Pension, Health & Welfare, and Deferred Savings Plan Trust Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787 (7th Cir. 2007); see also Fed. R. Evid. 702 ("a witness qualified as an expert by knowledge, skill, *experience*, training, *or* education, may testify * * *") (emphasis added). Thus, on a straightforward reading of the Rule itself, "[t]estimony based solely on a person's special training or experience is properly classified as expert testimony"

(*Compania Administratora de Recuperacion v. Titan Int'l, Inc.*, 533 F.3d 555, 561 (7th Cir. 2008)), and "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999). To be sure, the opinions offered by Rule 702 witnesses must "have 'analytically sound bases' so that they are more than mere 'speculation' by the expert." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000); see also *Trustees of the Chicago Painters & Decorators*, 493 F.3d at 788 (finding testimony reliable where "it is based on specialized knowledge as opposed to subjective beliefs or speculation"). Subject to that and the other limitations and caveats set forth elsewhere in this opinion, the Court will permit both experts to testify on the basis of their experience, bearing in mind of course that the opinion of a Rule 702 expert "has a significance proportioned to the sources that sustain it." *Huey v. United Parcel Service*, 165 F.3d 1084, 1087 (7th Cir. 1999). In other words, testimony that has only weak support will be discounted, and testimony that is completely unsupported will be excluded or disregarded altogether. See *In re Salem*, 465 F.3d at 777.

### C.    Whether the testimony is the product of a tested theory

Defendant also points out Jones' acknowledgment that because his testimony is based on professional experience, it does not rest on a testable theory. That line of argument echoes the observations of several courts that testing often is an important method of demonstrating the reliability of a hypothesis. See, *e.g.*, *Daubert*, 509 U.S. at 593 ("Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested"). At the same time, however, some propositions do not lend themselves to measurement through experimentation or testing; in those instances, a person with experience in the field may be more apt to opine that "I know it when I

see it." That type of testimony alone is not satisfactory, for a court may not simply take an expert's word for a proposition. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). Yet, at the same time, the Supreme Court has stressed that neither testing, nor any other factor, is a *sine qua non* of Rule 702 opinion testimony:

> "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."

*Kumho Tire*, 526 U.S. at 141; see also *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000); *Sommerfield v. City of Chicago*, 254 F. Supp. 2d 317, 319 (N.D. Ill. 2008).

What matters at the end of the day is that a Rule 702 opinion witness (i) is qualified to offer opinion testimony under Rule 702, (ii) has employed a reliable methodology, (iii) proposes to offer opinions that follow rationally from the application of his "knowledge, skill, experience, training, or education," and (iv) presents testimony on a matter that is relevant to the case at hand, and thus helpful to the trier of fact. See *Kumho Tire*, 526 U.S. at 151-53; *General Electric*, 522 U.S. at 146; *Daubert*, 509 U.S. at 589-93; see also *Walker v. Soo Line Railroad Co.*, 208 F.3d 581, 586 (7th Cir. 2000). To take one example from the briefing, to the extent that Jones opines that it is "more likely than not" that Defendant initiated a "defrag" program, he must be able to explain why he reached that conclusion on the basis of a reasoned application of scientific, technical, or other specialized knowledge, and not simply as a result of guesswork or a desire to please the side that hired him. See *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105,

1108 (8th Cir. 1996) (holding that despite expert's incantation of the phrase "more likely than not," proffered testimony was properly excluded where it "was not based on scientific knowledge," but instead was "simply speculation").  Following the Seventh Circuit's advice for bench trials, the Court will hear the testimony of the experts and will then judge that testimony against the standards set forth above in deciding what weight, if any, to give the experts' views.

### D.    Additional disclosures in December 2008 and January 2009

Finally, Defendant contends that Jones should be precluded from testifying regarding any matters disclosed subsequent to the November 30, 2008 deadline for expert disclosures established in the parties' agreed scheduling order.  Under Rule 26(a)(2)(C), "a party must make [expert] disclosures at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(C).  Defendant contends that the relevant time was November 30, 2008, and that the matters disclosed in letters dated December 2, 2008, January 2, 2009, and January 8, 2009 were untimely and should be excluded.  Defendant further argues that the matters encompassed within the December 2, 2008 letter are subject to exclusion on the additional ground that the letter failed to comply with the substantive requirements of Rule 26(a)(2)(B) in terms of completeness.  Plaintiff counters that Jones provided detailed expert disclosures and an expert report in a timely fashion (as early as August 2008), and that the follow-up letters sent in December and January are properly viewed as supplemental disclosures under Rule 26(e).

As Magistrate Judge Cole has summarized, "[j]udges have vast discretion in supervising discovery and in declining to impose sanctions and exclude evidence."  *Talbert v. City of Chicago*, 236 F.R.D. 415, 419 (N.D. Ill. 2006) (citing, *inter alia*, *Crawford-El v. Britton*, 523 U.S. 574 (1998)).  In this instance, the Court concludes that the disclosures made in December and January are best viewed as "supplemental disclosures," which "are permitted when they are

based on information acquired subsequent to the original disclosure or a realization that the original disclosure was incomplete or incorrect." *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005). And while "supplemental expert opinions that threaten to belatedly send the case on a wholly different tack" may be excluded (see *Talbert*, 236 F.R.D. at 424), the supplemental opinions tendered by Jones relate to the same issues on which a battle of the experts has been ongoing since the outset of the litigation and on which both experts will have an opportunity to elaborate in their trial testimony. See Advisory Committee Note to Fed. R. Civ. P. 26(a)(2) (stating that the expert disclosure rule is intended to give opposing parties "reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses").

Moreover, the ultimate question on this issue is one of harm or prejudice to Defendant. See, *e.g.*, *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) (exclusion not mandated if late disclosure was harmless); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (finding absence of harm or unfair surprise). And, under that standard, the Court cannot find that exclusion of the December and January disclosures is warranted. To begin with, Magistrate Judge Valdez approved some additional discovery in December and January on matters that remained under investigation by the parties' experts – including with respect to possible connections between the USB devices and Datamonitor's computers and printers – after protracted disputes between counsel in the prior weeks and months required court intervention. See *Sherrod*, 223 F.3d at 613 (finding that delay in finishing expert reports "was partially justified" because both sides were at fault for discovery delays). Moreover, and more importantly, Magistrate Judge Valdez allowed supplemental affidavits and/or reports from both Jones and Defendant's expert. Defendant therefore has both analyzed and responded to the

points that Jones raised in his supplemental disclosures.  In addition, as Plaintiff notes, "Jones has been continually available for deposition, even though Defendant has neglected to take him up on it."  Indeed, Plaintiff asserted at the pre-trial conference that Jones "is available" and that "we will produce him any time before trial."  Finally, given the interlude between the filing of the supplemental disclosures and the commencement of Phase II of the trial, Defendant has had ample time to analyze the supplemental disclosures and work with his own expert to prepare for trial.

In sum, the Court concludes that there is no basis for viewing the supplemental disclosures as setting up a "trial by ambush."  To the contrary, in view of all of the foregoing circumstances, the Court finds no indication that Defendant has been harmed or unfairly surprised by the supplemental expert disclosures and affidavits in December and January and denies the motion to exclude those disclosures.  See, *e.g.*, *Musser*, 356 F.3d at 758 ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified *or* harmless") (emphasis added); *Sherrod*, 223 F.3d at 612 ("Rule 37 precludes the trial court from imposing the exclusion sanction unless it finds the party's failure to comply with Rule 26(a) was both unjustified and harmful to the opposing party").

## II.     Defendant's motion in limine [201]

In addition to the separate motion in limine seeking to exclude certain testimony of Scott Jones addressed above, Defendant filed a consolidated motion in limine [201] on three additional subjects addressed below.

### A.      Evidence of spoliation

Defendant first requests that the Court exclude evidence or argument regarding allegations of spoliation on the ground that such evidence is irrelevant, highly prejudicial, likely

to cause confusion, and/or is lacking in foundation.  According to Defendant, both Magistrate Judge Valdez and this Court have rejected all of Plaintiff's motions concerning the alleged spoliation, and thus any proposed testimony on that subject would be irrelevant to any matter at issue.

As explained below, although to date there has been no finding of spoliation, the Court has concluded that it must review *de novo* Magistrate Judge Valdez's order concerning Plaintiff's motion for sanctions for alleged spoliation.  In order to undertake that review comprehensively and intelligently, the Court has determined that hearing the testimony of the experts retained by both sides will be extremely helpful – particularly given the complexity of the electronic evidence issues involved in this case.  On the issue of the alleged spoliation, the Court is interested in learning the experts' views on "files relating to or taken from Mintel" that reside (or at one time resided) on the Mintel-issued laptop computer and USB drives used by Defendant.  More specifically, the Court would find it helpful to understand the experts' views on whether any "files relating to or taken from Mintel" were deleted from that computer and those USB drives, and if so, whether the deletions were accidental or intentional.  The Court reiterates (see above) that it would not find expert opinion on legal issues helpful.  The Court also stresses (see below) that there is no spoliation "claim" in this case.  Rather, there is a request for sanctions and/or an adverse inference based on allegations of spoliation.  The kind of testimony from the experts outlined above will be useful in the Court's *de novo* consideration of the request for sanctions and/or an adverse inference.  For all of these reasons, the motion in limine to exclude all evidence or argument regarding allegations of spoliation is denied.

## B.      Prior disputes with Datamonitor

Defendant next seeks to exclude evidence or argument regarding prior disputes between Plaintiff and Defendant's current employer, Datamonitor.  In particular, Defendant notes that in the draft pre-trial order, Plaintiff listed an "England Court Order" as an exhibit.  According to Defendant, the "England Court Order" is a decree issued in a prior dispute between Plaintiff and Datamonitor in a case that was wholly unrelated to Defendant.  Defendant also notes that, in the draft pre-trial order, Plaintiff proposed to call as a witness James McCoy to testify on "his aggressive interrogation by Datamonitor about Mintel's product offerings."

The Court recalls that prior to trial, counsel for Plaintiff indicated that Plaintiff would not be calling McCoy as a witness in Phase I.  And, in fact, during Phase I, Plaintiff did not call McCoy and only elicited brief testimony on the "England Court Order."  Having reviewed the transcript of that testimony, the Court concludes that it is of some, though limited, relevance to the issues in the case to the extent that it shapes (or has shaped) Datamonitor's conduct with respect to the terms of Defendant's employment, and that the probative value of the testimony on the "England Court Order" is not substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 401, 402, 403.

However, to the extent that the issue is not moot as a result of Plaintiff's decision not to call McCoy in Phase I, the Court reaches the opposite conclusion with respect to McCoy's proposed testimony concerning "aggressive interrogation by Datamonitor about Mintel's product offerings."  Even if Datamonitor at one time had a pattern of seeking confidential information from or about its competitor, the "England Court Order" surely cuts both ways in regard to any "incentive" that Defendant may have had to misappropriate Mintel's trade secrets at the time that it hired Defendant.  Plaintiff submits that McCoy's testimony would support such a propensity,

but the subsequently entered court decree would appear to establish a strong counterincentive. Taking into account all of the circumstances, the Court concludes that the proposed testimony from McCoy is too remote from the events at issue here to have much probative value and that any limited probative value would be substantially outweighed by the injection into the case of a potentially distracting and prejudicial side issue. Accordingly, the Court grants the motion in limine to exclude the proposed testimony of McCoy, but denies the motion in limine as to the testimony concerning the "England Court Order" that was elicited in Phase I of the trial.

### C. Evidence not disclosed in discovery

Finally, Defendant moves for the exclusion of certain evidence that it contends Plaintiff failed to properly disclose during discovery, but sprung on Defendant in the final pre-trial order. In particular, Defendant points to dozens of e-mails that Defendant sent to himself over the course of his employment at Mintel (PX 101A-101PP), various documents relating to Defendant's computer usage, and undisclosed evidence of harm to Plaintiff as a result of the claims asserted in its complaint. Defendant also notes that the sending of the e-mails alone cannot be viewed as evidence of wrongdoing, because Mintel did not flatly prohibit employees from e-mailing documents to their personal e-mail addresses. In its response, Plaintiff does not contend that the documents referenced by Defendant were properly disclosed. Instead, Plaintiff simply posits that the documents are "highly relevant" to various matters at issue.

The Court permitted Plaintiff to use some of the disputed documents and to adduce the amount of its expert fees in Phase I of the trial, while preserving Defendant's objection and reserving the right to disregard the documents and testimony if upon further consideration they should be excluded as a sanction for non-disclosure. As noted above, the Seventh Circuit has explained that district courts are to apply a two-part analysis in these circumstances, asking

whether the failure to comply with the disclosure rules was (i) unjustified and (ii) harmful to the opposing party. See, *e.g.*, *Musser*, 356 F.3d at 758 ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified *or* harmless") (emphasis added); *Sherrod*, 223 F.3d at 612 ("Rule 37 precludes the trial court from imposing the exclusion sanction unless it finds the party's failure to comply with Rule 26(a) was both unjustified and harmful to the opposing party"). In contrast to the expert disclosures discussed above, Plaintiff does not contend that the late and/or incomplete disclosure of the e-mails and computer usage exhibits targeted by Defendant was justified. However, the Court will be in a better position to undertake the second part of the inquiry – whether Defendant has been harmed by the nondisclosure – after it can review the entire trial transcript after both phases are complete. Accordingly, as in Phase I, Plaintiff will be permitted to use and elicit testimony concerning the matters referenced in Defendant's motion in limine, subject to the possibility that such testimony and exhibits may be stricken or disregarded if the Court concludes that the non-disclosure was harmful to Defendant, or that the testimony and exhibits simply are irrelevant, in light of the pertinent rules and case law.

## III.     Plaintiff's motion for leave to amend complaint [207]

On January 23, 2009, Plaintiff filed a motion for leave to amend its complaint [207] to add an additional count (Count VIII) for negligence/spoliation of evidence. In support of its motion, Plaintiff cites the principle enshrined in Fed. R. Civ. P. 15(a) and *Foman v. Davis*, 371 U.S. 178, 182 (1962), that leave to amend "shall be freely given when justice so requires" to afford a party "an opportunity to test [its] claim on the merits." Plaintiff contends that its additional claim is appropriate in view of the fact that "[t]he discovery pursued in this matter has revealed that Defendant continued to use his laptop computer, deleted files, and severely limited

Mintel's ability to trace Defendant's behavior in the days leading up to and following his resignation from Mintel" and that Plaintiff has not been able to corroborate Defendant's claims that he (i) deleted all of the Mintel confidential information that he took shortly before he left his employment at Mintel and (ii) has not shared that information with his new employer. Plaintiff notes that the issue of spoliation of evidence "has been contested since the beginning of this case and has been the subject of several motions." According to Plaintiff, that fact cuts in favor of granting the motion for leave to file the new claim, because Defendant "can claim no surprise that Mintel is claiming that he spoliated evidence."

In opposition to Plaintiff's motion, Defendants contend that Rule 16(b) – not Rule 15(a) – applies in this instance, because Plaintiff "seeks leave to amend a pleading after the passage of the deadline in the trial court's scheduling order" for amending pleadings. Under Rule 16(b), "[t]o amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party must show 'good cause.'" *Trustmark Ins. Co. v. General & Cologne Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2005). In applying that standard, the court "primarily considers the diligence of the party seeking amendment." *Id.*; see also *Humphrey v. East Mfg. Co.,* 2003 WL 21361780, at *4 (N.D. Ill. June 11, 2003) ("In determining 'good cause,' courts look to whether the moving party exercised 'good diligence' in failing to meet the court's deadline"). In *Trustmark*, for example, the court looked to whether the moving party "was, or should have been aware" of the "facts underlying" the claim prior to the deadline set in the scheduling order. 424 F.3d at 553.

The contention asserted in Plaintiff's reply brief [221, at 1-2] and reiterated in a February 6, 2009 letter to the Court that no scheduling order existed is not well taken. On September 23, 2008, Magistrate Judge Valdez entered a minute order [130] directing the parties "to meet and

confer on agreed discovery schedule and file the agreed discovery plan by 9/30/08." In compliance with that order, the parties did file a "Joint Proposed Scheduling Order" [131] on September 30, 2008. In that document, the parties stated that they "jointly submit their Rule 16(b) proposed scheduling order," in which they agreed, *inter alia*, that "[a]ny amendments to pleadings or actions to join other parties shall be filed on or before November 28, 2008." Given that the order was filed pursuant to the Court's previous order, no further Court action was necessary for the order to take effect. Moreover, Plaintiff's consistent prior actions in filing motions to extend other dates set in the same agreed discovery plan [see 140, 156, 171] belie its current position that Rule 15(a), rather than Rule 16(b), controls because there was no scheduling order in this case. In one of those motions, Plaintiff in fact stated that "[t]he Court entered the Joint Proposed Scheduling Order on September 30, 2008. Pursuant to the Joint Proposed Scheduling Order, the parties must file any amendments to pleadings or actions to join other parties on or before November 28, 2008." [156, at 1.]

Applying the Rule 16(b) standard, the Court cannot find "good cause" for the tardiness in Plaintiff's assertion of a spoliation claim. Again, as Plaintiff acknowledges, "[t]he issue of spoliation of evidence has been contested since the beginning of this case and has been the subject of several motions." [207, at 2.] Yet, Plaintiff waited to seek leave to add such a claim until fifty-six days after the deadline for amendments to pleadings established under the scheduling order submitted by agreement of parties at Magistrate Judge Valdez's direction. During that time, Plaintiff focused on the pursuit of sanctions – including the entry of a default judgment – for Defendant's alleged spoliation, without making any effort to plead a claim or cause of action for spoliation. In short, by Plaintiff's own admission, it "was, or should have been aware" of the "facts underlying" the claim prior to the deadline set in the scheduling order.

*Trustmark Ins. Co.*, 424 F.3d at 553. Accordingly, the Court cannot find "good cause" to permit the filing of the amended complaint, and Plaintiff's motion for leave to amend its complaint [207] is denied.

## IV.    Objections to January 22, 2009 Order [214]

On August 29, 2008, Plaintiff filed a motion for rule to show cause, for discovery sanctions, and for sanctions because of evidence spoliation [61]. In that motion, Plaintiff sought, *inter alia*, "the striking of defendant's answer, dismissing his counterclaim and entry of default judgment or the imposition of severe evidentiary limits on Defendant." On September 5, 2008, this Court entered a minute order [86] referring Plaintiff's motion to Magistrate Judge Valdez. As the September 5 minute order noted, the expanded referral would advance the interests of efficiency and consistency in view of the close relationship between the subject matter of the motion [61] and other matters, including a motion to compel [53], that previously had been argued before Magistrate Judge Valdez. On January 22, 2009, Magistrate Judge Valdez issued an order [205] denying Plaintiff's motion. On January 30, 2009, Plaintiff timely filed its objections [214] to Magistrate Judge Valdez's January 22, 2009 ruling. Defendant has filed a response in opposition to those objections [222], and Plaintiff has filed a reply [223].

As a threshold matter, the parties dispute the standard of review that applies to the January 22, 2009 order. Plaintiff contends that the order should be reviewed *de novo* because it sought a final determination of Defendant's alleged violations of the TRO, and thus is akin to a contempt motion or a dispositive sanctions motion that cannot be finally resolved by a magistrate judge. Thus, according to Plaintiff, the Court must treat the January 22, 2009 order as a report and recommendation. Defendant counters that the order pertains to a pre-trial discovery matter and thus is subject to review under the "clearly erroneous or contrary to law" standard.

Defendant further submits that the order should be upheld regardless of the applicable standard of review.

While Defendant's position on the standard of review has some support in the decisions of other circuits cited in Defendant's brief, the Court must conclude that in the Seventh Circuit, the January 22, 2009 order is subject to *de novo* review, whether the motion that gave rise to the order is viewed as seeking a contempt finding for violation of the TRO, sanctions under Rule 37, or both. It is well established that "Rule 37 permits the award of sanctions with dispositive effects; monetary sanctions, the striking of claims and defenses; and default judgment." *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 2002 WL 1433584, at *2 (N.D. Ill. July 2, 2002). It is equally well established that "[a] magistrate judge is only authorized to make decisions on nondispositive matters that have independent effect in order to assure that he or she does not dispose of the merits of any civil case without the parties' consent." *Royal Maccabees Life Ins. Co. v. Malachinski*, 2001 WL 290308, at *6 (N.D. Ill. Mar. 20, 2001). Accordingly, the Seventh Circuit has held that "all sanctions requests, whether pre- or post-dismissal" must be determined *de novo* by the district court. *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 869 (7th Cir. 1996); see also *Alpern v. Lieb*, 38 F.3d 933, 935 (7th Cir. 1994); *Fidelity Nat't Title Ins.*, 2002 WL 1433584, at *2 ("judges in this district conduct *de novo* review of magistrate judges' sanctions awards" as well as "a magistrate judge's recommendation on a dispositive motion"); see also *Royal Maccabees*, 2001 WL 290308, at *7 (same). And "[t]he *de novo* standard applies to the magistrate judge's findings of fact and conclusions of law." *Fidelity Nat't Title Ins.*, 2002 WL 1433584, at *2 (citing *Rajaratnam v. Moyer*, 47 F.3d 922, 924 (7th Cir. 1995)).

In view of the foregoing authorities, the Court must view Magistrate Judge Valdez's January 22, 2009 order "as a report and recommendation" subject to *de novo* review. *Fidelity Nat't Title Ins.*, 2002 WL 1433584, at *2. Under that standard, this Court must give "fresh consideration to those issues to which specific objections have been made." *Rajaratnam v. Moyer*, 47 F.3d 922, 925 n.8 (7th Cir. 1995). And, in view of both the applicable standard of review and the complexity of the electronic discovery issues raised in the expert reports and affidavits, the Court concludes that going forward with "Phase II" proceedings in which the experts present their testimony in court, subject to cross-examination, will best position the Court to make an informed *de novo* ruling on Plaintiff's sanctions motion. See Fed. R. Civ. P. 72(b) ("The district court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions"); 28 U.S.C. § 636(b)(1)(C) (noting that on *de novo* review, the district judge may "receive further evidence"). Accordingly, the Court reserves ruling on Plaintiff's objections to the January 22, 2009 order until after it has heard testimony from the experts, after which time the Court will issue a written ruling on whether any basis exists for sanctions and/or an adverse inference on the basis of the alleged spoliation.

**V.     Objections to December 23, 2008 and February 3, 2009 Orders [177, 218]**

On December 23, 2008, Magistrate Judge Valdez entered an order [177] denying Plaintiff's emergency motion to compel Datamonitor's compliance with subpoena and court order [171]. Then, on February 3, 2009, Magistrate Judge Valdez entered an order [218] denying Plaintiff's motion to reconsider her December 23 decision [177] based upon newly discovery evidence. In essence, Plaintiff sought the same result in both motions – Datamonitor's production of "a forensic image of Datamonitor's desktop and/or laptop computers used at any

time by Defendant and the forensic image of Defendant's electronic mail account at Datamonitor," or, at a minimum, a "Round 1-style" report[3] of the forensic images of those Datamonitor computers. However, in its second request, Plaintiff presented "newly discovered evidence," claiming the "undeniable connection of one of Defendant's USB devices, containing at least one confidential Mintel document, to Datamonitor's computer network." Before the Court are Plaintiff's objections to the December 23, 2008 [177] and the February 3, 2009 [218] orders.

Although Magistrate Judge Valdez previously has set forth the long history of Plaintiff's attempts to obtain a mirror image and/or a Round 1-style report relating to Datamonitor's computer network, for the sake of completeness, the Court recounts them here as well. See, *e.g.*, [219, at 2-4]. On July 21, 2008, Mintel served a subpoena upon Datamonitor that requested a forensic image of a Datamonitor desktop used by Defendant and the forensic image of Defendant's electronic mail account at Datamonitor. After Datamonitor refused to produce the requested items, on August 28, 2008, Mintel filed a motion to compel Datamonitor's compliance with a subpoena, arguing that Defendant had spoliated documents on a laptop computer and that, based on the alleged spoliation, Mintel should be entitled to a mirror image of Datamonitor's computers. That motion was denied without prejudice. Then, on October 2, Mintel argued that it was entitled to a mirror image of Datamonitor's computers based on Defendant's production of approximately forty Mintel documents that Plaintiff was not aware were in Defendant's possession when it filed suit. Plaintiff argued that it should not have to rely on Defendant's assertion that he had not used any Mintel confidential information to date, and that the

---

[3]  A Round 1-style report is generated from an existing forensic image of a computer and contains "metadata" – information generated by the software in the computer. According to Plaintiff, it would include the following registers and logs:  All Files Present; Event Logs; Internet History (excluding the substance of any queries or searches input by Datamonitor personnel); Link File Reports; Recycle Bin; System Information; and USBSTOR Registries/Logs.

information on Defendant's Datamonitor computer(s) and work e-mail account was relevant to determine Defendant's veracity. See [133, at ¶ 6.] Judge Valdez denied the request in a November 17 opinion and order, determining that Plaintiff's skepticism did not warrant the kind of unfettered access to a competitor's computers that Plaintiff requested. [151, at 4-6.] However, in attempting to address Plaintiff's concerns, Judge Valdez outlined a resolution (*id*. at 5-6) that would have (i) allowed Mintel to provide a list of search terms that Datamonitor's expert could use to search the Datamonitor computers and (ii) required Datamonitor to produce any Mintel documents that were found. Judge Valdez ordered the parties to meet and confer so that Mintel could advise Defendant's expert on the "additional search terms and phrases" that Defendant's expert should use in analyzing Datamonitor's computers. *Id*. at 6.

Shortly after the November 17 ruling, Plaintiff filed a motion for reconsideration, arguing that it had obtained "new" evidence from Microsoft that Defendant had accessed his personal e-mail account at Datamonitor and may have transferred Mintel documents. In an order [163] dated December 3, 2008, Magistrate Judge Valdez denied the motion for reconsideration, finding that this evidence was not new but duplicative of testimony provided by Defendant during his deposition. On December 16, 2008, this Court issued a memorandum opinion and order [170] overruling Plaintiff's objections to Magistrate Judge Valdez's November 17 and December 3 orders.

In the meantime, Plaintiff unilaterally determined that it would not avail itself of the additional discovery allowed by Magistrate Judge Valdez in her November 17 order – namely, the additional searches of Datamonitor's computers. See [177] ("Plaintiff waives additional search as ordered by this court on November 17, 2008"). Instead, on December 18, Plaintiff filed an emergency motion to compel Datamonitor (i) to provide within three days all computer

and printer names from Datamonitor's Chicago office location from April 20, 2008 to present and (ii) to produce within three days a Round 1-style report of Datamonitor's computer. Plaintiff asserted that Datamonitor already was in possession of a mirror image and would suffer no prejudice by providing a copy to Plaintiff. Plaintiff further argued that, "with regard to a Round 1-style report derived from the August 28, 2008 forensic image of Datamonitor's computer, there is absolutely no grounds for Datamonitor withholding such a report." [171, at ¶ 25.] Although Magistrate Judge Valdez once again denied Plaintiff's request for a Round 1-style report on December 23, 2008, she agreed to permit additional discovery as to the USB drives produced by Defendant for the purpose of attempting to match USB ports with computer and printer names saved on those USB drives and left open the possibility of additional discovery depending on the results of Datamonitor's comparison of the list to their devices.

On December 30, 2008, Datamonitor filed objections to Magistrate Judge Valdez's December 23 order. But before this Court could rule on the objections, Plaintiff filed another motion for reconsideration, asking Magistrate Judge Valdez to revisit her December 23 order based on more newly discovery evidence received following Datamonitor's compliance with Magistrate Judge Valdez's December 23 order. Specifically, Datamonitor certified that one computer device found on Plaintiff's list – the "Thames" print server – was associated with Datamonitor. In the wake of that "match," Plaintiff's forensic expert performed additional analysis and opined that (i) proprietary Mintel documents were stored on the USB drives 006 and 007; (ii) fragments of Mintel documents remained on the USB drives; and (iii) a document contained on the USB drive 006 had been printed on the "Thames" print server. Plaintiff's

expert also opined that data on the USB drives had been overwritten.[4]  On the basis of these new opinions of its expert, Plaintiff sought reconsideration of the denial of its request for the "Round 1-style" report.

As of the time that the motion for reconsideration was pending before Magistrate Judge Valdez, the parties had agreed on two significant matters in regard to the USB drives produced by Defendant.  First, the USB drives contained two proprietary Mintel documents as well as fragments of other Mintel documents.  Second, the only document printed on Datamonitor's "Thames" print server network from USB drive 006 was Defendant's resignation letter from Mintel.  Taking into account those agreed facts and the parties' respective contentions on the matters that remained in dispute, and applying the appropriate legal standards, Magistrate Judge Valdez denied the motion for reconsideration.  In view of (i) Plaintiff's lack of diligence, (ii) the contradictory opinions of the two forensic experts, and (iii) the fact that the only document downloaded from Defendant's USB device onto a Datamonitor printer was Defendant's resignation letter from Mintel, Magistrate Judge Valdez concluded that Plaintiff was not entitled to the Round 1-style report of Datamonitor's computers.[5]

As both parties have recognized, where, as here, a district court considers objections to a magistrate judge's rulings on nondispositive matters, the magistrate judge's disposition will be set aside only if it is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); see also *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006); *Bobkoski v. Board of Educ. of*

---

[4]  In response, Defendant's expert opined that the hex "FF" pattern that Plaintiff's expert identifies as evidence of wiping is actually the manufacturer setting used to denote null space on the USB device.  See [187, at 12.]

[5]  Although Magistrate Judge Valdez expressed the view that Plaintiff's "lack of diligence alone is grounds for denying the motion for reconsideration," she then "put[] aside the lack of diligence" and went on to consider the motion on the merits.  Because this Court sustains Magistrate Judge Valdez's rulings on the merits, it need not address any matters relating to Plaintiff's diligence in pursuing discovery relating to the USB drives.

*Cary Consol. School Dist.*, 141 F.R.D. 88, 90 (N.D. Ill. 1992). Under the clear error standard of review, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

As Judge Valdez repeatedly has noted, third parties are entitled to somewhat greater protection than parties in regard to discovery requests (see *Builders Ass'n of Greater Chicago v. City of Chicago*, 2001 WL 664453, at *7 n.4 (N.D. Ill. June 12, 2001)), such as requests for a forensic image of a competitor's computers (see, *e.g.*, *Powers v. Thomas M. Cooley Law School*, 2006 WL 2711512, at *5 (W.D. Mich. Sept. 21, 2006)). Moreover, the pertinent rules of civil procedure generally do not permit the requesting party to conduct the actual search for discoverable data (*In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003)), at least absent some showing that the documents sought by the requesting party are or were in the possession of the party to whom the request is made (see, *e.g.*, *Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.*, 2006 WL 665005, at *4 (N.D. Ill. March 9, 2006)).

Upon review of Plaintiff's motions, the parties' briefs and arguments, and Judge Valdez's two orders, the Court concludes that Judge Valdez considered all of the evidence presented by Plaintiff, applied the appropriate rules and case authorities, and offered a more than reasonable justification for her ruling that Plaintiff had not come forward with sufficient information to get "beyond the mere speculation line and towards the standard required for discovery from a third-party." [219, at 10.] The Court does not find any "clear error" in Judge Valdez's determination that the totality of the evidence presented by Mintel in its December 18 and January 2 motions – including the "new" evidence, which included the discovery of two Mintel documents found on the USB devices, the printing of a resignation letter on a Datamonitor printer, and the heavily

contested allegation that Defendant "wiped" the USB devices – was not enough to grant Mintel either a forensic image of Datamonitor's computers or a Round 1-style report. That request for additional discovery presented a question on which reasonable jurists could disagree, but Magistrate Judge Valdez's decision to deny the request was well within the scope of her discretion, and neither the decision itself nor the rationale for it leave this Court "with the definite and firm conviction that a mistake has been made." *Weeks*, 126 F.3d at 943. Nor can the Court conclude that Judge Valdez erred in denying Plaintiff's motion for reconsideration.

With respect to the Thames printer, even with all of the allegations that abound, there is no sinister inference to be drawn from the mere printing of Defendant's resignation letter from Mintel on a Datamonitor printer. Importantly, the resignation letter is not a confidential document, nor is it proprietary Mintel information. In fact, that document has no bearing on any of the claims or defenses in the present litigation.

In regard to the alleged "wiping" of the USB devices, Magistrate Judge Valdez had before her the contradicting opinions of two forensic experts regarding the hexadecimal value "FF" found on the unallocated space of both drives. After wading through, and then setting forth, the testimony of the two experts, Judge Valdez concluded that Plaintiff's motion to reconsider presented a classic "battle of the experts." [219, at 10.] She found it important that Plaintiff's expert found no traces of a wiping program on the USB drives apart from the presence of the "FF" pattern and that he did not state that he was familiar with any wiping program that leaves an "FF" hexadecimal pattern. She compared that testimony with the explanation of Defendant's expert for the "FF" pattern in the absence of any other evidence of wiping and concluded that it was "reasonable" to assume that no wiping program was ever run. In addition, Magistrate Judge Valdez reasonably concluded that the fact that two Mintel-related documents –

neither of which has been shown to have been transferred to any Datamonitor device – actually remained on the USB devices provided some evidence that there was no intentional "wiping" of the device.  *Id*. (citing *Bryant v. Gardner*, 2008 WL 4966589, at *15 (N.D. Ill. 2008) ("Had Defendants purposefully deleted unfavorable evidence from the laptop, the Court finds it unlikely that [ ] other documents favorable to Plaintiff would have remained")).  While Plaintiff may, and clearly does, disagree with Magistrate Judge Valdez's decision, the Court cannot say – especially given Judge Valdez's considered analysis of the conflicting expert testimony – that her ruling denying the additional discovery that Plaintiff requested was clearly erroneous.

Finally, as for the two Mintel confidential and proprietary documents that remained on the USB device, there is no evidence that Defendant ever transferred those documents at all, much less downloaded them to a Datamonitor computer or printed them on a Datamonitor printer, as he did with the innocuous resignation letter.  If there were such evidence, Plaintiff clearly would have a much stronger basis for the additional discovery that it sought from Datamonitor.  But because there is no evidence of such a scenario or anything close to it, this Court cannot find clear error or misapprehension of law in Magistrate Judge Valdez's December 23 or February 3 orders.[6]

---

[6] The Court reiterates that although Judge Valdez denied Plaintiff's requests for forensic images (and/or Round 1-style reports) of any Datamonitor computers, she agreed with Plaintiff that the search of Datamonitor's computers performed by Datamonitor was not complete and permitted additional searches to be performed.  As a result of Judge Valdez's November 17 order, Plaintiff was given "an opportunity to dictate how the computer system of Datamonitor is searched, and the opportunity to be even more sure that none of Mintel's claimed proprietary information was passed to Datamonitor."  [158, at 6.]  Plaintiff, after consultation with its hired experts, unilaterally declined to avail itself of that opportunity.

In sum, because the Court finds that Magistrate Judge Valdez's December 23 and February 3 decisions are neither clearly erroneous nor contrary to law, Plaintiff's objections [177, 218] are overruled.[7]

## III.  Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendant's motion in limine to exclude testimony of Scott Jones [194-2]; grants in part and denies in part Defendant's other motions in limine [201]; denies Plaintiff's motion for leave to amend complaint [207]; reserves ruling on Plaintiff's objections to Magistrate Judge Valdez's January 22, 2009 Order [214]; and overrules Plaintiff's Objections to Magistrate Judge Valdez's December 23, 2008 and February 3, 2009 orders [177, 218].

Dated:  April 17, 2009

_____
Robert M. Dow, Jr.
United States District Judge

---

[7] While the Court finds no basis for disturbing Magistrate Judge Valdez's rulings concerning Plaintiff's request for a Round 1-style report at this time, should the Court conclude that Defendant has engaged in spoliation (or other sanctionable conduct), the Court retains the authority to revisit whether additional discovery relating to Datamonitor would be appropriate.